# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

In re:

**K & R BUSINESS INVESTMENTS, LLC**     **Case No.: 3:15-bk-02621**

**Chapter 11**

Debtor.     **EMERGENCY HEARING REQUESTED**

_____/

## EMERGENCY MOTION PURSUANT TO 11 U.S.C. § 543(d)(1) TO EXCUSE RECEIVER FROM COMPLIANCE WITH TURNOVER REQUIREMENTS AND TO ESTABLISH POWERS AND DUTIES OF RECEIVER

### EMERGENCY HEARING REQUESTED

PNC BANK, NATIONAL ASSOCIATION ("PNC"), as successor to RBC Bank (USA) ("RBC"), as successor by merger to Cypress Coquina Bank, by and through its undersigned counsel, hereby files this Emergency Motion pursuant to 11 U.S.C. § 543(d)(1) for an order excusing Ketan B. Vora, in his capacity as Court-appointed receiver for K & R Business Investments, LLC (the "Borrower" or "Debtor"), from compliance with the turnover requirements of Sections 543(a) and (b) of the Bankruptcy Code and to establish the powers and duties of the receiver in this Chapter 11 case *nunc pro tunc* as to the Petition Date (the "Motion"), and in support thereof states as follows:

### CERTIFICATE OF NECESSITY FOR EMERGENCY HEARING

PNC seeks an expedited disposition of this Motion because if the estate does not receive immediate relief, the financial and operational stability that the receiver has accomplished for the property over the past four and one-half (4-1/2) months will be jeopardized. The receiver was appointed because, among other reasons, the Debtor was not effectively managing the property at issue in this Chapter 11 proceeding.

Over the last four and one-half (4-1/2) months, the receiver has stabilized the property, used the rents to pay past due real estate taxes, and collected rents from all tenants occupying any unit on the property, none of which had been done under the Debtor's management. During this time period, the receiver has taken the property from a state of disarray and dysfunction to an operative commercial center. Putting the property back under the control of the Debtor and its principal would undo many of the advances made by the Receiver, would be disruptive to the tenants, and is not in the best interests of creditors.

PNC requests an emergency hearing at the earliest possible date and time as the Receiver has an urgent need to know whether he can be relieved of his duty of turnover. PNC estimates that a hearing on this Motion will require approximately one hour.

## BACKGROUND

### A. The Loan

1. On or about August 31, 2004, CypressCoquina Bank, RBC's predecessor in interest ("Cypress"), extended a loan in the original principal amount of $1,280,000.00 (the "Loan") to Debtor, as evidenced by that certain Loan Agreement dated August 31, 2004 (the "Loan Agreement"). A copy of the Loan Agreement is attached hereto and incorporated herein as **Exhibit A**.

2. The Loan is further evidenced by that certain Secured Promissory Note dated August 31, 2004 in the original principal amount of $1,280,000.00, as amended by that certain First Amendment to Secured Promissory Note dated November 19, 2009 (as amended, the "Note"). A copy of the Note is attached hereto as **Exhibit B**.

3. To secure payment of the Loan, Debtor executed and delivered to Cypress that certain Mortgage, Assignment of Rents, and Profits and Security Agreement dated August 31, 2004, which was recorded in Official Records Book 1142, Page 1912, et seq., of the Public

Records of Flagler County, Florida (the "Mortgage"). A copy of the Mortgage is attached hereto as **Exhibit C**.

4.     To further secure payment of the Loan, Debtor executed and delivered to Cypress that certain Collateral Assignment of Rents, Leases and Profits dated August 31, 2004, which was recorded in Official Records Book 1142, Page 1940, et seq., of the Public Records of Flagler County, Florida (the "Assignment of Rents"). A copy of the Assignment of Rents is attached hereto as **Exhibit D**.

5.     To further secure payment of the Gregory G. Shugg ("G. Shugg") executed and delivered to Cypress that certain Continuing and Unconditional Guaranty dated August 31, 2004 (the "G. Shugg Guaranty"). A copy of the G. Shugg Guaranty is attached hereto as **Exhibit E**.

6.     To further secure payment of the Loan, Kimberly A. Shugg ("K. Shugg") executed and delivered to Cypress that certain Continuing and Unconditional Guaranty dated August 31, 2004 (the "K. Shugg Guaranty"). A copy of the K. Shugg Guaranty is attached hereto as **Exhibit F**.

7.     To further secure payment of the Loan, Cypress filed a UCC-1 Financing Statement, which was recorded in Official Records Book 1142, Page 1943, of the Public Records of Flagler County, Florida (the "UCC-1"). A copy of the UCC-1 is attached hereto as **Exhibit G**.

8.     As successor by merger to RBC, PNC was the owner and holder of the Loan Agreement, the Note, the Mortgage, the Assignment of Rents, the G. Shugg Guaranty, the K. Shugg Guaranty, and the UCC-1 (collectively the "Loan Documents").

9.      On or about April 11, 2008, Cypress merged into RBC pursuant to that certain Articles of Merger, which were filed with the Florida Secretary of State (the "Articles of Merger"). A copy of the Articles of Merger is attached hereto as **Exhibit H**.

10.     Effective March 2, 2012, RBC Bank (USA) merged into PNC. A copy of the Articles of Merger is attached hereto as **Exhibit I**.

## B.    The Defaults

11.     Debtor, G. Shugg, and K. Shugg failed to make certain interest payments due under the Loan prior to the maturity date and failed to repay the Loan in full on the maturity date of June 15, 2010.

12.     In addition to payment default, Debtor failed to pay the real property taxes for the Property for 2011, 2012, 2013 and 2014.

13.     On or about July 16, 2010, RBC delivered to Debtor, G. Shugg, and K. Shugg a demand letter (the "Demand Letter"), notifying them that Debtor was in default under the terms of the Loan Documents and demanding payment of the full amount of the debt due to RBC thereunder. A true and correct copy of the Demand Letter is attached hereto as **Exhibit J**.

## C.    State Court Action

14.     Due to the defaults, PNC filed a state court action against Debtor and the guarantors, G. Shugg and K. Shugg (collectively, the "Guarantors") on or about August 25, 2010 in the Circuit Court, Flagler County which case bears Case No. 2010-CA-1650 (the "State Court Action").

15.    The relief sought by PNC in the State Court Action included, among other relief, a count to foreclose the property described in the Mortgage (the "Property"), which is attached hereto as Exhibit C.

16.    The Debtor, the Guarantors, and PNC agreed to the entry of Final Judgment of Foreclosure and against the Guarantors, and a Stipulated Final Judgment was entered in the State Court Action on February 2, 2011 in the amount of $1,501,810.47 (the "Judgment Amount"). A copy of the Stipulated Final Judgment is attached hereto as **Exhibit K**.

17.    The foreclosure sale was originally set on April 27, 2011 but was cancelled because in March, 2011, Debtor and Guarantors executed a Settlement Agreement and Forbearance Agreement.

18.    Debtor ultimately was unable to comply with the terms of the settlement and on December 4, 2014, Plaintiff filed its Motion to Reschedule the Foreclosure Sale (the "Motion to Reschedule").

19.    On January 14, 2015, PNC filed its Motion to Appoint Receiver (the "Receiver Motion"). PNC filed the Receiver Motion because Debtor had failed to pay the real estate taxes on the Property for the 2010, 2011, 2012, 2013, and 2014 tax years and PNC had concerns regarding the status of the Property.

20.    Both the Receiver Motion and Motion to Reschedule were set for hearing on January 22, 2015.

21.    By Order dated January 22, 2015, the court entered its Order Granting Motion to Reschedule Foreclosure Sale.

22.    By order also dated January 22, 2015, the court entered the Order Appointing Receiver. A copy of the Order Appointing Receiver is attached hereto as **Exhibit L**.

23.    The foreclosure sale was ultimately rescheduled to June 10, 2015 and this bankruptcy case was filed on June 9, 2015.

24.    Ketan B. Vora was appointed as the receiver (the "Receiver") for the Property and related assets.

25.    The Receiver has been operating and managing the Property for the past four and one-half months.  At the time the Receiver took over, there were significant outstanding taxes, tenants who were not current on their rent, numerous tenants who were occupying units on a month-to-month basis, a general lack of financial records with respect to the Property, and general disarray in the financial management of the Property.

26.    Since taking over, the Receiver has paid outstanding taxes, collected rents from all tenants, gained a detailed understanding of the financial and operational issues of the property, and issued monthly, transparent receivership reports.

27.    Given the Receiver's knowledge of the Property and the results obtained over the past months, it would be extremely disruptive and harmful to the estate and all its creditors to require turnover.

**D.    The Bankruptcy**

28.    On June 9, 2015, the Debtor filed its voluntary petition for chapter 11 (the "Petition Date").

29.    As of June 15, 2015, pursuant to the Stipulated Final Judgment, the Debtor is currently indebted to PNC under the terms of the Note in the following amounts: Judgment Amount of $1,501,810.47; interest on the Judgment Amount in the amount of $391,790.85; and attorney's fees and costs.

30.     Unfortunately, appraisals of the property dated October 2014 show that the property has a current fair market value of $1,120,000.00, giving PNC an unsecured deficiency claim of over $773,601.32.

31.     This is a single asset real estate case.

32.     Although the Debtor has not filed its Schedules, a review of the List of Top Twenty Unsecured Creditors shows PNC as the only unsecured creditor. In addition, a review of the 25 creditors listed on the creditors matrix indicates generally that nine (9) are tenants or former tenants on the property, four (4) are duplicates, and the remaining listed appear to be parties who just need to receive notice of the bankruptcy proceeding. As the majority of the tenants are occupying the space on a month-to-month basis, it is doubtful that they will have any significant claim even if their leases are rejected.

33.     It is therefore apparent that the only significant creditor of the Debtor is PNC, and that this bankruptcy is a mere two-party dispute.

### RELIEF REQUESTED AND MEMORANDUM OF LAW

Pursuant to § 101(11) of the Bankruptcy Code, a prior-appointed receiver becomes a "custodian" for a debtor's assets, books, and records when a bankruptcy is filed. Specifically, § 101(11)(A) defines "custodian" as a "receiver or trustee of any of the property of the debtor, appointed in a case or proceeding not under this title." 11 U.S.C. § 101(11)(A). Section 101(11)(C) in turn defines a "custodian" as "trustee, receiver, or agent under applicable law, or under a contract, that is appointed or authorized to take charge of property of the debtor for the purpose of enforcing a lien against such property, or for the purpose of general administration of such property for the benefit of the debtor's creditors." 11 U.S.C. § 101(11)(C).

Generally, upon obtaining knowledge of a bankruptcy proceeding, a custodian of a debtor's property (i) is not permitted to disburse or take any action in the administration of

property of the estate except to preserve such property; (ii) must turn over to the debtor any and all property of the debtor that was held by or transferred to the custodian, including proceeds, product, off-spring, rents, or profits of such property; and (iii) must file an accounting of such property. See 11 U.S.C. §§ 543(a), (b).

"To mollify the seemingly harsh and apparently inflexible requirement of § 543b, Congress provided in § 543d for dispensation of the apparent mandatory requirement of turnover provisions of the Section under certain circumstances." *Matter of WPAS, Inc.*, 6 B.R. 40, 43 (Bankr. M.D. Fla. 1980). Specifically, § 543(d)(1) provides as follows:

> (d)     After notice and hearing, the bankruptcy court --
>
> (1) may excuse compliance with subsection (a), (b), or (c) of this section if the interests of creditors and, if the debtor is not insolvent, of equity security holders would be better served by permitting a custodian to continue in possession, custody, or control of such property . . . .

11 U.S.C. § 543(d)(1); *see also In re Basil St. Partners, LLC*, 477 B.R. 856, 864 (Bankr. M.D. Fla. 2012).

"Accordingly, the Court may dispense with the enforcement of the mandate to oust a non-bankruptcy custodian from possession and control of the properties of the Debtor and may authorize the custodianship to proceed, after notice and hearing, if the *interest of creditors* (emphasis supplied) would be better served." *WPAS*, 6 B.R. at 43 (emphasis added and in original).

"This Section is merely a recognition of a long-recognized doctrine of abstention now expressly codified by Congress in § 305 of the Bankruptcy Code which permits the court to decline to entertain any controversy which otherwise would be within its judicial competence if to do so would be in the best interest of all parties concerned, although not necessarily the

interest of the debtor." *Id.* The key point to take from the statute and these cases is that the interests of the creditors are considered paramount.

Additionally, in analyzing whether to exercise discretion under § 543(d)(1), courts often consider several factors:

> (1)    whether there will be sufficient income to fund a successful reorganization;
>
> (2)    whether the debtor will use the turnover property for the benefit of the creditors;
>
> (3)    whether there has been mismanagement by the debtor;
>
> (4)    whether or not there are avoidance issues raised with respect to property retained by a receiver, because a receiver does not possess avoiding powers for the benefit of the estate;
>
> (5)    the fact that the bankruptcy automatic stay has deactivated the state court receivership action.

*In re Dill*, 163 B.R. 221, 225 (Bankr. E.D.N.Y. 1994). "The interests of the debtor, however, are not part of the criteria considered when applying section 543(d)(1)." *Id.* (citing *4 Collier on Bankruptcy*, ¶ 543.05 (15th ed. 1993)); see *In re Northgate Terrace Apartments, Ltd.*, 117 B.R. 328, 332 (Bankr. S.D. Ohio 1990) ("[U]nder § 543(d)(1), the Court's inquiry is limited to the interest of creditors.").

The instant matter is a textbook example of proper abstention. Here, the Property has not been managed by the Debtor for over four (4) months. When the Debtor was managing the Property, there were non-paying tenants, leases that had expired and converted to month-to-month, dissipation of rents, no escrowing for taxes, and significant past due real estate taxes. The Receiver has required tenants to pay rent for the units they occupy, paid taxes, and developed relationships with the tenants.

Although it may be in the Debtor's best interests to remove the Receiver and disrupt the Property, that is not a factor that courts consider. What courts do consider, however, is whether the removal would be in the creditors' best interests. In this case, there is only one major creditor, which holds approximately 99% of all claim amounts, secured and unsecured. Leaving the Receiver in control to manage the Property is plainly in the creditors' best interests.

A consideration of the factors in the case law also confirms this conclusion. First, the Debtor does not have anywhere near sufficient income to repay PNC the approximately $1,800,000.00 it owes, nor will it through any plan. Second, the Property has not been effectively managed. Third, from the Receiver's review of the financial records, of which there are few, there are no significant avoidance actions which the Receiver could not bring. To the extent any do exist, they would include various associates and insiders of the Debtor, which actions the Debtor is not likely to bring even if it could. Fourth, although the automatic stay deactivates the receivership, because this is a two-party dispute with few other creditors and significant negative equity in the Property, the principles underlying the automatic stay are not implicated and there is no justification for blocking continued management by the professional Receiver. See *In re Uno Broad. Corp.*, 167 B.R. 189, 201 (Bankr. D. Ariz. 1994) ("There would undoubtedly be substantial disruption, duplication, costs, and confusion arising out of another management change at this point.").

Considering the likely timeframes of this case, and the likelihood that this case will either be dismissed or that PNC will obtain relief from the stay, it is illogical to remove the Receiver, with all that attendant expense, disruption, and risk, only to have the plan fail and then go through the disruption and risk of putting the Receiver back in place sixty days from now.

Any plan proposed by the Debtor will not depend on, or require, the Debtor having current possession and control of the Property. Let the Debtor propose its plan, and if the Debtor can confirm it quickly, the plan can dictate who controls the Property once and for all. If the Debtor cannot confirm a plan, which PNC believes is inevitable, the Receiver can remain in place, and the Property is never disrupted. With such a short timeframe, and with so much at stake for PNC and so little at stake for the Debtor, it would be completely at odds with the creditors' interests to remove the Receiver, and in no way prejudicial to the Debtor for the Court to retain him.

Under the facts of this Chapter 11 case, excusing the Receiver from the turnover requirements of § 543(b) will be more beneficial to the creditors than requiring turnover. No viable party knows the Debtor's operations and assets better than the Receiver, and the Debtor has been absent for over four months. The Receiver is a professional who has managed the Property, while the Debtor has shown itself to be an amateur at best. To that end, PNC requests that the Court enter an order giving the Receiver the powers, rights, and duties of a debtor-in-possession under Sections 1107 and/or 1108 of the Bankruptcy Code and affirming his powers under the Receiver Order.

## CONCLUSION

WHEREFORE, PNC respectfully requests that this Court issue an Order *Nunc Pro Tunc* to the Petition Date, pursuant to § 543(d)(1) of the Bankruptcy Code (i) excusing the Receiver from the turnover requirements of §§ 543(a) and (b) of the Bankruptcy Code; (ii) granting the Receiver the powers, rights, and duties of a debtor-in-possession under Sections 1107 and/or 1108 of the Bankruptcy Code; (iii) authorizing the Receiver to be compensated pursuant to §§ 326 and 330 of the Bankruptcy Code; (iv) confirming the Receiver's powers under the

Receiver Order; and (v) granting such other and further relief as is deemed just and proper under the circumstances.

I HEREBY CERTIFY that the undersigned counsel has made a bona fide effort to resolve this matter without a hearing.

Dated this 17<u>th</u> day of June, 2015.

Respectfully submitted,

/s/ Denise D. Dell-Powell
Denise D. Dell-Powell, Esquire
Florida Bar Number: 0890472
**BURR & FORMAN LLP**
450 S. Orange Avenue, Suite 200
Orlando, FL 32801
Phone: (407) 540-6607
Fax: (407) 244-0889
Email: denise.dellpowell@burr.com

**ATTORNEYS FOR MOVANT**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via electronic mail using the Court's CM/ECF system on June 17, 2015 and/or via First Class U.S. Mail on June 17, 2015 to all parties on the attached creditors matrix[1].

/s/ Denise D. Dell-Powell
Denise D. Dell-Powell, Esq.

---

[1] A complete copy of the Exhibits has been filed with the Court. Any creditor wishing to obtain a copy of the Exhibits may contact the Movant's attorney and a copy of the Exhibits will be furnished to the creditor at no charge.

Label Matrix for local noticing
113A-3
Case 3:15-bk-02621-JAF
Middle District of Florida
Jacksonville
Wed Jun 17 10:50:07 EDT 2015

Florida Dept of Revenue
P.O. Box 6668
Tallahassee, FL 32314-6668

IRS
Centralized Insolvency Operations
P.O. Box 7346
Philadelphia, PA 19101-7346

K & R Business Investments, LLC
P. O. Box 535
Bunnell, FL 32110-0535

PNC BANK, NATIONAL ASSOCIATION
c/o Denise D. Dell-Powell, Esquire
200 S. Orange Avenue, Suite 800
Orlando, FL 32801-6404

A Dollars Worth
Debbie Cannon
501-5 North State Street
Bunnell, FL 32110-8015

Artistic Design
Rick Mueller
P.O. Box 350436
Palm Coast, FL 32135-0436

Coastal Cabinets, Inc.
Kim and Greg Shugg
P.O. Box 535
Bunnell, FL 32110-0535

D.A.P. Handyman
c/o Ron Johnson
300 N. Railroad
Bunnell, FL 32110

Denise D. Dell-Powell
Burr & Forman, LLP
200 S. Orange Avenue
Suite 800
Orlando, FL 32801-6404

Flagler County Tax Collector - Suzanne Johns
P.O. Box 846
Bunnell FL 32110-0846

Florida Dept. of Revenue
Bankruptcy Unit
P.O. Box 6668
Tallahassee, FL 32314-6668

Gregory G. Shugg
1354 Lambert Avenue
Flagler Beach, FL 32136-3011

Head Linez
Lekisha Price
501-8 N. State Street
Bunnell, FL 32110-8015

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

J & J Auto
Ray Stone
P.O. Box 2883
Bunnell, FL 32110-2883

Ketan Vora
c/o Hywel Leonard
Carlton Fields Jorden Burt, P.A.
P.O. Box 3239
Tampa, FL 33601-3239

Kimberly A. Shugg
1354 Lambert Avenue
Flagler Beach, FL 32136-3011

Nut Shack
Michael Stone
P.O. Box 2320
Bunnell, FL 32110-2320

PNC Bank
c/o Denise D. Dell-Powell
Burr & Forman, LLP.
200 S. Orange Ave, Suite 800
Orlando, FL 32801-6404

Secretary of the Treasury
15th & Pennsylvania Ave., NW
Washington, DC 20220-0001

Southern Insurance
Scott Olsen
P.O. Box 2150
Bunnell, FL 32110-2150

Those Guys Automotive
Dennis Allen
500-8 North Railroad
Bunnell, FL 32110

U.S. Securities & Exchange Commission
Office of Reorganization
950 East Paces Ferry Road, N.E.
Suite 900
Atlanta, GA 30326-1382

United States Attorney
300 North Hogan St Suite 700
Jacksonville, FL 32202-4204

United States Trustee - JAX 11
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801-2210

Scott W Spradley
Law Offices of Scott W Spradley PA
PO Box 1
109 South 5th Street
Flagler Beach, FL 32136-3604

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Ketan Vora

End of Label Matrix
Mailable recipients    26
Bypassed recipients     1
Total                  27

## LOAN AGREEMENT

This Business Loan Agreement between **K & R BUSINESS INVESTMENTS, LLC, a Florida limited liability company**, the Borrower, and **CYPRESSCOQUINA BANK**, the Lender, is made and executed on the following terms and conditions.

## WITNESSETH:

WHEREAS, Lender has issued a loan commitment and/or Credit Authorization Request Sheet dated July 30, 2004 to Borrower ("loan commitment") and the parties agree and understand that:

(a) in granting, renewing or extending any loan, Lender is relying upon Borrower's representations, warranties and agreements, as set forth in this Agreement;

(b) the granting, renewing or extending of any loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and

(c) all such loans shall be and shall remain subject to the following terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the premises, the Borrowers and Guarantors agree as follows:

I.    **TERM:**  This Agreement shall be effective as of <u>August 31, 2004</u> and shall continue thereafter until all indebtedness of Borrower to Lender has been performed in full and the parties terminate this Agreement in writing.

II.    **REPRESENTATIONS AND WARRANTIES.**  Borrower represents and warrants to Lender as of the date of this Agreement and as of the date of each disbursement of Loan proceeds:

A.    Financial statements provided by the Borrower have been prepared with generally accepted accounting principles and are accurate.  Financial statements provided by the Guarantor(s) accurately depict their respective financial position.

B.    There have been no adverse changes in the Borrower's financial condition since the date of the last financial statements furnished to the Bank.

C.    There are no legal or administrative proceedings pending or threatened which may

1

## EXHIBIT A

adversely affect the Borrower's position.

D.     The Borrower has marketable title to all assets shown on the financial statement furnished to the Bank.

E.     There has been no substantial loss or destruction of the physical properties of the Borrower since the date of the last financial statements furnished to the Bank.

F.     No default exists under the provisions of any of the loan documents, or under the provisions of any other agreement for borrowed money.

G.     All required federal and state tax returns have been filed for the Borrower.

H.     The Borrower has full authority to enter into the loan documents, has fully executed and delivered the loan documents and those documents are enforceable against the Borrower in accordance with their terms.

I.     The Borrower has all permits and licenses necessary to enable it to conduct its business operations and is in compliance with all applicable laws.

III.   **AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, while this Agreement is in effect, Borrower will:

A.     Deliver to the Lender financial information as the Lender may require from time to time, including but not limited to:

       (1)     On an annual basis, corresponding with Borrower's fiscal year end, Borrower and Guarantors will furnish Lender with financial statements, business and personal, and tax returns, in form, scope and substance satisfactory to Lender as prepared by a certified public accountant satisfactory to Lender.

       (2)     Borrower and Guarantor agree to furnish to Lender with periodic updated financial statements in such form or detail as reasonably required by Lender (which Lender may require to be certified and audited), but in any event, no later than ninety (90) days following the expiration of Borrowers' and Guarantors first fiscal year, and within ninety (90) days of the expiration of each fiscal or calendar year thereafter. Borrower and Guarantor further agree to provide Lender with its federal tax returns at least annually, within thirty (30) days of filing. In the event these documents are not provided to Lender within the time provided herein, the interest rate provided in the note, secured hereby, may, at Lender's option, increase to a rate equal to three (3%) above Cypress Bank's base rate of interest.

2

B.  The Borrower is to at all times maintain adequate insurance coverage on its assets and will promptly provide proof of said coverage to Bank.  Lender is to be named as loss payee on pledged assets which are insurable.

C.  Borrower shall promptly pay all taxes and other charges which may constitute a lien on its property.

D.  Borrower shall maintain its books and records in accordance with generally accepted accounting principles, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

E.  Borrower intends to use the loan proceeds solely for business or commercial related purposes.

F.  Borrower shall comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

G.  Borrower shall permit employees or agents of Lender at any reasonable time to inspect any and all collateral for the Loan or Loans and Borrower's or other properties and to examine or audit Borrower's books, accounts and records and to make copies and memoranda of Borrower's books, accounts and records.  If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party, Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

H.  Borrower shall make, execute and deliver to Lender such promissory notes, mortgages, deeds or trust, security agreements, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

I.  In exchange for the favorable rate and terms, the Borrower agrees to maintain its primary deposit accounts with Lender.   In the event Borrower fails to maintain its primary deposit accounts with Lender, the interest rate provided in the note secured hereby, may, at Lender's option, increase to a rate equal to one percent (1%) above the stated rate of interest.

J.  The Borrower agrees not to further encumber the subject property and/or obligate itself with any additional debt, so long as this loan is outstanding.

3

IV.    **EVENTS OF DEFAULT.** The term "default" or "defaults," wherever used in this Loan Agreement, shall mean any one or more of the following events:

    A.    Failure by the Borrower to pay as and when due and payable any portion of the Indebtedness.

    B.    Failure by Borrower to comply with or to perform when due any other term, obligation, covenant or condition contained in the Loan Commitment or in this Agreement or in the Loan Documents, or in any other agreement between Lender and Borrower.

    C.    The Borrower makes an assignment for the benefit of creditors, file a petition in bankruptcy, is adjudicated insolvent or bankrupt, petitions or applies to any tribunal for any receiver or any trustee of the property, commences any proceeding relating to the Borrower or Guarantor under reorganization, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, whether now or hereafter in effect, or if there is commenced against the Borrower any such proceeding which shall not be dismissed within sixty (60) days.

    D.    In the event of any non-monetary default, however, Payee shall give Borrower notice of same and a thirty (30) day opportunity to cure such default.

V.    **REMEDIES.** Upon the occurrence of any of the foregoing events of default which shall be continuing, the outstanding loan balance shall become immediately due and payable; without declaration or other notice to Borrower(s). Borrower expressly waives any presentment, demand, protest or other notice of any kind.

In the case of default, the Borrower hereby authorizes the Bank to proceed directly against any asset, whether or not owned or held by the Bank of Borrowers to the full extent of the Borrower's liability to the Bank.

VI.    **AMENDMENTS.** This agreement shall not be altered or amended without the prior written consent of the parties hereto.

VII.    **NOTICES.** All notices required to be given under this Agreement shall be given in writing and shall be effective when actually delivered or when deposited with a nationally recognized overnight courier or deposited in the United States registered or certified mail, first class, postage prepaid, return receipt required; notification by facsimile is specifically not allowed. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. To the extent permitted by applicable law, if there is more than one Borrower, notice to any Borrower will

4

constitute notice to all Borrowers. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Any such notice, if given to the Lender, shall be addressed as follows:

CYPRESSCOQUINA BANK
21 Cypress Point Parkway
Palm Coast, FL 32164

VIII.    COSTS & EXPENSES. Borrower agrees to pay upon demand all of Lender's out-of-pocket expenses, including reasonable attorneys' fees, incurred in connection with the preparation, execution, enforcement and collection of this Agreement or in connection with the Loans made pursuant to this Agreement. Lender may pay someone else to help collect the Loans and to enforce this Agreement, and Borrower will pay that amount. This includes, subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also will pay any court costs, in addition to all other sums provided by law.

IX.    BINDING NATURE. This Agreement shall inure to the benefit of and be binding upon the Borrower and the Lender and their respective heirs, executor, legal representative, successors in interest, successors in title and assigns. The obligations of Guarantor(s) shall be joint and several.

X.    SURVIVAL. All warranties, representations and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement shall be considered to have been relied upon by Lender and will survive the making of the Loan and delivery to Lender of the Loan Documents, regardless of any investigation made by Lender or on Lender's behalf. All provisions of the Loan Commitment are incorporated herein by reference and made a part hereof and shall survive the loan closing and the execution of this Agreement.

If the foregoing correctly states your understanding, please so indicate by signing this Agreement and retaining a copy for your records.

CYPRESSCOQUINA BANK
By: _____

5

Agreed and Accepted at <u>PALM COAST</u>, Florida this 31st day of August, 2004

WITNESSES:

Michael D. Chiumento

Susan Junod

K & R BUSINESS INVESTMENTS, LLC,
a Florida limited liability company

By: _____
Gregory G. Shugg, Managing Member

By: _____
Kimberly A. Shugg, Managing Member

## RESOLUTION
### (Limited Liability Company)

We, <u>Gregory G. Shugg and Kimberly A. Shugg</u>, as [check one] [ ] Manager; [X] Managing Members; [ ] Members; [ ] Officer; of **K & R BUSINESS INVESTMENTS, L.L.C., a Florida limited liability company**, (the "Company"), do hereby certify that the resolutions set forth below were duly adopted by the Members of the Company on the <u>315st</u> day of <u>August</u>, 2004, pursuant to a meeting duly called and held pursuant to the Bylaws/Regulations of the Company or pursuant to the consent in writing of all of the Members of the Company and such resolutions have not been amended, modified, rescinded or revoked and are in full force and effect on the date hereof:

**RESOLVED**, that **K & R BUSINESS INVESTMENTS, L.L.C., a Florida limited liability company** is authorized to borrow money in the amount of $1,280,000.00 from **CYPRESSCOQUINA BANK**, for the purchase of that certain real property described in Exhibit "A", and which will be secured by a Mortgage located in Flagler County, Florida, and evidenced by or secured by such other documents and instruments as are required to carry out the purpose and intent of these resolutions.

**FURTHER RESOLVED**, that the said <u>Gregory G. Shugg and Kimberly A. Shugg</u>, as [check one] [ ] Manager; [ X ] Managing Member; [ ] Member; [ ] Officer; of the Company, be and are hereby authorized and directed to take any and all other action and execute any and all other documents, including execution of the note and mortgage instruments, and agreements as necessary to carry out the purpose and intent of the foregoing resolutions. The execution of any such documents, instruments and agreements shall be conclusive evidence of the approval by the Company and binding effect on the Company.

**FURTHER RESOLVED**, that the said <u>Gregory G. Shugg and Kimberly A. Shugg</u>, as [check one] [ ] Manager; [ X ] Managing Member; [ ] Members; [ ] Officer; of the Company, be and are hereby authorized and directed to execute any deeds, conveyances and other documents necessary to carry out the purpose and intent of the foregoing resolutions.

WITNESS my hand and seal this <u>3/</u> day of August, 2004

Gregory G. Shugg
Its: Managing Member

Kimberly A. Shugg
Its: Managing Member

## EXHIBIT "A"

Lots 1 through 12, inclusive, Block 177, Town of Bunnell, according to the map or plat thereof as recorded in Plat Book 1, Page 2, Public Records of Flagler County, Florida, together with that portion of vacated Magnolia Avenue and Alley adjacent thereto, vacated pursuant to City of Bunnell Ordinance 1987-4 and 86-9, LESS AND EXCEPT:   Property taken or conveyed for highway purposes.

$1,280,000.00                                    Palm Coast , Florida
                                                August 31, 2004

## SECURED PROMISSORY NOTE

 **FOR VALUE RECEIVED,** the undersigned (jointly and severally, if more than one) (the "Borrower") promise(s) to pay to the order of **CYPRESSCOQUINA BANK,** its successors and\or assigns, a state banking association (the "Payee"), at the offices of Payee at 21 Cypress Point Parkway, Palm Coast, FL 32137, or at such other place or places as the holder of this Note from time to time may designate in writing, the principal sum of **One Million Two Hundred Eighty Thousand and no/100ths ($1,280,000.00) Dollars,** in lawful money of the United States (the "Loan"), together with interest in like lawful money from the date hereof at the applicable annual rate set forth below. Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the annual interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.

 1. **Interest Rate.** The unpaid principal balance of the Loan shall bear interest at a fixed rate of 6.75%, per annum for the entire sixty month term.

 2. **Payments and Maturity Date.** The principal and interest shall be payable in lawful money of the United States of America at the office of the Payee in Palm Coast, Florida, or at such other place as the Payee hereof may designate in writing. Interest on this Note shall accrue and principal and interest payments shall be as follows:

> Principal and interest payments will be due monthly based on a twenty year amortization. Payments will be applied first to interest and then to principal. Principal and interest payments of $9,690.00 each shall be due and payable beginning September 30, 2004 and continuing monthly thereafter for sixty (60) months. Upon the end of the sixty (60) month term the entire principal balance plus all accrued and unpaid interest shall be due and payable. This Note shall be due and payable in full on August 31, 2009.

> At maturity, this loan may be extended in the sole discretion of Lender upon terms which are mutually acceptable to Lender and Borrower.

 3. **Definitions.** Borrower and all endorsers, sureties, guarantors, and all persons liable or to become liable with respect to the Loan are each included in the term "Obligor" as used in this Note. This Note and all other instruments and documents executed by any Obligor in connection with the Loan, including without limitation any promissory notes, loan agreements, mortgages, security agreements, assignments, pledges, guaranties, contracts and any other documents executed to evidence or govern or

1

**EXHIBIT B**

secure the Loan, are referred to in this Note as the "Loan Documents".

4. **Acceleration of Maturity**. The entire unpaid principal balance of the Loan, together with all unpaid interest accrued thereon and all other sums owing under this Note or any other Loan Document, shall at the option of Payee become immediately due and payable without notice or demand: (a) upon any default in the payment of any sum within ten (10) days after said payment is due hereunder; or (b) upon any default in the payment of any sum due under any other Loan Document, subject to any applicable notice and grace period provided (if any); or (c) when permitted under any other Loan Document now or hereafter in effect, subject to any applicable notice and grace period provided therein (if any).

5. **Notice of Default and Opportunity to Cure**. In the event of any non-monetary default, however, Payee shall give Borrower notice of same and a thirty (30) day opportunity to cure such default.

6. **Late Charge**: If any payment is ten (10) days or more late, then Borrower will be charged five percent (5%) of the unpaid portion of the payment or $100.00, whichever is greater. Failure to exercise a late charge shall not constitute a waiver of such right in the event of subsequent late payments.

7. **Default Rate**. After maturity (whether by acceleration or otherwise), and at Payee's option during the existence of any uncured default under any Loan Document for which the applicable grace period (if any) shall have expired, the entire unpaid principal balance of the Loan and any other sums owing under any Loan Document shall bear interest at the highest rate then allowed by law (unless no such maximum lawful rate applies to the Loan, in which case the rate shall be eighteen percent (18%) per annum); provided, however, that after judgment all such sums shall bear interest at the rate prescribed by applicable law for judgments.

8. **Default**.  The occurrence of any of the following events shall constitute a default (Default) under this Note:

(a) Failure to pay any amount due under this Note in the manner and at the time specified in this Note, which failure shall continue uncured for fifteen (15) days;

(b) Dissolution, termination of existence, insolvency or admission in writing of inability to pay debts as they mature, of or by the Borrower;

(c) Appointment of a receiver, trustee or similar judicial officer or agent to take charge of or liquidate any property or assets of the Borrower, or action by any court to take jurisdiction of all or a substantial part of the property or assets of the Borrower;

(d) Conveyance of any or all property or assets of the Borrower to a liquidating agent, or making of an assignment for the benefit of creditors, or of a composition or similar arrangement with creditors by the Borrower;

(e) Commencement of any proceedings under any federal or state law, now or hereafter in force, relating to bankruptcy, reorganization, insolvency, liquidation or otherwise for the relief of debtors or readjustment of indebtedness, by or against the Borrower;

2

(f)    The receipt by holder of any order, ruling, decree or similar document from any court or government authority which has the effect of either (x) returning or disbursing any payment received from the Borrower or (y) delaying the receipt of any payment from the Borrower;

(g)    The entry of a decree or order by a court having jurisdiction adjudging the Borrower bankrupt or insolvent, or approving as property filed a petition seeking to declare Borrower insolvent under the Federal Bankruptcy Act or any other applicable federal or state law, or appointing a receiver, liquidator, assignee, trustee, sequestrator (or similar official) of the Borrower, or of any substantial part of his or its property or assets and the continuance of any such decree or order for thirty (30) consecutive days.

9.    **Rights and Remedies of Payee**.  Payee shall be entitled to pursue any and all rights and remedies provided by applicable law and\or under the terms of this Note or any other Loan Document, all of which shall be cumulative and may be exercised successively or concurrently.  Payee's delay in exercising or failure to exercise any rights or remedies to which Payee may be entitled in the event of any default shall not constitute a waiver of any of Payee's rights or remedies with respect to that or any subsequent default, whether of the same or a different nature, nor shall any single or partial exercise of any right or remedy by Payee preclude any other or further exercise of that or any other right or remedy.

10.    **Actions or Proceedings**.  All Obligors hereby severally:  (a) waive demand, presentment, protest, notice of dishonor, suit against or joinder of any other person, and all other requirements necessary to charge or hold any Obligor liable with respect to the Loan; (b) **WAIVE TRIAL BY JURY** in any action or proceeding brought in connection with the Loan or any guaranty thereof; (c) waive any right to immunity from any such action or proceeding and waive any immunity or exemption of any property, wherever located, from garnishment, levy, execution, seizure or attachment prior to or in execution of judgment, or sale under execution or other process for the collection of debts; (d) waive any right to interpose any set-off or non-compulsory counterclaim or to plead laches or any statute of limitations as a defense in any such action or proceeding, and waive (to the extent lawfully waivable) all provisions and requirements of law for the benefit of any Obligor now or hereafter in force; (e) submit to the jurisdiction of the state and federal courts in the State of Florida for purposes of any such action or proceeding; (f) agree that the venue of any such action or proceeding may be laid in Volusia County, Florida (in addition to any county in which any collateral for the Loan is located), and waive any claim that the same is an inconvenient forum; and (g) stipulate that service of process in any such action or proceeding shall be properly made if mailed by any form of registered mail (airmail if international), postage prepaid to the address then registered in Payee's records for the Obligor(s) so served, and that any process so served shall be effective ten (10) days after mailing.  No provision of this Note shall limit Payee's right to serve legal process in any other manner permitted by law or to bring any such action or proceeding in any other competent jurisdiction.

11.    **Costs and Expenses**.  The Obligors jointly and severally agree to pay all filing fees and similar charges and all costs incurred by Payee after and in connection with a default hereunder or under the Loan Documents in collecting or securing or attempting to collect or secure the Loan, including attorneys' and paralegals' fees, whether or not involving litigation and\or appellate administrative or bankruptcy proceedings.  The Obligors jointly a severally agree to pay any documentary stamp taxes, intangible taxes, sales taxes or other taxes (except for federal or Florida franchise or net income taxes) which may now or hereafter apply to this Note or the Loan or any security therefor, and the Obligors jointly and severally agree to indemnify and hold Payee harmless from and against any liability, costs, attorneys' fees, penalties, interest or expenses relating to any such taxes, as and when the same may be incurred.

3

12. **Consent to Changes.** The Obligors hereby severally consent and agree that, at any time and from time to time without notice, (a) Payee and the owner(s) of any collateral then securing the Loan may agree to release, increase, change, substitute or exchange all or any part of such collateral, and (b) Payee and any person(s) then primarily liable for the Loan may agree to renew, extend or compromise the Loan in whole or in part or to modify the terms of the Loan in any respect whatsoever; no such release, increase, change, substitution, exchange, renewal, extension, compromise or modification shall release or affect in any way the liability of any Obligor, and the Obligors hereby severally waive any and all defenses and claims whatsoever based thereon. Until Payee receives all sums due under this Note and all other Loan Documents in immediately available funds, no Obligor shall be released from liability with respect to the Loan unless Payee expressly releases such Obligor in a writing signed by Payee, and Payee's release of any Obligor(s) shall not release any other person liable with respect to the Loan.

13. **Governing Law.** This Note shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, except that federal law shall govern to the extent that it may permit Payee to charge, from time to time, interest on the Loan at a rate higher than may be permissible under applicable Florida law.

14. **Maximum Interest Rate.** In no event shall any agreed to or actual exaction charged, reserved or taken as an advance or forbearance by Payee as consideration for the Loan exceed the limits (if any) imposed or provided by the law applicable from time to time to the Loan for the use or detention of money or for right to demand such excess. In the event that the interest provisions of this Note or any actions provided for in this Note or any other Loan Document shall result at any time or for any reason in an effective rate of interest that transcends the maximum interest rate permitted by applicable law (if any), then without further agreement or notice the obligation to be fulfilled shall be automatically reduced to such limit and all sums received by Payee in excess of those lawfully collectible as interest shall be applied against principal immediately upon Payee's receipt thereof, with the same force and effect as though the payor had specifically designated such extra sums to be so applied to principal and Payee had agreed to accept such extra payment(s) as a premium-free prepayment or prepayments.

15. **Partial Invalidity.** Any provision of this Note which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction only, be ineffective only to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

16. **Miscellaneous.** All payments on this Note will be applied first to accrued interest and then to principal. This Note may be prepaid in whole or in part at any time without penalty upon ten (10) days' prior written notice to Payee. **TIME SHALL BE OF THE ESSENCE WITH RESPECT TO THE TERMS OF THIS NOTE.** The term "Payee" shall be deemed to include any subsequent holder(s) of this Note. Whenever used in this Note and unless the context otherwise requires, words in the singular include the plural, words in the plural include the singular, and pronouns of any gender include the other genders. Captions and paragraph headings in this Note are for convenience only and shall not affect its interpretation. This Note cannot be changed orally, but only by a writing signed by the party against whom enforcement of any change, modification, waiver or discharge is sought, nor shall any waiver on one occasion apply to any future occasion, but only to the specific occasion addressed in that signed writing. This Note is executed and delivered at the place of execution and will be construed and enforced in accordance with the laws of the State of Florida.

4

17. **Binding Effect**.  All of the terms of this Note shall be binding upon Borrower and Borrower's heirs, personal representatives, successors and assigns, jointly and severally.

18. **Security**.  This Note is executed under seal and is secured in part by that certain Mortgage, Assignment of Rents and Profits and Security Agreement even date with this Note, which encumbers real and personal property located in Flagler County, Florida.

19. **Cross-Collateralization**.  This note is cross-collateralized with any and all notes and security now or hereafter pledged with CYPRESSCOQUINA Bank  All notes and collateral securing these notes shall be cross-collateralized and a default in any one note shall cause default in each other note and vice-versa.

K & R BUSINESS INVESTMENTS, LLC,
a Florida limited liability company

By: _____
Gregory G. Shugg
Managing Member

By: _____
Kimberly A. Shugg
Managing Member

THE DOCUMENTARY STAMP TAXES REQUIRED BY THE STATE OF FLORIDA HAVE BEEN PAID AND ARE PROPERLY AFFIXED TO THE MORTGAGE SECURING THIS NOTE.

5

NT

## FIRST AMENDMENT TO SECURED PROMISSORY NOTE

This **FIRST AMENDMENT TO SECURED PROMISSORY NOTE** (the "Amendment") is made and entered into as of the 19th day of November, 2009 (the "Effective Date"), by and between **K&R BUSINESS INVESTMENTS, LLC,** a Florida limited liability company (the "Borrower"), whose mailing address for purpose of notice is 519 N. State Street, Brunnell, Florida 32110 and **RBC BANK (USA),** a state bank organized and existing under the laws of the State of North Carolina, (the "Lender") as successor by merger to CypressCoquina Bank, whose mailing address for purpose of notice is 420 South Orange Avenue, Suite 300, Orlando, Florida, 32801.

### W I T N E S S E T H

**WHEREAS,** on or about August 31, 2004, the Borrower executed and delivered to the Lender that certain Promissory Note in the original principal amount of $1,280,000.00 (the "Note"); and

**WHEREAS,** to secure the repayment of the Note, and to otherwise set forth the terms of the loan evidenced by such promissory note, the Borrower executed and delivered to the Lender certain loan documents, including but not limited to the following:

A.    That certain Mortgage, Assignment of Rents, and Profits and Security Agreement by and between the Borrower and Lender dated August 31, 2004, and recorded September 14, 2004, in Official Records Book 1142, Page 1912, in the Public Records of Flagler County, Florida (the "Mortgage"); and

B.    That certain Loan and Security Agreement by and between Borrower and Lender dated August 31, 2004.

**WHEREAS,** Gregory G. Shugg and Kimberly A. Shugg (the "Guarantors") each individually executed and delivered to Lender a Continuing and Unconditional Guaranty (together, the "Guaranty") guaranteeing payment to Lender of all of Borrower's indebtedness (as that term is defined in the Guaranty).

**WHEREAS,** all of the documents, agreements and instruments referred to above, and all other promissory notes, security instruments and other loan documents executed in connection therewith are hereinafter collectively referred to as the "Loan Documents"; and

**WHEREAS,** Borrower and Guarantors acknowledge that the Loan Documents are held by Lender and that the covenants of the Loan Documents have been breached in that (i) Borrower failed to pay timely and in full the monthly payments of principal and interest that became due and owing upon the Note beginning from the payment due December of 2008, and for each and every month thereafter, (ii) Borrower failed to pay 2007 and 2008 property taxes, resulting in a violation of the Mortgage, and (iii) Borrower failed to remain in good standing

RM:6982227:3

1

with the State of Florida, resulting in a violation of the Mortgage. Guarantors further acknowledge that they are in default of the Guaranty for failure to pay Borrower's indebtedness under the Note and failure to fulfill Borrower's obligations under the Loan Documents.

WHEREAS, as a result of such defaults, Borrower and Guarantors owe the Lender approximately $67,416.71 for past due interest payments as of the Effective Date, plus a per diem amount of $204.666047 which continues to accrue each and every day after the Effective Date, in addition to any late charges and attorneys' fees and costs (the "Past Due Amounts").

WHEREAS, as a further result of such defaults, on or about June 19, 2009, Lender filed a foreclosure action and an action on the Loan Documents to recover the amounts due thereunder pursuant to Case No. 2009 CA 001720 filed in the Circuit Court of the Seventh Judicial Circuit in and for Flagler County, Florida.

WHEREAS, the parties wish to settle the Lawsuit and modify certain terms and conditions of the Note in the manner set forth herein.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Borrower and Lender hereby agree as follows:

1.    **Incorporation of Recitals**. The recitals to this Amendment are fully incorporated herein by this reference with the same force and effect as though restated herein.

2.    **Past Due Payments**. Borrower agrees that it shall pay and deliver to Lender the total sum of $68,712.11 as payment for the Past Due Amounts, which shall be paid to Lender in accordance with the following schedule:

   a) On the Effective Date of this Amendment, Borrower shall pay to Lender the sum of $53,000.00 as partial payment for the Past Due Amounts.

   b) On December 1, 2009, Borrower shall make the first of (6) equal monthly installments of $2,618.69, for a total of $15,712.11, which represents the remainder of amounts due for the Past Due Amounts. Thereafter, Borrower shall make such monthly payments on the first (1st) day of each month.

3.    **Future Note Payments**. Borrower agrees that, beginning with the monthly payment due under the Note on December 1, 2009, and for every month thereafter through the Maturity Date, Borrower shall make all regular monthly payments in accordance with paragraph 2 of the Note, as amended by paragraph 5 of this Amendment.

4.    **Application of Proceeds**. All payments made after the Effective Date of this Amendment will, at the Lender's discretion, be applied against principal, interest, or other amounts owed to Lender in the order and priority determined by Lender in its sole discretion.

5.    **Amendment to Note**. Paragraph 2 of the Note is hereby revised as follows:

2

a) <u>Monthly Payments</u>. Regular payments of $9,696.00 shall be due monthly on the first (1st) day of each month.

b) <u>Maturity Date</u>. The Note shall be due and payable in full on June 15, 2010.

6. **Stipulation to Receiver**. Borrower agrees that it shall, concurrently with the execution of this Amendment, execute and deliver to Ruden, McClosky, Smith, Schuster & Russell, P.A., as escrow agent (together with any successors and assigns, "Escrow Agent"), a Stipulated Motion for Appointment of Receiver in the form provided by Lender (the "Stipulation"), which Stipulation shall be held in escrow by Escrow Agent until such time as until it receives written notice from Lender that Borrower has committed a default of this Amendment or any of the Loan Documents. Upon such notice, Escrow Agent shall release the Stipulation, which shall be filed with the Court in the Lawsuit and shall permit the immediate appointment of a Receiver in the Lawsuit pursuant to the terms and conditions of the Order Appointing Receiver attached to the Stipulation (the "Order"). The Receiver shall have all of the rights, duties and authority enumerated in the Order and shall remain in place pursuant to the Order until such time as the Lawsuit is concluded or dismissed. Borrower shall cooperate with Lender and Receiver as required to allow the Receiver to fulfill the duties and obligations enumerated in the Order and to otherwise effectively manage the Property.

7. **Abatement and Dismissal of the Lawsuit**. Upon the execution of this Amendment and the Stipulation and full payment of the Past Due Amounts referenced above, the Lawsuit shall be abated by joint stipulation. Once the terms and conditions of this Amendment have been met by Borrower, including payment of the Past Due Amounts in accordance with paragraph 2 above, Lender shall dismiss the Lawsuit with prejudice.

8. **Documents to Remain in Effect; Confirmation of Obligations**. The Note and the Loan Documents shall remain in full force and effect as originally executed and delivered by the parties, except as expressly modified and amended hereby. All references in the Loan Documents shall be deemed to refer to the Loan Documents, as modified. Borrower hereby confirms and reaffirms all of its obligations under the Note and the Loan Documents, as modified and amended herein, and confirms and reaffirms that the Loan Documents secure the Note. To induce Lender to enter into this Amendment, Borrower hereby represents, acknowledges and agrees that it does not now have or hold any defense to the performance of any of its obligations under the Note or the Loan Documents, nor does it have any claim against Lender which might be set off or credited against any payments due under the Note or Loan Documents. Borrower further represents, acknowledges and agrees that it does not have any actual or potential actions, claims, suits or defenses arising from any letters of intent, correspondence or other communications (oral or written) among Borrower and Lender.

9. **Guaranty Reaffirmation**. Guarantors do hereby ratify and confirm the Guaranty as an absolute, irrevocable and unconditional guarantee of the payment and performance obligations of the Borrower to the Lender under the Note with full knowledge that the obligations of the Borrower to the Lender have been renewed and modified by this Amendment.

RM:6982227:3

3

All references to the Note in the Guaranty are hereby modified to refer to the Note as amended by this Amendment.

10.    **Remedies**.  Borrower and Guarantors hereby agree that, upon any breach by Borrower under this Amendment or the occurrence of any new default under the Loan Documents, Lender may exercise any remedies to which Lender may be entitled under this Amendment, the Loan Documents or applicable law to collect amounts due under the Note or other Loan Documents, including, without limitation, proceeding with the Lawsuit and instituting the appointment of a Receiver as described in paragraph 6 of this Amendment.  In the event that any payment is not received by the applicable due date, including the payment referenced in paragraph 2(a), that non-payment shall constitute a default hereunder.

11.    **Certifications, Representations and Warranties**.  In order to induce Lender to enter into this Amendment, Borrower hereby certifies, represents and warrants to Lender that all certifications, representations and warranties contained in the Note and the Loan Documents and in all certificates heretofore delivered to Lender are true and correct as of the date hereof, and all such certifications, representations and warranties are hereby remade and made to speak as of the date of this Amendment.

12.    **Priority**.  The Borrower warrants and represents to the Lender that the lien of the security agreement contained in the Mortgage continues with the same priority upon the Collateral and that there are not any subsequent liens or rights or claims of lien outstanding against the real property or goods described therein which have not been subordinated to the lien of the Mortgage.

13.    **No Impairment of Security**.  Nothing contained herein shall be construed to impair the security of the Lender under the Mortgage or Loan Documents nor effect or impair rights or powers which the Lender may have under and by virtue of the Loan Documents for the recovery of the principal sum due under the Note, together with interest and costs.

14.    **Binding Effect**.  This Amendment shall be binding upon and shall inure to the benefit of the respective parties hereto, and their respective successors and assigns.

15.    **Payment of Costs**.  Borrower shall pay all costs of the Amendment made hereby, to include without limitation attorney's fees and costs.  Such costs shall be due at closing hereunder and the payment thereof shall be a condition precedent to Lender's duties hereunder. In the event it is determined that additional costs relating to the transaction are due, Borrower agrees to pay such costs immediately upon demand.

16.    **Novation**.  It is the intent of the parties that this instrument shall not constitute a novation and shall in no way adversely affect the lien priority of the security agreement contained in the Note and/or the other Loan Documents.  In the event that this Amendment, or any part hereof, shall be construed by a court of competent jurisdiction as operating to affect the lien priority of the Loan Documents over the claims which would otherwise be subordinate thereto, then to the extent so ruled by such court, and to the extent that third persons acquiring an

4

interest in such Property as is encumbered by the Loan Documents between the time of execution of the Amendment, or such portion hereof as shall be so construed, shall be void and of no force and effect and this Amendment shall constitute, as to that portion, a subordinate lien on the collateral described herein, incorporating by referenced the terms of the Loan Documents and which Loan Documents then shall be enforced pursuant to the terms therein contained, independent of this Amendment; provided, however, that notwithstanding the foregoing, the parties hereto, as between themselves, shall be bound by all terms and conditions hereof until all indebtedness owing from the Borrower to the Lender shall have been paid in full.

17.  **Waiver of Trial by Jury**.  THE BORROWER AND THE LENDER KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION BASED HERON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THE RENEWAL NOTE, MORTGAGE AND LOAN DOCUMENTS, AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY.  THIS PROVISION IS A MATERIAL INDUCEMENT FOR THE LENDER ENTERING INTO THE LOAN EVIDENCED BY THIS AMENDMENT.

18.  **Entire Agreement**.  This Amendment sets forth all of the covenants, provisions, agreements, conditions and understandings of the parties relating to the subject matter of this Amendment, and there are no covenants, promises, agreements, conditions or understandings, either oral or written, between them other than as are herein set forth.  The parties hereto hereby agree that the terms of this Amendment supersede all of the terms, conditions and obligations of Lender set forth in all prior commitment letters, correspondence or other commitments (oral or written) among Borrower and Lender.

19.  **Additional Documents**.  Borrower agrees to execute and deliver such other and further documents requested by Lender or its counsel to achieve the objectives of this Amendment.

20.  **Successors**.  This Amendment and the Loan Documents executed in connection herewith shall inure to the benefit of and shall be binding upon the parties and their respective successors, assigns and legal representatives.

21.  **Severability**.  In the event any provision of this Amendment shall be held invalid or unenforceable by any court of competent jurisdiction, such holding shall not invalidate or render unenforceable any other provision hereof.

22.  **Amendments, Changes and Modifications**.  This Amendment may be amended, changed, modified, altered or terminated only by a written instrument executed by all of the parties hereto.

23.  **Construction**.

RM:6982227:3

5

a.    The words "hereof", "herein", and "hereunder", and other words of a similar import refer to this Amendment as a whole and not to the individual sections in which such terms are used.

b.    The headings of this Amendment are for convenience only and shall not define or limit the provisions hereof.

c.    Where the context so requires, words used in singular shall include the plural and vice versa, and words of one gender shall include all other genders.

d.    Except as set forth herein, any words used herein shall have the same meaning set forth in the Note with respect to such words.

24.    **Execution of Counterparts**. This Amendment may be simultaneously executed in several counterparts, each of which shall be an original and all of which shall constitute but one and the same instrument.

25.    **Miscellaneous.**

a.    All costs incurred by Lender in enforcing this Amendment and in collection of sums due Lender from Borrower to include, without limitation, reasonable attorney's fees through all trials, appeals and proceedings, to include, without limitation, any proceedings pursuant to the Bankruptcy laws of the United States, shall be paid by Borrower.

b.    This Amendment shall be governed by and construed in accordance with the laws of the State of Florida and of the United States of America and the rules and regulations promulgated under the authority thereof.

c.    Time is of the essence of this Amendment.

d.    As used herein, the neuter gender shall includes the masculine and feminine genders, and vice versa, and the singular the plural, and vice versa, as the context demands.

[Signatures on following pages]

6

**IN WITNESS WHEREOF**, the parties have hereunto executed this Amendment as of the day and year first above written.

"BORROWER"

Signed and delivered

**K&R BUSINESS INVESTMENTS, LLC**, a Florida limited liability company

*Susie Worley*
Name: *Susie Worley*

By: _____
Gregory G. Shugg, as its Managing Member

*Susie Worley*
Name: *Susie Worley*

By: _____
Kimberly A. Shugg, as its Managing Member

"GUARANTORS"

*Susie Worley*
Name: *Susie Worley*

_____
Gregory G. Shugg

*Susie Worley*
Name: *Susie Worley*

_____
Kimberly A. Shugg

**STATE OF FLORIDA**
**COUNTY OF** *Flagler*

The foregoing instrument was acknowledged before me this 1ST day of ~~November,~~ December 2009, by Gregory G. Shugg, both individually and as Managing Member of K&R Business Investments, LLC, a Florida limited liability company, on behalf of the company, who is (check one) ▢ personally known to me or ▢ produced a driver's license as identification.

NOTARY SEAL

> CAROL EDDY
> Notary Public, State of Florida
> Commission# DD752507
> My comm. expires Feb. 9, 2012

*Carl Eddy*
Signature of Notary Public

**STATE OF FLORIDA**
**COUNTY OF** *Flagler*

The foregoing instrument was acknowledged before me this 1ST day of ~~November,~~ December 2009, by Kimberly A. Shugg, both individually and as Managing Member of K&R Business Investments, LLC, a Florida limited liability company, on behalf of the company, who is (check one) ▢ personally known to me or ▢ produced a driver's license as identification.

NOTARY SEAL

> CAROL EDDY
> Notary Public, State of Florida
> Commission# DD752507
> My comm. expires Feb. 9, 2012

*Carl Eddy*
Signature of Notary Public

RM:6982227:3

7

"LENDER"

**RBC BANK (USA)**, as successor by merger to CypressCoquina Bank, a state bank organized and existing under the laws of the State of North Carolina

_Stacy C. Wrzesniewski_
Name: STACY C. WRZESNIEWSKI

_Alaina Cavill_
Name: Alaina Cavill

By: _Dan Bockhorst_
Dan Bockhorst, as Vice President

STATE OF FLORIDA
COUNTY OF INDIAN RIVER

The foregoing instrument was acknowledged before me this 2ND day of December ~~November, 2009~~ 2009, by Dan Bockhorst, as Vice President for RBC BANK (USA), as successor by merger to CypressCoquina Bank, a state bank organized and existing under the laws of the State of North Carolina, on behalf of the Lender, who is (check one) ☒ personally known to me or ☐ produced _____ as identification.

NOTARY SEAL

_Stacy C. Wrzesniewski_
Signature of Notary Public

STACY C. WRZESNIEWSKI
MY COMMISSION # DD 627776
EXPIRES: January 8, 2011
Bonded Thru Notary Public Underwriters

8



PREPARED BY/RETURN TO:
MICHAEL D. CHIUMENTO, ESQ.
CHIUMENTO & DAVENPORT, P.A.
4 OLD KINGS ROAD NORTH, SUITE B
PALM COAST, FL 32137
Attn:  Kelly DeVore

Inst No: 2004053000  09/14/2004
12:08PM Book: 1142 Page: 1912 Total Pgs: 28
Doc Stamp-Mort $4480.00 Intang. Tax $2560.00
GAIL WADSWORTH, FLAGLER Co.

## MORTGAGE, ASSIGNMENT OF RENTS, AND PROFITS
## AND SECURITY AGREEMENT

THIS MORTGAGE, ASSIGNMENT OF RENTS, AND PROFITS AND SECURITY AGREEMENT, (this "Mortgage") is made and entered into as of August 31, 2004, by K & R BUSINESS INVESTMENTS, LLC, a Florida limited liability, (the "Mortgagor"), whose address is P.O. Box 535, Bunnell, FL  32110, for the benefit of CYPRESSCOQUINA BANK, its successors and\or assigns, a state banking association (the "Mortgagee"), whose address is 21 Cypress Point Parkway, Palm Coast, FL 32164.

## W I T N E S S E T H :

WHEREAS, Mortgagor is justly and lawfully indebted to Mortgagee in the sum of ONE MILLION TWO HUNDRED EIGHTY THOUSAND AND NO/100THS Dollars ($1,280,000.00) (the "Loan"), as evidenced by a certain Secured Promissory Note, dated as of even date herewith executed by Mortgagor and payable to the order of Mortgagee, a copy of such Promissory Note, being attached hereto as Exhibit "B" (such Notes, together with any modification, renewal or extension thereof, being herein collectively called the "Note");

WHEREAS,  Mortgagee would not make the Loan to Mortgagor without Mortgagor's execution and delivery of this Mortgage; and

WHEREAS, this Mortgage is executed, acknowledged and delivered by Mortgagor to secure and enforce the following obligations (collectively, the "Obligations"): (a) payment of and performance of all obligations of Mortgagor under the Note; (b) performance of every obligation, covenant and agreement of Mortgagor arising under or in connection with this Mortgage and the Loan Documents (as hereinafter defined); (c) payment of all sums advanced pursuant to the terms of this Mortgage to protect and preserve the Mortgaged Property (as hereinafter defined) and the lien and security interest created herein; (d) payment of all sums advanced and costs and expenses incurred by Mortgagee in connection with a default in the Obligations or any part thereof, any renewal, extension or change of or substitution for the Obligations or any part thereof, or the acquisition or perfection of the security therefor, whether made or incurred at the request of Mortgagor or Mortgagee; (e) payment of all other indebtedness and liabilities and performance of all

1

## EXHIBIT C

other obligations of Mortgagor to Mortgagee arising pursuant to or in connection with this Instrument or any other Loan Document; and (f) all renewals, extensions, amendments, modifications, consolidations and changes of or substitutions or replacements for, all or any part of the items described under clauses (a) through (e) above. The Mortgagor, the Guarantors and all makers, endorsers, sureties, guarantors and all persons liable or to become liable with respect to the Obligations are each referred to herein as the "Obligors". This Mortgage, the Note, any Loan Agreement entered into between Mortgagor and Mortgagee as of even date herewith (the "Loan Agreement"), and any other deed to secure debt, deed of trust, mortgage, collateral mortgage, pledge, security deed, security agreement, guaranty, assignment of leases or rents or other agreement or instrument now or hereafter given to evidence or further secure the payment and performance of any of the Obligations are herein referred to, Collectively, as the "Loan Documents".

NOW, THEREFORE, to secure the payment of the Obligations and the full and faithful performance of the covenants and agreements contained in this Mortgage and the other Loan Documents, Mortgagor hereby grants, bargains, sells, conveys, assigns, transfers, mortgages, pledges, delivers, sets over, warrants and confirms to Mortgagee, and grants Mortgagee a security interest in:

All those certain lots, pieces or parcels of land lying and being in Flagler County, Florida and being more particularly described in Exhibit "A" attached hereto and made a part hereof (the "Land"), together with all buildings, improvements and fixtures now or hereafter situated thereon (the "Improvements");

TOGETHER WITH all and singular tenements, hereditaments, easements, riparian rights and other rights now or hereafter belonging or appurtenant to the Land or the Improvements, and the Mortgagor's rights (if any) in all adjacent roads, ways, streams, alleys, rents, issues and profits thereof, and all the estate, right, title, interest, property, claim and demand whatsoever of Mortgagor of, in and to the same and every part and parcel thereof;

TOGETHER WITH any and all tangible property (collectively, the "Equipment"), now or hereafter owned by Mortgagor and now or hereafter located at, affixed to, placed upon or used in connection with the Land or the Improvements, or any present or future improvements thereon, including without limitation: all machinery, equipment, appliances, fixtures, conduits and systems for generating or distributing air, water, heat, air conditioning, electricity, light, fuel or refrigeration, or for ventilating or sanitary purposes, or for the exclusion of vermin or insects, or for the removal of dust, refuse, sewage or garbage, or for fire prevention or extinguishing; all elevators, escalators, lifts and dumbwaiters; all motors, engineers, generators, compressors, pumps, lift stations, tanks, boilers, water heaters, furnaces and incinerators; all furniture, furnishings, fixtures, appliances, installations, partitions, shelving, cabinets, lockers, vaults and wall safes; all carpets, carpeting, rugs, underpadding, linoleum, tiles, mirrors, wall coverings, windows, storm doors, awnings, canopies, shades, screens, blinds, draperies and related hardware, chandeliers and light fixtures; all plumbing, sinks, basins, toilets, faucets, pipes, sprinklers, disposals, laundry appliances and equipment, and kitchen appliances and equipment; all alarm, safety, electronic, telephone, music, entertainment and

2

communications equipment and systems; all janitorial, maintenance, cleaning, window washing, vacuuming, landscaping, pool and recreational equipment and supplies; and any other items of property, wherever kept or stored, if acquired by Mortgagor with the intent of incorporating them in or using them in connection with the Land or the Improvements; together also with all additions thereto and replacements and proceeds thereof; all of which foregoing items described in this paragraph are hereby declared to be part of the real estate and encumbered by this Mortgage; and

TOGETHER WITH, (a) any and all awards or payments, including interest thereon and the right to receive the same, growing out of or resulting from any exercise of the power of eminent domain (including the taking of all or any part of the Land or the Improvements), or any alteration of the grade of any street upon which the Land abuts, or any other injury to, taking of, or decrease in the value of the Land or the Improvements or any part thereof; (b) all rights of Mortgagor in and to any hazard, casualty, liability, or other insurance policy carried for the benefit of Mortgagor or Mortgagee with respect to the Improvements or the Equipment, including without limitation any unearned premiums and all insurance proceeds or sums payable in lieu of or as compensation for any loss of or damage to all or any portion of the Improvements or the Equipment; (c) all rights of Mortgagor in and to all supplies and materials delivered to or located upon the Land or elsewhere and used or usable in connection with the construction or refurbishing of Improvements; and (d) all rights of Mortgagor, in, to, under, by virtue of, arising from or growing out of any and all present or future contracts, instruments, accounts, insurance policies, permits, licenses, trade names, plans, appraisals, reports, paid fees, choses-in-action, subdivision restrictions or declarations and general intangibles whatsoever now or hereafter dealing with, affecting or concerning the Land or the Improvements or any portion thereof or interest therein, including but not limited to: (i) all contracts, plans and permits for or related to the Land or its development or the construction or refurbishing of the Improvements, (ii) any agreements for the provision of utilities to the Land or Improvements, (iii) all payment, performance or other bonds, (iv) any contracts now existing or hereafter made for the sale by Mortgagor of all or any portion of the Land or the Improvements, including any deposits paid by any purchasers (howsoever such deposits may be held; however, nothing herein shall impair the ability to return a deposit to a purchaser upon good faith termination of the purchase contract) and any proceeds of such sales contracts, including any purchase-money notes and mortgages made by such purchasers, and (v) any declaration of condominium restrictions, covenants, easements or similar documents now or hereafter recorded against the title to all or any portion of the Land.

TO HAVE AND TO HOLD, the above-described and granted property, appurtenances and rights (referred to collectively in this Mortgage as the "Mortgaged Property") unto Mortgagee in fee simple forever.

PROVIDED, HOWEVER, that these presents are upon the condition that if Mortgagor shall pay or cause to be paid to Mortgagee the principal and all interest and other sums payable in respect of the Obligations all without any deduction or credit for taxes or other similar charges paid by Mortgagor, then this Mortgage and all interests and rights hereby granted, bargained, sold, conveyed, assigned, transferred, mortgaged, pledged, delivered, set over, warranted and confirmed shall cease, terminate and be void, but shall otherwise remain in full force and effect.

3

Mortgagor covenants with and warrants to Mortgagee: (a) That Mortgagor has title to the Mortgaged Property, is lawfully seized and possessed of the Mortgaged Property in fee simple and has good right to sell and convey the same; (b) that the Mortgaged Property is unencumbered; and (c) that Mortgagor shall forever warrant and defend the Mortgaged Property unto Mortgagee and the validity and priority of this Mortgage, against the lawful claims and demands of all persons whomsoever. Mortgagor further covenants and agrees with Mortgagee as follows:

1. **Payment and Performance**. Mortgagor shall pay all sums due Mortgagee at the time and in the manner provided in the Loan Documents, and Mortgagor shall otherwise perform, comply with and abide by each and every one of the stipulations, agreements, conditions and covenants contained in the Loan Documents, subject to any applicable grace period contained in the Loan Documents.

2. **Taxes, Assessments and Charges**. Mortgagor shall pay all taxes, assessments (whether general or special) and other charges whatsoever levied, assessed, placed or made against all or any part of the Mortgaged Property or any interest of Mortgagee therein, or against any Loan Document or any obligation thereunder. Mortgagor shall make such payment in full (and shall deliver to Mortgagee the paid receipts) not later than thirty (30) days before the last day upon which the same may be paid without the imposition of interest (except interest on special assessments payable by law in installments, in which case Mortgagor shall pay each such installment when due) or other late charge or penalty. If Mortgagor shall fail, neglect or refuse to pay any such taxes, assessments or other charges as aforesaid, then Mortgagee at its option may pay the same, and any funds so advanced by Mortgagee shall bear interest, shall be paid and shall be secured as provided in paragraph 14.

3. **Insurance**. (a) Mortgagor shall maintain property insurance with a reputable insurance company or companies licensed in Florida with a Best's Rating of "A-XII", or better and otherwise reasonably acceptable to Mortgagee, covering all the Improvements and all the Equipment encumbered by this Mortgage, for an amount not less than their full insurable value on a replacement cost basis, without contribution or coinsurance (or with coinsurance and an agreed amount endorsement), for the benefit of Mortgagor and Mortgagee as their interests may appear, by policies on such terms, in such form and for such periods as Mortgagee shall require or approve from time to time, insurance with extended coverage and broad form coverage against loss or damage by fire, lightning, flood (if the Mortgaged Property is located in a flood-prone area and flood insurance is available), windstorm, hail, aircraft, riot, vehicles, explosion, smoke, falling objects, weight of ice or snow or sleet, collapse, sudden tearing asunder, breakage of glass, freezing, electricity, sprinkler leakage, water damage, earthquake, vandalism and malicious mischief, theft, riot attending a strike, civil commotion, war risks (when and if war risk coverage is available), and when and to the extent reasonably required by Mortgagee, against any other risks. Regardless of the types or amounts of insurance required and approved by Mortgagee, Mortgagor shall assign and deliver to Mortgagee all policies of insurance which insure against any loss or damage to the Mortgaged Property or any part thereof, as collateral and further security for the payment of the Obligations, with loss payable to

4

Mortgagee pursuant to a standard mortgagee clause acceptable to Mortgagee. (b) If Mortgagor fails to maintain such insurance in force, then Mortgagee at its option may effect such insurance from year to year and pay the premiums therefor, and any such sums advanced by Mortgagee shall bear interest, shall be paid and shall be secured as provided in paragraph 14. (c) Subject to the terms of the Loan Agreement if any insurance proceeds are received for loss or damage to the Improvements or the Equipment, then Mortgagee at Mortgagor's option may retain such proceeds and apply them toward the full payment of the Obligations, or Mortgagee may disburse them to Mortgagor for the repair or restoration of the damaged Improvements or Equipment in the same manner as disbursements under a construction loan; Mortgagee shall not be obligated to see to the proper application by Mortgagor of any such disbursement. In the event the insurance proceeds exceed the outstanding balance of the Obligations, then the difference will be disbursed to Mortgagor. The difference (d) In the event of a foreclosure of this Mortgage, the purchaser of the Mortgaged Property shall succeed to all the rights of Mortgagor in and to all policies of insurance required under this Mortgage, including any right to unearned premiums. (e) Not less than thirty (30) days prior to the expiration date of each policy required under this Mortgage, Mortgagor shall deliver to Mortgagee a renewal policy or policies marked "premium paid" or accompanied by other evidence of payment satisfactory to Mortgagee; however, if such original policy or policies are to be delivered to a senior mortgagee under the Prior Indebtedness, Mortgagee will accept copies of the same. (f) Each policy of insurance required under this Mortgage shall be non-cancelable without at least thirty (30) days' advance written notice to Mortgagee.

4. **Reappraisal**. Notwithstanding any term or provision hereof to the contrary, if at anytime the federal banking regulations require a reappraisal, then within one hundred eighty (180) calendar days from Mortgagee's written notice to Mortgagor thereof, Mortgagee may order a current appraisal of the Mortgaged Property in form and content as required by the federal banking regulations from an appraiser designated by Mortgagee. Said appraisal will be provided at Mortgagor's sole cost and expense. Mortgagor will promptly pay said appraisal expense upon receipt of billing. If Mortgagor shall fail to promptly pay said billing, Mortgagee may take such actions as set forth in the provisions set forth herein. Mortgagor shall cooperate fully with any such appraiser and provide all such documents and information as such appraiser may request in connection with such appraiser's performance and preparation of such appraisal. If the appraised value of the Mortgaged Property falls below the maximum amount that is or may be outstanding under the Indebtedness, Mortgagor will, by the close of business on the next business day after Mortgagee has sent written notice to Mortgagor of the deterioration of the Mortgaged Property, either (a) reduce the amount of the Indebtedness by the reduced amount of the re-appraisal or (b) grant additional collateral of a type and in an amount acceptable to Mortgagee. Mortgagor's failure to promptly and fully comply with Mortgagee's requirements under this provision shall, without further notice, constitute a default under this Mortgage and under any Indebtedness.

5. **Improvements and Development**. Without the prior written consent of the Mortgagee, which Mortgagee may grant or withhold in its sole discretion, none of the Improvements covered by the lien of this Mortgage shall be removed, demolished or materially altered or enlarged (except as required in the event of fire, other casualty or condemnation). Notwithstanding the foregoing,

Mortgagor shall have the right to remove and dispose of, free from the lien of this Mortgage, such Equipment as from time to time may become worn out or obsolete, provided that, simultaneously with or prior to such removal, Mortgagor shall have replaced any such Equipment with new or used Equipment (of at least the same quality as that of the replaced Equipment) which shall be free from any title retention or other security agreement or other encumbrance, and, by such removal and replacement, Mortgagor shall be deemed to have subjected such new Equipment to the lien of this Mortgage. Without the prior written consent of Mortgagee, which Mortgagee may grant or withhold in its sole discretion, Mortgagor shall not undertake any development of the Land, nor construct any new Improvements thereon, nor initiate or join in or consent to any new (or any change in any existing) private restrictive covenant, zoning ordinance, master plan, site plan, easement, or other public or private restrictions limiting or defining the uses which may be made of the Mortgaged Property or any part thereof. Mortgagor shall complete and pay for any permitted development or improvements undertaken on the Land within a reasonable time after commencing the same.

6. **Maintenance and Repair**. Mortgagor shall do everything necessary to maintain the Mortgaged Property in good condition and repair, shall operate the Mortgaged Property in a first class manner, shall not commit or suffer any waste, impairment, abandonment or deterioration of the Mortgaged Property, shall promptly pay all utility fees for services provided to the Mortgaged Property, and shall comply with (or cause compliance with) all applicable restrictive covenants and all statutes, ordinances and requirements of any governmental authorities having jurisdiction over the Mortgaged Property or the use thereof. In the event of any fire or other casualty loss or damage to all or any part of the Mortgaged Property, Mortgagor shall notify Mortgagee within forty-eight (48) hours of such occurrence. Provided Mortgagee allows insurance proceeds to be made available to Mortgagor in the event of an insured loss or allows awards with respect to taking injury to be made available to Mortgagee, Mortgagor shall promptly as such funds are received by Mortgagor repair, restore, replace or rebuild any part of the Mortgaged Property, which may be damaged or destroyed by any casualty whatsoever or which may be affected by any condemnation, alteration of grade, or other public or quasi-public taking or injury, as the case may be. If Mortgagor shall fail, neglect or refuse to repair or maintain the Mortgaged Property as aforesaid, then Mortgagee may at its option undertake such repairs or maintenance, and any funds advanced therefor by Mortgagee shall bear interest, shall be paid and shall be secured as provided in Paragraph 14.

7. **Assignment of Rents & Profits**. This Mortgage specifically encumbers and Mortgagor hereby assigns to Mortgagee all rents, royalties, issues, profits, revenues, income and other benefits from the Mortgaged Property to be applied against the indebtedness secured hereby; **PROVIDED**, however, that permission is hereby given to the Mortgagor so long as no default has occurred hereunder, to collect, receive, take, use and enjoy such rents, royalties, issues, profits, revenues, income and other benefits as they become due and payable but not in advance thereof. The foregoing assignment shall be fully operative without any further action on the part of either party, and specifically Mortgagee shall be entitled, at its option, upon the occurrence of a default hereunder, to all rents, royalties, issues, profits, revenues and income and other benefits from the Mortgaged Property whether or not Mortgagee takes possession of the property herein described. Upon any such default hereunder, the royalties, issues, profits, revenues, income, and other benefits from said

6

property shall terminate, and such permission shall be reinstated upon a cure of the default without the Mortgagee's specific consent. Neither the exercise of any rights under this paragraph by Mortgagee nor the application of any such rents, royalties, issues, profits, revenues, income or other benefits to the indebtedness and other sums secured hereby shall cure or waive any default or notice of default hereunder or invalidate any act done pursuant hereto or to any such notice, but shall be cumulative to all other rights and remedies.

8. **Further Encumbrances**. Mortgagor shall not grant any other lien or mortgage, other than to the principals of the corporation, if applicable, on all or any part of the Mortgaged Property or any interest therein, nor make any further assignment of the Leases and rentals of the Mortgaged Property without the prior written consent of Mortgagee, which Mortgagee may grant or withhold in its sole discretion; any such unpermitted lien or mortgage or assignment by Mortgagor shall entitle Mortgagee to declare the Obligations immediately due and payable and to foreclose this Mortgage. Any such unpermitted other lien or mortgage or assignment shall be junior to this Mortgage and to all permitted tenancies now or hereafter affecting the Mortgaged Property or any portion thereof and shall be subject to all renewals, extensions, modifications, releases, interest rate increases, future advances, changes or exchanges permitted by this Mortgage, all without the joinder or consent of such junior lienholder or mortgagee or assignee and without any obligation on Mortgagee's part to give notice of any kind thereto. Mortgagor shall maintain in good standing any other mortgage or encumbrance to secure debt affecting any part of the Mortgaged Property from time to time and shall not commit or permit or suffer to occur any default thereunder beyond any applicable notice and grace period nor shall Mortgagor accept any future advance under or modify the terms of any such mortgage or encumbrance which may then be superior to the lien of this Mortgage. Except for encumbrances permitted by Mortgagee, Mortgagor shall not commit or permit or suffer to occur any act or omission whereby any of the security represented by this Mortgage shall be impaired or threatened, or whereby any of the Mortgaged Property or any interest therein shall become subject to any attachment, judgment, lien, charge or other encumbrance whatsoever, and Mortgagor shall immediately cause any such attachment, judgment, lien, charge or other encumbrance to be discharged or otherwise bonded or transferred to other security. Mortgagor shall not directly or indirectly do anything or take any action which might prejudice any of the right, title or interest of Mortgagee in or to any of the Mortgaged Property or impose or create any direct or indirect obligation or liability on the part of Mortgagee with respect to any of the Mortgaged Property.

9. **Prohibited Transfers**. Mortgagor shall not cause or permit or suffer to occur any of the following events without the prior written consent of Mortgagee, which Mortgagee may grant or withhold in its sole discretion, and if any of the same shall occur without such consent, then Mortgagee shall have the right to declare the Obligations immediately due and payable and to foreclose this Mortgage: (a) if all or any portion of the legal or equitable or beneficial title to all or any portion of the Mortgaged Property or any interest therein shall in any manner whatsoever be sold, conveyed or transferred, either voluntarily or by operation of law; or (b) in the case of any portion of the Mortgaged Property directly or indirectly owned by a corporation (or a partnership or joint venture or trust or other business entity), if any stock or partnership interest or joint venture interest or beneficial interest in such owner shall be transferred, or if such stock or partnership

7

interest or joint venture interest or beneficial interest shall be assigned, pledged, hypothecated, mortgaged or otherwise encumbered. Notwithstanding the foregoing, nothing herein will prohibit (a) the entry of additional limited partners into a limited partnership owning any portion of the Mortgaged Property; (b) the transfer of any interest of any existing owner, partner or stockholder, as the case may be, to their living revocable trust agreements for estate planning purposes.

10. **Further Assurances**. From time to time and on reasonable demand, Mortgagor shall execute and deliver to Mortgagee (and pay the costs of preparing and recording) any further instruments required by Mortgagee to reaffirm, correct or perfect the evidence of the Obligations secured hereby and the lien and security interest of Mortgagee in all the Mortgaged Property and all additions, replacements and proceeds, including but not limited to mortgage modification agreements, mortgages, security agreements, financing statements, assignments and renewal and substitution notes.

11. **Estoppel Letters and Information**. Within seven (7) days after request in person or within ten (10) days after request by mail, Mortgagor shall furnish to Mortgagee a written statement, duly acknowledged, of the amount of principal and interest and other sums then owing on the Obligations and whether any offsets, counterclaims or defenses exist against the Obligations. Within seven (7) days after request in person or within ten (10) days after request by mail, Mortgagee shall furnish to Mortgagor a written statement, duly acknowledged, of the amount of principal and interest and other sums then owing on the Obligations, and whether Mortgagee has knowledge of any default of the Mortgagor under the Loan Documents.

12. **Notices**. Whenever Mortgagor or Mortgagee are obligated to give notice to the other, such notice shall be in writing and shall be either (i) hand delivered; or (ii) sent by telecopier transmission; or (iii) sent by Federal express or comparable commercially recognized overnight delivery service; or (iv) mailed by U.S. registered mail, return receipt requested, with postage prepaid, each addressed to the party at the respective address provided below or such other address as may be specified in written notice to the other party indicating a change in address. Notices will be deemed given (x) on the date of actual receipt (or refusal to accept receipt or inability to effect receipt because of an undisclosed change of address), if notice is sent by hand delivery or overnight delivery service, or (y) when transmitted if notice is sent by telecopier transmittal, or (z) on the date five (5) days after deposit in the U.S. mail, if notice is sent by U.S. registered mail, return receipt requested, postage prepaid.

**Mortgagee's Notice Address:**

CYPRESSCOQUINA BANK
21 Cypress Point Parkway
Palm Coast, FL 32164

8

**Mortgagor's Notice Address:**

K & R BUSINESS INVESTMENTS, LLC
P.O. BOX 535
BUNNELL, FL 32110

13. **Default**. At Mortgagee's option, all of the principal and interest and other sums secured by this Mortgage shall immediately or any time thereafter become due and payable without notice to any Obligor, and Mortgagee shall immediately have all the rights accorded Mortgagee by law and hereunder to foreclose this Mortgage or otherwise to enforce this Mortgage and any other Loan Document, upon the occurrence of any of the following defaults: (a) failure to pay any sum due under any Loan Document and the expiration of the notice and grace period (if any) provided therein; or (b) failure to pay tax, assessment, utility charge, or other charge against the Mortgaged Property or any part thereof as and when required by this Mortgage and such shall remain unpaid for ten (10) days after written notice thereof is given from Mortgagee to Mortgagor; or (c) any material waste, abandonment, abnormal deterioration, removal, demolition, material alteration or enlargement of any existing Improvements, or the commencement of construction of any new Improvements, in either case without the prior written consent of Mortgagee, which Mortgagee may grant or withhold in its sole discretion, and such is not cured within fifteen (15) days after notice of such from Mortgagee to Mortgagor (the foregoing shall be deemed "material" if potential liability could result to Mortgagee, if the ability of Mortgagor to perform its obligations under the Loan Documents is impaired, or if the value of the Mortgaged Property is decreased by more than $20,000.00); or (d) failure to keep in force the policies of insurance required by this Mortgage or any other Loan Document; or (e) Mortgagor's failure or refusal to provide any estoppel certificate within the time required by this Mortgage; or (f) Mortgagor's recordation of any notice limiting the amount of future advances that may be secured by this Mortgage; (g) any unpermitted sale, transfer (whether voluntary or by operation of law), conveyance or further encumbering of all or any part of the Mortgaged Property or any interest therein, or the additional assignment of all or any part of the rents, income or profits arising therefrom except as permitted herein; or (h) Mortgagor's failure to remove any involuntary lien on the Mortgaged Property or any part thereof within thirty (30) days after its filing, or the filing of any suit against the Mortgaged Property upon any claim or lien other than this Mortgage (whether superior or inferior to this Mortgage); however, Mortgagee agrees to withhold declaring such a default provided (1) Mortgagee reasonably determines that there is a legitimate dispute to which the Mortgagor has a reasonable chance of prevailing, (2) the value and priority of the security interest in the Mortgaged Property is not impaired or, if the value could be impaired and the dispute is not resolved within 45 days, Mortgagor, at Mortgagee's request, provides an adequate bond, funded reserve or other security equal to not less than the amount in dispute, and (3) Mortgagor diligently proceeds with the prosecution or resolution of the dispute; or (i) Mortgagor's failure to comply within twenty (20) days with a requirement, order or notice of violation of a law, ordinance, or regulation issued or promulgated by any political subdivision or governmental department claiming jurisdiction over the Mortgaged Property or any operation conducted on the

9

Mortgaged Property (or, if such order or notice provides a time period for compliance, Mortgagor's failure to comply within such period) provided Mortgagor has notice thereof, either from the enforcing agency, the Mortgagee or otherwise, or, in the case of a curable noncompliance requiring longer than the applicable time period for its cure, Mortgagor's failure to commence to comply with said order or notice within said period or failure thereafter to pursue such cure diligently to completion; or (j) the issuance of any final, non-appealable order by the State of Florida, or any subdivision, instrumentality, administrative board or department thereof, declaring unlawful or suspending any operation conducted on the Mortgaged Property which would effect the ability of Mortgagor to comply with its obligations under the Loan Documents; or (k) if any representation, warranty, affidavit, certificate or statement made or delivered to Mortgagee by or on behalf of any Obligor from time to time in connection with the Obligations or this Mortgage or any other Loan Document shall prove false, incorrect or misleading in any material respect; or (l) the failure or cessation or liquidation of the business of any Obligor, or if the person(s) controlling any Obligor which is a business entity shall take any action authorizing or leading to the same; or (m) any default by any Obligor in the payment of any indebtedness for borrowed money (whether direct or contingent and whether matured or accelerated) to Mortgagee or to any person whomsoever which default could have a material adverse affect on the ability of the Obligor to comply with the Obligations, or if any Obligor shall become insolvent or unable to pay such Obligor's debts as they become due; or (n) the disposition or transfer or exchange of all or substantially all of any Obligor's assets for less than fair market value, or the issuance of any levy, attachment, charging order, garnishment or other process against any property of any Obligor, or the filing of any materially adverse lien against any such property (and the expiration of any grace period provided in any Loan Document for the discharge of such lien); or (o) if any Obligor shall make an assignment for the benefit of creditors, file a petition in bankruptcy as debtor, apply to or petition any tribunal for the appointment of a custodian, receiver, intervenor or trustee for such Obligor or a substantial part of such Obligor's assets, or if any Obligor shall commence any proceeding under any bankruptcy, arrangement, readjustment of debt, dissolution or liquidation law or statute of any jurisdiction, whether now or hereafter in effect, or if any Obligor shall by act or omission approve, consent to or acquiesce in the filing of any such petition or application against such Obligor or the appointment of any such custodian, receiver, intervenor or trustee or the commencement of any such proceeding against such Obligor or the entry of an order for relief with respect to such Obligor, or if any such petition or application shall have been filed or proceeding commenced against any Obligor which remains undismissed for sixty (60) days or more or in which an order for relief is entered, or if any Obligor shall suffer any such appointment of a custodian, receiver, intervenor or trustee to continue undischarged for sixty (60) days or more; or (p) if any Obligor shall have concealed, transferred, removed, or permitted to be concealed or transferred or removed, any part of such Obligor's property with intent to hinder, delay or defraud any of such Obligor's creditors, or if any Obligor shall have made or suffered a transfer of any of such Obligor's properties which is invalid under any bankruptcy, fraudulent conveyance, preference or similar law; or (q) the existence of any uncured default under any other mortgage or encumbrance affecting any part of the Mortgaged Property then encumbered by this Mortgage; or (r) Mortgagee's election to declare the Obligations due and payable under the provision of any other Loan Document; or (s) any failure of Mortgagor to comply with the reporting requirements set forth in paragraph 33, and the continuation of such failure for more than thirty (30) days after written notice thereof; provided, however, that following three (3) failures to

10

comply with such reporting requirements within any consecutive twelve (12) month period, Mortgagor shall have no right to any notice or grace period with respect to any subsequent failure to comply with such reporting requirements (and such failure alone shall constitute a default under this Mortgage); or (t) any default in the observance or performance of any other covenant or agreement of any Obligor in this Mortgage or any other Loan Document, the occurrence of any other event prohibited by the terms of this Mortgage or any other Loan Document, or the violation of any other provision of this Mortgage or any other Loan Document, which, unless specified herein or in the Loan Documents is not cured by Mortgage within twenty (20) days after written notice thereof from Mortgagee to Mortgagor. No consent or waiver express or implied by Mortgagee with respect to any default under this Mortgage shall be construed as a consent or waiver with respect to any further default of the same or a different nature; and no consent or waiver shall be deemed or construed to exist by reason of any curative action initiated by Mortgagee or any other course of conduct or in any other manner whatsoever except by a writing duly executed by Mortgagee, and then only for the single occasion to which such writing is addressed. In order to declare the Obligations due and payable because of Mortgagor's failure to pay any tax, assessment, insurance premium, charge, liability, obligation or encumbrance upon the Mortgaged Property as required by this Mortgage, or because of any other default, Mortgagee shall not be required to pay the same or to advance funds to cure the default, notwithstanding Mortgagee's option under this Mortgage or any other Loan Document to do so; no such payment or advance by Mortgagee shall be deemed or construed a waiver of Mortgagee's right to declare the Obligations due and payable on account of such failure or other default.

14. **Advances Hereunder**. In the event of any default in the performance of any of Mortgagor's covenants or agreements contained in this Mortgage or any other Loan Document or the violation of any term thereof, Mortgagee shall have the right (but in no event the obligation) at its option to cure the default or take any other action Mortgagee deems necessary or desirable to protect its security (including without limitation the payment of any taxes, assessments, insurance premiums, charges, liens or encumbrances required of Mortgagor under this Mortgage), without thereby waiving any rights or remedies otherwise available to Mortgagee. If Mortgagee shall elect to advance at any time any sum(s) for the protection of its security or for any other reason permitted or provided by any of the terms of this Mortgage or any other Loan Document, then such sum(s) shall be deemed Obligations, shall be repaid by Mortgagor on demand, shall be secured by this Mortgage and shall bear interest at the Default Rate, commencing on the date they are advanced by Mortgagee. Mortgagee's lien on the Mortgaged Property for such advances shall be superior to any right of title to, interest in, or claim upon all or any portion of the Mortgaged Property junior to the lien of this Mortgage.

15. **Receiver**. In any action to foreclose this Mortgage, or upon the actual or threatened waste to any material part of the Mortgaged Property, Mortgagee shall have the right to apply without notice for the appointment of a receiver of the Mortgaged Property and the rents and profits thereof, and Mortgagee shall be entitled to the appointment of such a receiver as a matter of right, without consideration of the value of the Mortgaged Property as security for the amounts due Mortgagee or the solvency of any Obligor. To the extent permitted by law, Mortgagor hereby waives

11

any right to object to the appointment of a receiver as aforesaid and expressly consents that such appointment shall be made as an admitted equity and as a matter of absolute right to Mortgagee.

16. **Remedies**. The rights and remedies of Mortgagee under this Mortgage or any other Loan Document or applicable law shall be cumulative and concurrent and may be pursued separately, successively or together against any Obligor(s), the Mortgaged Property, any other collateral for the obligations, or any one or more of the foregoing, all at the sole discretion of Mortgagee, and may be exercised as often as occasion therefor shall arise, all to the maximum extent permitted by law. Mortgagee's pursuit of any remedy shall not preclude pursuit of any other remedy until Mortgagee shall have recovered all sums due Mortgagee, together with the appropriate interest thereon and all costs of collection, including attorney' fees and appellate attorneys' fees, with interest thereon. Neither Mortgagor nor anyone claiming through or under Mortgagor shall set up, claim or seek to take advantage of any appraisement, valuation, stay, moratorium extension, exemption ore redemption laws, now or hereafter in force, in order to prevent or hinder the enforcement or foreclosure of this Mortgage or the sale of the Mortgaged Property. To the maximum extent permitted by law, the Obligors, for themselves and all who may claim through or under any of them, hereby severally waive the benefit of all such laws and waive any and all rights to have the Mortgaged Property or any other collateral for the Obligations marshalled upon any foreclosure of this Mortgage or any other instrument securing the Obligations, and hereby severally agree that the Mortgaged Property and any such other collateral may be sold as an entirety or in such parcels, in such manner and in such order as Mortgagee in its sole discretion may elect.

17. **Fees and Expenses**. Mortgagor shall pay any and all costs, expenses and attorneys' and paralegals' fees incurred by Mortgagee (regardless of whether in connection with any action, proceeding or appeal) to sustain the lien of this Mortgage or its priority, to protect or enforce any of Mortgagee's rights under this Mortgage or under any Loan Document, to recover any indebtedness secured hereby, to contest or collect any award or payment in connection with the taking or condemnation of all or any part of the Mortgaged Property, or for any title examination or abstract preparation or appraisal or title insurance policy relating to the Mortgaged Property, and all such sums shall bear interest, shall be paid and shall be secured as provided in paragraph 14.

18. **Condemnation**. Immediately upon obtaining knowledge of the institution or pending institution of any proceedings for the condemnation of the Mortgaged Property or any portion thereof, Mortgagor shall notify Mortgagee thereof. Mortgagee may participate in any such proceedings and may be represented therein by counsel of its selection, and Mortgagor will deliver to Mortgagee all instruments requested by Mortgagee from time to time to permit or facilitate such participation. In the event of any such condemnation proceedings, the award or compensation payable is hereby assigned to and shall be paid to Mortgagee (up to an amount equal to the then outstanding Obligations), and Mortgagee shall not be obligated to question the amount of any such award or compensation. At Mortgagee's option, all or any portion of the award or compensation shall be applied toward payment of the Obligations (in any order of priority Mortgagee may deem appropriate in its sole discretion) or shall be disbursed to Mortgagor from time to time for the restoration of the Mortgaged Property in the same manner as disbursements under a construction

12

loan; Mortgagee shall not be obligated to see to the proper application by Mortgagor of any scheduled disbursement. Notwithstanding any such condemnation award or compensation or the rate of interest payable thereon, Mortgagor shall continue to pay interest on the Obligations of Mortgagor except to the extent that Mortgagee shall have actually received and applied the award or compensation against the Obligations. If all of the Mortgaged Property is so taken but the award or compensation is insufficient to pay Obligations in full, then at Mortgagee's option the unpaid balance shall be immediately due and payable. This paragraph is subject to the terms of the Loan Agreement.

19. **Documentary Stamps and Intangible Tax**. If at any time the State of Florida shall determine that the intangible tax paid in connection with this Mortgage is insufficient or that the documentary stamps affixed thereto are insufficient, and that additional intangible tax should be paid or that additional stamps should be affixed, then Mortgagor shall pay for the same, together with any interest or penalties imposed in connection with such determination, and Mortgagor hereby agrees to indemnify and hold Mortgagee harmless therefrom. If any such sums shall be advanced by Mortgagee, they shall bear interest, shall be paid and shall be secured as provided in paragraph 14.

20. **Uniform Commercial Code**. This Mortgage is a "security agreement" and creates a "security interest" in favor of Mortgagee as a "secured party" with respect to all property included in the Mortgaged Property which is covered by the Uniform Commercial Code. Upon default under this Mortgage or any other Loan Document beyond any required notice and the expiration of any grace period, Mortgagee may at its option pursue any and all rights and remedies available to a secured party with respect to any portion of the Mortgaged Property so covered by the Uniform Commercial Code, or Mortgagee may at its option proceed as to all or any part of the Mortgaged Property in accordance with Mortgagee's rights and remedies in respect of real property. Mortgagor and Mortgagee agree that the mention of any portion of the Mortgaged Property in a financing statement filed in the records normally pertaining to personal property shall never derogate from or impair in any way their declared intention that all items of collateral described in this Mortgage are part of the real estate encumbered hereby to the fullest extent permitted by law, regardless of whether any such item is physically attached to the Improvements or whether serial numbers are used for the better identification of certain items of Equipment. Specifically, the mention in any such financing statement of (a) the rights in or the proceeds of any insurance policy, (b) any award in eminent domain proceedings for a taking or for loss of value, (c) Mortgagor's interest as lessor in any present or future lease or right to income growing out of the use or occupancy of the Land or Improvements, whether pursuant to lease or otherwise, or (d) any other item included in the definition of the Mortgaged Property shall never be construed to alter any of the rights or Mortgagee as determined by this Mortgage or to impugn the priority of Mortgagee's lien and security interest with respect to the Mortgaged Property; such mention in a financing statement is declared to be for the protection of Mortgagee in the event any court shall hold that notice of Mortgagee's priority of interest with respect to any such portion of the Mortgaged Property must be filed in the Uniform Commercial Code records in order to be effective against or to not take priority over any particular class of persons, including but not limited to the federal government and any subdivision or instrumentality of the federal government. This Mortgage or a carbon, photographic copy or other reproduction hereof or of any financing statement shall be sufficient as a financing statement.

13

21. **Payments to Mortgagee**. Any payment made in accordance with the terms of the Loan Documents by any person at any time liable for the payment of the whole or any part of the Obligations, by any subsequent owner of the Mortgaged Property, or by any other person whose interest in the Mortgaged Property might be prejudiced in the event of a failure to make such payment (or by any partner, stockholder, officer or director of any such person), shall be deemed, as between Mortgagee and all persons who at any time may be so liable or may have an interest in the Mortgaged Property, to have been made on behalf of all such persons. Mortgagee's acceptance of any payment which is less than full payment of all amounts then due and payable to Mortgagee, even if made by one other than the person liable therefor, shall not constitute a waiver of any rights or remedies of Mortgagee.

22. **Consent to Changes**. Mortgagor consents and agrees that, at any time and from time to time without notice, (a) Mortgagee and the owner(s) of any collateral then securing the Obligations may agree to release, increase, change substitute or exchange all or any part of such collateral, and (b) Mortgagee and any person(s) then primarily liable for the Obligations may agree to renew, extend or compromise the obligations in whole or in part or to modify the terms of the Obligations in any respect whatsoever. Mortgagor agrees that no such release, increase, change, substitution, exchange, renewal, extension, compromise or modification, no sale of the Mortgaged Property or any part thereof and except as provided in any guaranty, no forbearance on the part of Mortgagee, nor any other indulgence given by Mortgagee (whether with or without consideration) shall relieve or diminish in any manner the liability of any Obligor, except in accordance with the terms thereof, nor adversely affect the priority of this Mortgage, nor limit or prejudice or impair any right or remedy of Mortgagee. All Obligors and all those claiming by, through or under any of them hereby jointly and severally waive any and all right to prior notice of, and any and all defenses or claims based upon, any such release, increase, change, substitution, exchange, renewal, extension, compromise, modification, sale, forbearance or indulgence.

23. **Governing Law**. This Mortgage shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, excepting only that federal law shall govern to the extent it may permit Mortgagee to charge, from time to time, interest on the Obligations at a rate higher than may be permissible under applicable Florida law.

24. **No Usury**. In no event shall any agreed to or actual exaction charged, reserved or taken as an advance or forbearance by Mortgagee as consideration for the Obligations exceed the limits (if any) imposed or provided by the law applicable from time to time to the Obligations for the use or detention of money or for forbearance in seeking its collection; Mortgagee hereby waives any right to demand any such excess. In the event that the interest provisions of the Loan Documents or any exactions required thereunder shall result at any time or for any reasons in an effective rate of interest that transcends the maximum interest rate permitted by applicable law (if any), then without further agreement or notice the obligation to be fulfilled shall automatically be reduced to such limit and all sums received by Mortgagee in excess of those lawfully collectible as interest shall be applied against the principal of the Obligations immediately upon Mortgagee's receipt thereof, with the same

14

force and effect as though the payor had specifically designated such extra sums to be so applied to principal and Mortgagee had agreed to accept such extra payment(s) as a premium free prepayment or prepayments.

25. **Severability**. Any provision of this Mortgage which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction only, be ineffective only to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

26. **Inspection**. Mortgagee and any persons authorized by Mortgagee shall have the right, from time to time at the discretion of Mortgagee, to enter and inspect the Mortgaged Property at reasonable times and upon at least two days prior written notice from Mortgagee to Mortgagor. At anytime after default under the terms of this Mortgage or any other Loan Document, if any of the Improvements or Equipment shall be unprotected or unguarded, or if any of the Improvements shall be allowed to remain vacant or deserted, then at its option Mortgagee may employ watchmen for the Mortgaged Property and expend any monies deemed necessary by Mortgagee to protect the same from waste, vandalism and other hazards, depredation or injury, and any sums expended by Mortgagee for such purpose shall bear interest, shall be paid and shall be secured as provided in paragraph 14.

27. **Indemnity**. In the event Mortgagee shall be named as a party to any lawsuit brought at any time against Mortgagor or with respect to the Mortgaged Property or this Mortgage or the Obligations, then regardless of the merits of such lawsuit Mortgagor shall defend Mortgagee and indemnify and hold Mortgagee fully harmless from any and all claims, demands, damages, liabilities, judgments, losses, costs, expenses and attorney's fees arising out of or resulting from any such lawsuit or any appeal in connection herewith, except to the extent such lawsuit arises from the willful misconduct or gross negligence of the Mortgagee.

28. **No Partnership**. Mortgagor and Mortgagee hereby acknowledge and agree that Mortgagee is not, has never been and shall not be deemed a partner or joint venturer of Mortgagor any other Obligor with respect to the Mortgaged Property, and that the relationship of Mortgagee to said parties is, has always been, and shall continue to be strictly the role of a lender. Mortgagor hereby (a) waives and relinquishes any and all claims, demands, counterclaims and\or defenses alleging the existence of any partnership, joint venture or other fiduciary relationship between any of them and Mortgagee, and (b) agrees to indemnify and hold Mortgagee harmless against any and all losses, damages, penalties, fines, forfeitures, legal fees and related costs, judgments, and any other fees, costs and expenses that Mortgagee may sustain as the result of any such allegation by any person whomsoever.

29. **Environmental Law**. Mortgagor shall not cause or permit the Mortgaged Property to be used for the generation, handling, storage, transportation, disposal or release of any Hazardous Substance (as hereinafter defined) except as exempted or permitted under applicable Environmental Laws (as hereinafter defined), and Mortgagor shall not cause or permit the Mortgaged Property or

15

any activities conducted thereon to be in violation of any applicable Environmental Law. Mortgagor hereby agrees to indemnify, reimburse, defend and hold harmless Mortgagee, its partners and affiliates, and their respective officers, directors, shareholders, employees, agents, successors and assigns from and against all demands, claims, civil or criminal actions or cause of action, liens, assessments, civil or criminal penalties or fines, losses, damages, liabilities, obligations, costs, disbursements, expenses or fees of any kind or of any nature (including, without limitation, cleanup costs, attorneys', consultants' or experts' fees and disbursement and costs of litigation) which may at any time be imposed upon, incurred by or asserted or awarded against, Mortgagee, its partners or affiliates, or their respective officers, directors, shareholders, employees, agents, successors or assigns, directly or indirectly, resulting from: (a) any acts or activities of Mortgagor at, on or about the Mortgaged Property which contaminate air, soils, surface waters or groundwaters over, on or under the Mortgaged property; (b) arising from or out of any Hazardous Substance on, in, under or about the Mortgaged Property; (c) pursuant to or in connection with the application of any Environmental Law to the acts or omissions of Mortgagor or any other person and any environmental damage alleged to have been caused, in whole or in part, by the transportation, treatment, storage, or disposal of any pollutant, contaminant or chemical, or industrial, toxic, or hazardous substance petroleum product; or (d) arising from or in relation to the presence, whether past, present or future, of any toxic or hazardous waste or substance on the Mortgaged Property, except as may have been caused by Mortgagee in the event Mortgagee succeeds to possession on default. The terms of this paragraph are subject to the terms of the Loan Agreement including without limitation those limiting Mortgagor's liability hereunder.

Without limiting the foregoing, this indemnification provision specifically protects the Mortgagee and the other indemnified parties against any claim or action from activities described in (a), (b), (c) or (d) above, based in whole or in part upon any environmental statute, rule, regulation or policy, including but not limited to chapters 403 and 376, Florida Statutes, the Florida Administrative Code, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, ("CERCLA") 42 USC 9601, et seq., as amended, the Resource Conservation & Recovery Act, 42 USC 6901, et seq., and other laws, whether now in existence or enacted in the future.

To the extent Mortgagee is held or exposed to strict liability, or liability regardless of fault or lack of knowledge of the Mortgagee of the violation of any requirement herein above described, Mortgagor's indemnification obligation to Mortgagee under this paragraph shall likewise be without regard to fault or knowledge on the part of Mortgagor with respect to such violation. Mortgagor's obligation under this paragraph shall not be limited to any extent by the term of the Note or other Obligations secured hereby, and, as to any act or occurrence prior to payment in full and satisfaction of the Obligations which gives rise to liability hereunder, shall continue, survive and remain in full force and effect notwithstanding payment in full and satisfaction of the obligations and this Mortgage or foreclosure under this Mortgage, or any conveyance in lieu of foreclosure. The provisions of this paragraph shall be deemed to survive and continue in full force and effect after any foreclosure or other proceeding by which the Mortgagee, and its successors ad assigns, succeed to ownership of the Mortgaged Property.

Mortgagee shall have the right, in its sole discretion, to require Mortgagor to periodically (but not more frequently than annually unless an Environmental Complaint, as hereinafter defined, is then outstanding) perform (at Mortgagor's expense) an environmental audit and, if deemed necessary by Mortgagee, an environmental risk assessment, each of which must be satisfactory to Mortgagee, of the Mortgaged Property, hazardous waste management practices and\or hazardous waste disposal sites used by Mortgagor. Such audit and\or risk assessment must be by an environmental consultant satisfactory to Mortgagee. Should Mortgagor fail to perform said environmental audit or risk assessment within thirty (30) days of the Mortgagee's written request, Mortgagee shall have the right, but not the obligation, to retain an environmental consultant to perform such environmental audit or risk assessment. All costs and expenses incurred by Mortgagee in the exercise of such rights shall bear interest, shall be paid and shall be secured as provided in paragraph 14.

As used herein, "Environmental Law" means any federal, state, or local statutory or common law relating to pollution or protection of the environment, including without limitation, any common law of nuisance or trespass, and any law or regulation relating to emissions, discharges, releases or threatened releases of pollutants, contaminants or chemicals, or industrial, toxic or hazardous substances or waste into the environment (including without limitation, ambient air, surface water, groundwater, land surface or subsurface strata) or otherwise relating to the manufacture, processing, distribution, use, treatment, storage, disposal, transport or handling of pollutants, contaminants or chemicals or industrial, toxic or hazardous substances or wastes.

As used herein "Hazardous Substance" means any substance or material (i) identified in Section 101(14) of CERCLA, 42 USC 9601(14), as the same may be amended from time to time, or (ii) determined to be toxic, a pollutant or contaminant, under federal, state or local statute, law ordinance, rule, or regulation or judicial or administrative order or decision, as same may be amended from time to time, including but not limited to petroleum and petroleum products as defined in Sec. 376.301(10), Florida Statutes, as same may be amended from time to time.

As used herein "Environmental Complaint" means any civil, criminal or administrative action, suit, demand, claim, hearing, notice or demand letter, notice of violation, investigation, or proceeding pending or threatened against the Mortgaged Property relating in any way to the manufacture, processing, distribution, use, treatment, storage, disposal, transport or handling, or the emission, discharge, release or threatened release into the environment, of any pollutant, contaminant, chemical, or industrial toxic or hazardous substance or waste.

30. **Representations and Warranties**. In order to induce Mortgagee to extend the credit secured hereby, Mortgagor represents and warrants that: (a) to the best of Mortgagor's knowledge and belief, except as previously or concurrently disclosed in writing to Mortgagee, there are no actions, suits or proceedings pending or threatened against or affecting any Obligor or any portion of the Mortgaged Property or involving the validity or enforceability of this Mortgage or the priority of its lien, before any court of law or equity or any tribunal, administrative board or governmental authority, and no Obligor is in default under any other indebtedness or with respect to any order, writ, injunction, decree, judgment or demand of any court or any governmental authority; (b) the

17

execution and delivery of this Mortgage and all other Loan Documents do not and shall not (i) violate any provisions of any law, rules, regulation, order, writ, judgment, injunction, decree, determination or award applicable to any Obligor, or (ii) result in a breach of, or constitute a default under, any indenture, bond, mortgage, lease, instrument, credit agreement, undertaking, contract or other agreement to which any Obligor is a party or by which any of them or their respective properties may be bound or affected; (c) this Mortgage and all other Loan Documents constitute valid and binding obligations of the Obligor(s) executing the same, enforceable against such Obligor(s) in accordance with their respective terms; (d) all financial statements of the Obligors previously delivered to Mortgagee have been prepared in accordance with generally accepted accounting principles consistently applied (or cash basis accounting for those Obligors who are individuals) and fairly present the correct respective financial conditions of the Obligors as of their respective dates, and the foregoing shall be true with respect to all financial statements of the Obligors delivered to Mortgagee hereafter; (e) there is no fact known to the Obligors that the Obligors have not disclosed to Mortgagee in writing that could materially adversely affect their respective properties, business or financial conditions or the Mortgaged Property or any other collateral for the Obligations; (f) the proceeds of the Obligations are not being used to purchase or carry any "margin stock" within the meaning of Regulation "U" or the Board of Governors of the Federal Reserve System, nor to extend credit to others for that purpose; and (g) each extension of credit secured by this Mortgage is exempt from the provisions of the Federal Consumers Credit Protection Act (Truth-in-Lending Act) and Regularization "Z" or the Board of Governors of the Federal Reserve System, because Mortgagor is a person fully excluded therefrom or because said extension of credit is only for business or commercial purposes of Mortgagor and is not being used for personal, family, household or agricultural purposes.

31. **Business Entity**. If Mortgagor is a corporation, partnership or other business entity, then Mortgagor hereby represents and warrants, in order to induce Mortgagee to extend the credit secured hereby, that: (a) Mortgagor is duly organized, validly existing and in good standing under the laws of the jurisdiction of its creation and the State of Florida; (b) Mortgagor has all requisite power and authority (corporate or otherwise) to conduct its business to own its properties, to execute and deliver this Mortgage and all other Loan Documents, and to perform its obligations under the same; (c) the execution, delivery and performance of this Mortgage and all other Loan Documents have been duly authorized by all necessary actions (corporate or otherwise) and do not require the consent or approval of the Mortgagor's limited partners, the stockholders of Mortgagor's general partner or of any other person or entity whose consent has not been obtained; and (d) the execution, delivery and performance of this Mortgage and all other Loan Documents do not and shall not conflict with any provision of Mortgagor's general partner's by-laws or articles of incorporation, Mortgagor's partnership agreement or other document pursuant to which Mortgagor was created and exists.

32. **Future Advances**. This Mortgage shall secure such future advances as may be made by Mortgagee, at its option and for any purpose, within twenty (20) years from the date of this Mortgage. All such future advances shall be included within the term "Obligations", shall be secured to the same extent as if made on the date of the execution of this Mortgage, and shall take priority as to third persons without actual notice from the time this Mortgage is filed for record as provided by

law. The total amount of indebtedness by this Mortgage may decrease or increase from time to time, but the total unpaid balance so secured at any one time shall not exceed 200% of the original amount of the Note and any disbursements made for the payment of taxes, levies or insurance on the Mortgaged Property, with interest on those disbursements, plus any increase in the principal balance as the result of negative amortization or deferred interest. Without the prior written consent of Mortgagee, which Mortgagee may grant or withhold in its sole discretion, Mortgagor shall not file for record any notice limiting the maximum principal amount that may be secured by this Mortgage to a sum less than the maximum principal amount set forth in this paragraph.

33.   Reporting Requirements.   Mortgagor shall furnish Mortgagee with reports and financial statements as required under the Loan Agreement. Mortgagor shall have the rights to inspect the books and records of Mortgagee as provided under the Loan Agreement.

34.   Interpretation.   Whenever the context of any provision of this Mortgage shall so require, words in the singular shall include the plural, words in the plural shall include the singular, and pronouns of any gender shall include the other genders. Captions and headings in this Mortgage are for convenience only and shall not affect its interpretation. All references in this Mortgage to exhibits, schedules, paragraphs and subparagraphs refer to the respective subdivisions of this Mortgage, unless the reference expressly identifies another document. Wherever used in this Mortgage, unless the context clearly indicates a contrary intention or unless this Mortgage specifically provides otherwise: (a) the term "Mortgagor" shall include any subsequent owner(s) of the Mortgaged Property; (b) the term "Mortgagee" shall include any subsequent holder(s) of this Mortgage; (c) the terms "Obligors" shall include any permitted successor(s) or permitted assign(s) of any Obligor; (d) the term "Obligations" shall include any modification of any Obligations from time to time and any future advances or other sums payable to Mortgagee under this Mortgage; (e) the term "Loan Documents" shall include any note or other instrument evidencing or pertaining to any future advance hereunder and any renewals, extensions or modifications of any Loan Document; and (f) the term "person" shall mean "an individual, corporation, partnership, limited partnership, unincorporated association, joint stock corporation, joint venture or other legal entity".

35.   General.   Time is of the essence of all provisions of this Mortgage. Mortgagor hereby waives all right of homestead exemption (if any) in the Mortgaged Property. If Mortgagor consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several, and wherever the term "Mortgagor" is used it shall be deemed to refer to such persons jointly and severally. If Mortgagor is a partnership, then all general partners in Mortgagor shall be liable jointly and severally for the covenants, agreements, undertakings, and obligations of Mortgagor in connection with the Obligations, notwithstanding any contrary provision of the partnership laws of the State of Florida. This Mortgage shall be binding upon the parties hereto and their respective heirs, personal representatives, successors and assigns, and it shall inure to the benefit of Mortgagee and its successors and assigns and to benefit of Mortgagor and Mortgagor's heirs, personal representatives and permitted successors and assigns. This Mortgage cannot be changed except by an agreement in writing, signed by the party against whom enforcement of the change is sought.

19

36. **Exhibits**. All exhibits referred to herein and attached hereto are incorporate into this Mortgage by this reference for all purposes.

37. **Invalid or Unenforceable**. In the event that any of the covenants, agreements, terms or provisions contained in the Note or this Mortgage shall be invalid, illegal or unenforceable in any respect, the validity of the remaining covenants, agreements, terms or provisions contained herein and in the Note shall be in no way affected, prejudiced or disturbed thereby.

38. **Obligation of Mortgagor**. Mortgagor shall pay the cost of releasing or satisfying this Mortgage of record.

39. **Default Rate**. The Default Rate shall be the maximum interest rate allowed under applicable law (unless no such maximum rate applies to the Loan, in which case the rate shall be eighteen (18%) percent per annum), provided that in no event shall the Default Rate exceed the maximum lawful non-usurious rate permitted by applicable law, whether now or hereafter in effect.

40. **Late Charge**. If any payment is ten (10) days or more late, then Borrower will be charged five percent (5%) of the unpaid portion of the payment or $100.00, whichever is greater. Failure to exercise a late charge shall not constitute a waiver of such right in the event of subsequent late payments.

41. **No Merger**. Neither Mortgagor nor Mortgagee intend that there be, and there shall not in any event be, any merger of the lien and security interest of this Mortgage with any other right, interest, lien or security interest in the Mortgaged Property held by Mortgagee, and it is specifically provided that the lien and security interest of this Mortgagee on one hand and any other right, interest, lien or security interest of Mortgagee on the other hand shall be and remain separate and distinct (and the priority of any and all such other rights, interest, liens and security interests is hereby preserved).

42. **WAIVER OF RIGHT TO JURY TRIAL**. IN CONSIDERATION OF THE MUTUAL OBLIGATIONS CONTAINED HEREIN AND UNDER THE NOTE, BOTH MORTGAGOR AND MORTGAGEE HEREBY WAIVE THE RIGHT TO A JURY TRIAL IN ANY SUIT CONCERNING THIS MORTGAGE OR THE NOTE AND AT EITHER PARTY'S REQUEST, THE OTHER PARTY WILL JOIN IN ASKING THE COURT IN WHICH SUCH SUIT IS PENDING TO TRY THE SUIT AND DECIDE ALL ISSUES, INCLUDING ISSUES OF FACT, WITHOUT A JURY. MORTGAGOR AND MORTGAGEE HAVE SPECIFICALLY DISCUSSED AND NEGOTIATED THIS WAIVER AND AGREE THAT IT IS AN ESSENTIAL PART OF THEIR AGREEMENTS CONCERNING THE NOTE AND THIS MORTGAGE.

43. **WAIVER OF AUTOMATIC STAY**. IN CONSIDERATION OF MORTGAGEE'S ENTERING INTO THE NOTE, MORTGAGOR FOR THEMSELVES AND ANY TRUSTEE, DEBTOR-IN-POSSESSION, RECEIVER OR OTHER REPRESENTATIVE OF MORTGAGOR, OR ANY ONE OF THEM, HEREBY AGREES THAT THE RIGHTS OF MORTGAGEE UNDER

THIS MORTGAGE, INCLUDING, BUT NOT LIMITED TO, ALL RIGHTS OF ACCELERATION, ENFORCEMENT, FORECLOSURE AND SALE, SHALL NOT BE SUBJECT TO THE AUTOMATIC STAY PROVIDED IN SECTION 362 OF THE U.S. BANKRUPTCY CODE (OR ANY SUCCESSOR PROVISION) AND ALL SUCH PERSONS CONSENT TO ENTRY OF APPROPRIATE ORDERS LIFTING SUCH STAY.   MORTGAGOR AND MORTGAGEE HAVE SPECIFICALLY DISCUSSED AND NEGOTIATED THIS WAVIER AND AGREE THAT IT IS AN ESSENTIAL PART OF THEIR AGREEMENTS CONCERNING THE NOTE AND THIS MORTGAGE.

44.  Survival.  The Mortgagor and any Obligor(s) of the Note secured hereby agree that the provisions of the Commitment Letter from the Mortgagee dated ___July 30, 2004___ and any Loan Agreement are incorporated hereby by reference and made a part hereof and shall survive the loan closing and the execution of this Mortgage, and that each and every of the undertakings of the Mortgagor and Guarantors set forth therein shall be continuing obligations and undertakings and shall not cease until the said promissory note has been paid in full and until the obligations and undertakings of the Mortgagor and Obligor(s) have been fully completed and discharged.  Non-compliance with said Commitment Letter and any Loan Agreement shall constitute a default and breach under this Mortgage, and Mortgagee, at its option without notice, may immediately declare due and payable the entire amount of indebtedness then existing under the Note for which this Mortgage is given as security and may immediately and without notice institute proceedings to foreclose this Mortgage.  A copy of said Commitment Letter and any Loan Agreement is available at the office of the Mortgagee for inspection by interested parties.

45.  Miscellaneous.

(A)  Cross Collateral and Cross Default.  This mortgage and note is cross-collateralized with any and all notes and security now or hereafter pledged with CYPRESSCOQUINA BANK. All Agreements and Notes and collateral securing these notes shall be cross-collateralized and a default in any one Agreement or Note shall cause default in each other Agreement or Note and vice-versa.

(B)  Financial Condition and Statements.  On an annual basis, corresponding with Mortgagor's fiscal year end, Mortgagors will furnish Mortgagee with financial statements (business and personal) and tax returns in form, scope and substance satisfactory to Lender as prepared by a certified public accountant satisfactory to Mortgagee.

(C)  Additional Indebtedness.  The Borrower agrees not to further encumber the subject property and/or obligate itself with any additional, so long as this loan is outstanding.

WITNESSES:

M. Chiumento

SUSAN
JUNOD

K & R BUSINESS INVESTMENTS, LLC
a Florida limited liability company

By: _____
Gregory G. Shugg, Managing Member

By: _____
Kimberly A. Shugg, Managing Member

STATE OF FLORIDA
COUNTY OF FLAGLER

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State and County aforesaid to take acknowledgments, personally appeared Gregory G. Shugg and Kimberly A. Shugg, as Managing Member of K & R Business Investments, LLC, to me well known to be the person described in and who executed the foregoing instrument, and who acknowledged executing this Agreement freely and voluntarily on behalf of the corporation.

WITNESS my hand and official seal in the County and State last aforesaid this 31st day of August, 2004.

_____
NOTARY PUBLIC
My Comm. Expires:

Susan R. Junod
MY COMMISSION # DD178895 EXPIRES
March 18, 2007
BONDED THRU TROY FAIN INSURANCE, INC

22

EXHIBIT "A"
LEGAL DESCRIPTION


Lots 1 through 12, inclusive, Block 177, Town of Bunnell, according to the map
or plat thereof as recorded in Plat Book 1, Page 2, Public Records of Flagler
County, Florida, together with that portion of vacated Magnolia Avenue and Alley
adjacent thereto, vacated pursuant to City of Bunnell Ordinance 1987-4 and 86-9,
LESS AND EXCEPT:   Property taken or conveyed for highway purposes.

Exhibit "B"

$1,280,000.00

**Palm Coast**, Florida
**August 31, 2004**

## SECURED PROMISSORY NOTE

FOR VALUE RECEIVED, the undersigned (jointly and severally, if more than one) (the "Borrower") promise(s) to pay to the order of **CYPRESSCOQUINA BANK**, its successors and\or assigns, a state banking association (the "Payee"), at the offices of Payee at 21 Cypress Point Parkway, Palm Coast, FL 32137, or at such other place or places as the holder of this Note from time to time may designate in writing, the principal sum of **One Million Two Hundred Eighty Thousand and no/100ths ($1,280,000.00) Dollars**, in lawful money of the United States (the "Loan"), together with interest in like lawful money from the date hereof at the applicable annual rate set forth below. Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the annual interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding.

1. **Interest Rate**. The unpaid principal balance of the Loan shall bear interest at a fixed rate of 6.75%, per annum for the entire sixty month term.

2. **Payments and Maturity Date**. The principal and interest shall be payable in lawful money of the United States of America at the office of the Payee in Palm Coast, Florida, or at such other place as the Payee hereof may designate in writing. Interest on this Note shall accrue and principal and interest payments shall be as follows:

Principal and interest payments will be due monthly based on a twenty year amortization. Payments will be applied first to interest and then to principal. Principal and interest payments of $9,690.00 each shall be due and payable beginning September 30, 2004 and continuing monthly thereafter for sixty (60) months. Upon the end of the sixty (60) month term the entire principal balance plus all accrued and unpaid interest shall be due and payable. This Note shall be due and payable in full on August 31, 2009.

At maturity, this loan may be extended in the sole discretion of Lender upon terms which are mutually acceptable to Lender and Borrower.

3. **Definitions**. Borrower and all endorsers, sureties, guarantors, and all persons liable or to become liable with respect to the Loan are each included in the term "Obligor" as used in this Note. This Note and all other instruments and documents executed by any Obligor in connection with the Loan, including without limitation any promissory notes, loan agreements, mortgages, security agreements, assignments, pledges, guaranties, contracts and any other documents executed to evidence or govern or

1

secure the Loan, are referred to in this Note as the "Loan Documents".

4.  **Acceleration of Maturity**. The entire unpaid principal balance of the Loan, together with all unpaid interest accrued thereon and all other sums owing under this Note or any other Loan Document, shall at the option of Payee become immediately due and payable without notice or demand: (a) upon any default in the payment of any sum within ten (10) days after said payment is due hereunder; or (b) upon any default in the payment of any sum due under any other Loan Document, subject to any applicable notice and grace period provided (if any); or (c) when permitted under any other Loan Document now or hereafter in effect, subject to any applicable notice and grace period provided therein (if any).

5.  **Notice of Default and Opportunity to Cure**. In the event of any non-monetary default, however, Payee shall give Borrower notice of same and a thirty (30) day opportunity to cure such default.

6.  **Late Charge**: If any payment is ten (10) days or more late, then Borrower will be charged five percent (5%) of the unpaid portion of the payment or $100.00, whichever is greater. Failure to exercise a late charge shall not constitute a waiver of such right in the event of subsequent late payments.

7.  **Default Rate**. After maturity (whether by acceleration or otherwise), and at Payee's option during the existence of any uncured default under any Loan Document for which the applicable grace period (if any) shall have expired, the entire unpaid principal balance of the Loan and any other sums owing under any Loan Document shall bear interest at the highest rate then allowed by law (unless no such maximum lawful rate applies to the Loan, in which case the rate shall be eighteen percent (18%) per annum); provided, however, that after judgment all such sums shall bear interest at the rate prescribed by applicable law for judgments.

8.  **Default**.    The occurrence of any of the following events shall constitute a default (Default) under this Note:

(a)    Failure to pay any amount due under this Note in the manner and at the time specified in this Note, which failure shall continue uncured for fifteen (15) days;

(b)    Dissolution, termination of existence, insolvency or admission in writing of inability to pay debts as they mature, of or by the Borrower;

(c)    Appointment of a receiver, trustee or similar judicial officer or agent to take charge of or liquidate any property or assets of the Borrower, or action by any court to take jurisdiction of all or a substantial part of the property or assets of the Borrower;

(d)    Conveyance of any or all property or assets of the Borrower to a liquidating agent, or making of an assignment for the benefit of creditors, or of a composition or similar arrangement with creditors by the Borrower;

(e)    Commencement of any proceedings under any federal or state law, now or hereafter in force, relating to bankruptcy, reorganization, insolvency, liquidation or otherwise for the relief of debtors or readjustment of indebtedness, by or against the Borrower;

2

(f)   The receipt by holder of any order, ruling, decree or similar document from any court or government authority which has the effect of either (x) returning or disbursing any payment received from the Borrower or (y) delaying the receipt of any payment from the Borrower;

(g)   The entry of a decree or order by a court having jurisdiction adjudging the Borrower bankrupt or insolvent, or approving as property filed a petition seeking to declare Borrower insolvent under the Federal Bankruptcy Act or any other applicable federal or state law, or appointing a receiver, liquidator, assignee, trustee, sequestrator (or similar official) of the Borrower, or of any substantial part of his or its property or assets and the continuance of any such decree for thirty (30) consecutive days.

9.  **Rights and Remedies of Payee**.  Payee shall be entitled to pursue any and all rights and remedies provided by applicable law and\or under the terms of this Note or any other Loan Document, all of which shall be cumulative and may be exercised successively or concurrently.  Payee's delay in exercising or failure to exercise any rights or remedies to which Payee may be entitled in the event of any default shall not constitute a waiver of any of Payee's rights or remedies with respect to that or any subsequent default, whether of the same or a different nature, nor shall any single or partial exercise of any right or remedy by Payee preclude any other or further exercise of that or any other right or remedy.

10.  **Actions or Proceedings**.  All Obligors hereby severally: (a) waive demand, presentment, protest, notice of dishonor, suit against or joinder of any other person, and all other requirements necessary to charge or hold any Obligor liable with respect to the Loan; (b) **WAIVE TRIAL BY JURY** in any action or proceeding brought in connection with the Loan or any guaranty thereof; (c) waive any right to immunity from any such action or proceeding and waive any immunity or exemption of any property, wherever located, from garnishment, levy, execution, seizure or attachment prior to or in execution of judgment, or sale under execution or other process for the collection of debts; (d) waive any right to interpose any set-off or non-compulsory counterclaim or to plead laches or any statute of limitations as a defense in any such action or proceeding, and waive (to the extent lawfully waivable) all provisions and requirements of law for the benefit of any Obligor now or hereafter in force; (e) submit to the jurisdiction of the state and federal courts in the State of Florida for purposes of any such action or proceeding; (f) agree that the venue of any such action or proceeding may be laid in Volusia County, Florida (in addition to any county in which any collateral for the Loan is located), and waive any claim that the same is an inconvenient forum; and (g) stipulate that service of process in any such action or proceeding shall be properly made if mailed by any form of registered mail (airmail if international), postage prepaid to the address then registered in Payee's records for the Obligor(s) so served, and that any process so served shall be effective ten (10) days after mailing.  No provision of this Note shall limit Payee's right to serve legal process in any other manner permitted by law or to bring any such action or proceeding in any other competent jurisdiction.

11.  **Costs and Expenses**.  The Obligors jointly and severally agree to pay all filing fees and similar charges and all costs incurred by Payee after and in connection with a default hereunder or under the Loan Documents in collecting or securing or attempting to collect or secure the Loan, including attorneys' and paralegals' fees, whether or not involving litigation and\or appellate administrative or bankruptcy proceedings.  The Obligors jointly a severally agree to pay any documentary stamp taxes, intangible taxes, sales taxes or other taxes (except for federal or Florida franchise or net income taxes) which may now or hereafter apply to this Note or the Loan or any security therefor, and the Obligors jointly and severally agree to indemnify and hold Payee harmless from and against any liability, costs, attorneys' fees, penalties, interest or expenses relating to any such taxes, as and when the same may be incurred.

3

12. **Consent to Changes.** The Obligors hereby severally consent and agree that, at any time and from time to time without notice, (a) Payee and the owner(s) of any collateral then securing the Loan may agree to release, increase, change, substitute or exchange all or any part of such collateral, and (b) Payee and any person(s) then primarily liable for the Loan may agree to renew, extend or compromise the Loan in whole or in part or to modify the terms of the Loan in any respect whatsoever; no such release, increase, change, substitution, exchange, renewal, extension, compromise or modification shall release or affect in any way the liability of any Obligor, and the Obligors hereby severally waive any and all defenses and claims whatsoever based thereon. Until Payee receives all sums due under this Note and all other Loan Documents in immediately available funds, no Obligor shall be released from liability with respect to the Loan unless Payee expressly releases such Obligor in a writing signed by Payee, and Payee's release of any Obligor(s) shall not release any other person liable with respect to the Loan.

13. **Governing Law.** This Note shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, except that federal law shall govern to the extent that it may permit Payee to charge, from time to time, interest on the Loan at a rate higher than may be permissible under applicable Florida law.

14. **Maximum Interest Rate.** In no event shall any agreed to or actual exaction charged, reserved or taken as an advance or forbearance by Payee as consideration for the Loan exceed the limits (if any) imposed or provided by the law applicable from time to time to the Loan for the use or detention of money or for right to demand such excess. In the event that the interest provisions of this Note or any actions provided for in this Note or any other Loan Document shall result at any time or for any reason in an effective rate of interest that transcends the maximum interest rate permitted by applicable law (if any), then without further agreement or notice the obligation to be fulfilled shall be automatically reduced to such limit and all sums received by Payee in excess of those lawfully collectible as interest shall be applied against principal immediately upon Payee's receipt thereof, with the same force and effect as though the payor had specifically designated such extra sums to be so applied to principal and Payee had agreed to accept such extra payment(s) as a premium-free prepayment or prepayments.

15. **Partial Invalidity.** Any provision of this Note which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction only, be ineffective only to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

16. **Miscellaneous.** All payments on this Note will be applied first to accrued interest and then to principal. This Note may be prepaid in whole or in part at any time without penalty upon ten (10) days' prior written notice to Payee. **TIME SHALL BE OF THE ESSENCE WITH RESPECT TO THE TERMS OF THIS NOTE.** The term "Payee" shall be deemed to include any subsequent holder(s) of this Note. Whenever used in this Note and unless the context otherwise requires, words in the singular include the plural, words in the plural include the singular, and pronouns of any gender include the other genders. Captions and paragraph headings in this Note are for convenience only and shall not affect its interpretation. This Note cannot be changed orally, but only by a writing signed by the party against whom enforcement of any change, modification, waiver or discharge is sought, nor shall any waiver on one occasion apply to any future occasion, but only to the specific occasion addressed in that signed writing. This Note is executed and delivered at the place of execution and will be construed and enforced in accordance with the laws of the State of Florida.

4

17. **Binding Effect**. All of the terms of this Note shall be binding upon Borrower and Borrower's heirs, personal representatives, successors and assigns, jointly and severally.

18. **Security**. This Note is executed under seal and is secured in part by that certain Mortgage, Assignment of Rents and Profits and Security Agreement even date with this Note, which encumbers real and personal property located in Flagler County, Florida.

19. **Cross-Collateralization**. This note is cross-collateralized with any and all notes and security now or hereafter pledged with CYPRESSCOQUINA Bank  All notes and collateral securing these notes shall be cross-collateralized and a default in any one note shall cause default in each other note and vice-versa.

K & R BUSINESS INVESTMENTS, LLC,
a Florida limited liability company

By: _____
Gregory G. Shugg
Managing Member

By: _____
Kimberly A. Shugg
Managing Member

THE DOCUMENTARY STAMP TAXES REQUIRED BY THE STATE OF FLORIDA HAVE BEEN PAID AND ARE PROPERLY AFFIXED TO THE MORTGAGE SECURING THIS NOTE.

Inst N°· 2004053001  09/14/2004
12:0      )Book: 1142 Page: 1940 Total Pgs: 3

GAIL WADSWORTH, FLAGLER Co.

## COLLATERAL
## ASSIGNMENT OF RENTS, LEASES AND PROFITS

### KNOW ALL MEN BY THESE PRESENTS:

That, the undersigned, being the fee simple, record title holder of the following described property, for and in consideration of **CYPRESSCOQUINA BANK, a Florida banking corporation,** Real Estate Mortgage, executed by the undersigned in favor of said Lender and bearing date of 31st  day of August , 2004 in the principal sum of $1,280,000.00 bearing interest at the fixed rate of 6.75%, together with all advances and extensions thereafter entered into, and for the purpose of pledging additional collateral on said loan, have agreed with said Bank to assign our interest in and to any and all leases and monies collectible thereunder upon the commercial structure to be erected on real property owned by us and located at:

### SEE ATTACHED EXHIBIT "A"

NOW, THEREFORE, in consideration of the sum of One and no/100 ($1.00) Dollar and for other good and valuable considerations, receipt whereof is hereby acknowledged, the undersigned does HEREBY ASSIGN, SELL and SET OVER all of our rights and equitable interest in and to any leases which the undersigned may enter into as Lessor, leasing any type of space in the structure erected on the aforedescribed property, together with all rents and profits collectible thereunder and all renewals thereof, for and during the life of the present mortgage loan hereinabove described, and this Assignment of Rents, Leases and Profits shall remain in full force and effect together with all equitable interests accruing therein and thereunder, until a satisfaction of said mortgage has been placed on record and said Lender has received payment in full for its mortgage loan above described, at which time this Assignment of Rents, Leases and Profits shall be cancelled and held for naught.

In executing this Assignment of Rents, Leases and Profits, the undersigned does acknowledge that in the event of default in mortgage payments or any of the terms and conditions set forth in said mortgage deed, the said CYPRESSCOQUINA BANK shall be entitled to collect any and all monies due under any and all leases between the undersigned as Lessor of the above described property and Lessees of such property, or any part thereof, and any and all renewals of such leases, during the life of said mortgage loan, and said Lender shall be considered as Lessor under any of such leases in place and stead of the person named therein as Lessor.

The undersigned further agrees to furnish a copy of all Leases  into between the undersigned as Lessor of the above described property and Lessees of such property to CYPRESSCOQUINA BANK, or their assigns.

**EXHIBIT D**

IN WITNESS WHEREOF, I have hereunto subscribed my hand and seal to this Assignment of Rents, Leases and Profits this the _31_ day of _August_, 2004.

Signed, sealed and delivered
in the presence of:

WITNESSES:

_michael D. Chiumento_

_S. Junod_

K & R BUSINESS INVESTMENTS, LLC,
a Florida limited liability company

By: _____
Gregory G. Shugg, Managing Member

By: _____
Kimberly A. Shugg, Managing Member

STATE OF FLORIDA
COUNTY OF FLAGLER

I HEREBY CERTIFY that on this day, before me, an officer duly authorized in the State and County aforesaid to take acknowledgments, personally appeared Gregory G. Shugg and Kimberly A. Shugg, as Managing Member of K & R Business Investments, LLC, to me well known to be the person described in and who executed the foregoing instrument, and who acknowledged executing this Agreement freely and voluntarily on behalf of the corporation.

WITNESS my hand and official seal in the County and State last aforesaid this 31st day of August, 2004.

_____
NOTARY PUBLIC
My Comm. Expires:

Susan B. Junod
MY COMMISSION # DD178895 EXPIRES
March 18, 2007
BONDED THRU TROY FAIN INSURANCE INC.

Exhibit "A"

Lots 1 through 12, inclusive, Block 177, Town of Bunnell, according to the map
or plat thereof as recorded in Plat Book 1, Page 2, Public Records of Flagler
County, Florida, together with that portion of vacated Magnolia Avenue and Alley
adjacent thereto, vacated pursuant to City of Bunnell Ordinance 1987-4 and 86-9,
LESS AND EXCEPT:  Property taken or conveyed for highway purposes.

## CONTINUING AND UNCONDITIONAL GUARANTY

To induce <u>CYPRESSCOQUINA BANK</u> (which, together with its successors and assigns, is called "Bank"), to extend credit to **K & R BUSINESS INVESTMENTS, LLC, a Florida limited liability company** ("Borrower"), the undersigned, jointly and severally if more than one ("Guarantor"), does give Bank its continuing and unconditional guarantee of the payment in full when due of any and all indebtedness of Borrower to Bank, to the same extent as if Guarantor were the principal debtor of the indebtedness. Guarantor agrees to pay and discharge the indebtedness of Borrower to Bank when due, by acceleration or otherwise, in accordance with the terms of the indebtedness, and hereby waives all notice of acceptance of this Guaranty, notice of maturity, payment or default of any indebtedness, and any other requirement or notice necessary to bind it hereunder, including but not limited to presentment, notice of dishonor and protest. Guarantor also agrees to pay all costs (including attorney's fees whether incurred in connection with collection, trial, appeal or otherwise) of collection against Guarantor under this Guaranty.

The liability of Guarantor hereunder applies irrespective of the genuineness, validity, regularity or enforceability of the indebtedness or of any agreements evidencing, relating to or securing the indebtedness, and Guarantor hereby consents that from time to time Bank August, without notice to Guarantor and without affecting any liability of Guarantor, (a) exchange, release, sell (by foreclosure or otherwise), apply, or otherwise deal with any collateral for repayment of the indebtedness, at the election of Bank, (b) extend, renew, or modify the terms of or accelerate the indebtedness, in whole or in part, or (c) waive or fail to enforce any of its rights under any agreement evidencing, relating to or securing the indebtedness.

The liability of Guarantors hereunder is binding upon Guarantor and Guarantor's successors and assigns. The revocation of this Guaranty shall not relieve Guarantor of liability on any indebtedness of Borrower to Bank arising prior to Bank's receipt of written revocation hereof, or any renewal or extension thereof.

The term "indebtedness" as used herein shall mean all obligations of Borrower to Bank, direct or contingent, whether now or hereafter due or arising, including without limitation all principal and interest, all costs of collection, including reasonable attorney's fees, whether incurred in connection with collection, trial, appeal or otherwise, all other amounts which Borrower is obligated to pay Bank under any agreement evidencing, relating to or securing the indebtedness or any part thereof, and including any documentary stamp tax (including interest and penalties, if any) determined to be due in connection with any instruments evidencing the indebtedness. The term "indebtedness" also includes amounts advanced by Bank pursuant to requests for advances made on behalf of Borrower, even if, at the time of any such advance, Borrower has been dissolved, liquidated or its existence has been terminated, by operation of law or otherwise, if Bank does not have actual knowledge of such termination of existence prior to making the advance. In the event any part of the indebtedness is paid by Borrower, and because of any bankruptcy or other laws relating to creditor rights, Bank repays any amount to Borrower, or to any trustee, receiver or otherwise, then the amount so repaid shall again become part of the indebtedness, the repayment of which is guaranteed hereby.

**EXHIBIT E**

IN WITNESS WHEREOF,  Guarantor  has caused this instrument to be executed this ____ day of
 August  , 2004, at  Palm Coast, Florida .

Witnesses:

_____ Michael D. Chiumento

_____ Susan Junod

Gregory G. Shugg

STATE OF Florida

COUNTY OF Flagler

    The foregoing instrument was acknowledged before me this 31st day of August, 2004, by
Gregory G. Shugg, who is personally known to me or who are personally known and who did/did not
take an oath.

Susan B. Junod
MY COMMISSION # DD178895 EXPIRES
March 18, 2007
BONDED THRU TROY FAIN INSURANCE, INC.

Notary Public
Printed Name:_____
My Commission Expires:

## CONTINUING AND UNCONDITIONAL GUARANTY

To induce CYPRESSCOQUINA BANK (which, together with its successors and assigns, is called "Bank"), to extend credit to K & R BUSINESS INVESTMENTS, LLC, a Florida limited liability company ("Borrower"), the undersigned, jointly and severally if more than one ("Guarantor"), does give Bank its continuing and unconditional guarantee of the payment in full when due of any and all indebtedness of Borrower to Bank, to the same extent as if Guarantor were the principal debtor of the indebtedness. Guarantor agrees to pay and discharge the indebtedness of Borrower to Bank when due, by acceleration or otherwise, in accordance with the terms of the indebtedness, and hereby waives all notice of acceptance of this Guaranty, notice of maturity, payment or default of any indebtedness, and any other requirement or notice necessary to bind it hereunder, including but not limited to presentment, notice of dishonor and protest. Guarantor also agrees to pay all costs (including attorney's fees whether incurred in connection with collection, trial, appeal or otherwise) of collection against Guarantor under this Guaranty.

The liability of Guarantor hereunder applies irrespective of the genuineness, validity, regularity or enforceability of the indebtedness or of any agreements evidencing, relating to or securing the indebtedness, and Guarantor hereby consents that from time to time Bank August, without notice to Guarantor and without affecting any liability of Guarantor, (a) exchange, release, sell (by foreclosure or otherwise), apply, or otherwise deal with any collateral for repayment of the indebtedness, at the election of Bank, (b) extend, renew, or modify the terms of or accelerate the indebtedness, in whole or in part, or (c) waive or fail to enforce any of its rights under any agreement evidencing, relating to or securing the indebtedness.

The liability of Guarantors hereunder is binding upon Guarantor and Guarantor's successors and assigns. The revocation of this Guaranty shall not relieve Guarantor of liability on any indebtedness of Borrower to Bank arising prior to Bank's receipt of written revocation hereof, or any renewal or extension thereof.

The term "indebtedness" as used herein shall mean all obligations of Borrower to Bank, direct or contingent, whether now or hereafter due or arising, including without limitation all principal and interest, all costs of collection, including reasonable attorney's fees, whether incurred in connection with collection, trial, appeal or otherwise, all other amounts which Borrower is obligated to pay Bank under any agreement evidencing, relating to or securing the indebtedness or any part thereof, and including any documentary stamp tax (including interest and penalties, if any) determined to be due in connection with any instruments evidencing the indebtedness. The term "indebtedness" also includes amounts advanced by Bank pursuant to requests for advances made on behalf of Borrower, even if, at the time of any such advance, Borrower has been dissolved, liquidated or its existence has been terminated, by operation of law or otherwise, if Bank does not have actual knowledge of such termination of existence prior to making the advance. In the event any part of the indebtedness is paid by Borrower, and because of any bankruptcy or other laws relating to creditor rights, Bank repays any amount to Borrower, or to any trustee, receiver or otherwise, then the amount so repaid shall again become part of the indebtedness, the repayment of which is guaranteed hereby.

## EXHIBIT F

IN WITNESS WHEREOF,   Guarantor  has caused this instrument to be executed this ____ day of  August  , 2004, at  Palm Coast, Florida .

Witnesses:

_____ *Michael P. Chiumento*

_____ *Susan Junod*

_____ *Kimberly A. Shugg*
Kimberly A. Shugg

STATE OF *Florida*

COUNTY OF *Flagler*

The foregoing instrument was acknowledged before me this 31st day of *August* , 2004, by Kimberly A. Shugg, who is personally known to me or who are personally known and who did/did not take an oath.

Susan B. Junod
MY COMMISSION # DD178895 EXPIRES
March 18, 2007
BONDED THRU TROY FAIN INSURANCE, INC.

_____
Notary Public
Printed Name:_____
My Commission Expires:

Inst No: 200_ _3002 09/14/2004
12:08PM Bo_ _ 1142 Page: 1943 Total Pgs: 6

GAIL WADSWORTH, FLAGLER Co.

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)
KELLY DEVORE 386-445-8900

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

CHIUMENTO & DAVENPORT, P.A., 4 OLD KINGS ROAD
NORTH SUITE B, PALM COAST, FL 32137

ATTN: KELLY DEVORE

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| K & R BUSINESS INVESTMENTS, LLC | | | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| P.O. BOX 535 | BUNNELL | FL | 32110 | USA |

| 1d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | LIMITED LIABILITY CO | FLORIDA | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| | | | |

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 2d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| | | | | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| CYPRESS BANK | | | |

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 21 CYPRESS POINT PARKWAY | PALM COAST | FL | 32164 | USA |

4. This FINANCING STATEMENT covers the following collateral:

THE COLLATERAL AND THE PROCEEDS OF THE COLLATERAL DESCRIBED IN SCHEDULE "A" ATTACHED HERETO AND
LOCATED ON THE PROPERTY DESCRIBED IN EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

| 5. ALTERNATIVE DESIGNATION (if applicable): | ☐ LESSEE/LESSOR | ☐ CONSIGNEE/CONSIGNOR | ☐ BAILEE/BAILOR | ☐ SELLER/BUYER | ☐ AG. LIEN | ☐ NON-UCC FILING |
|---|---|---|---|---|---|---|

| 6. ☒ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS.    Attach Addendum | [if applicable] | 7. Check to REQUEST SEARCH REPORT(S) on Debtor(s) [ADDITIONAL FEE]    [optional] | ☐ All Debtors | ☐ Debtor 1 | ☐ Debtor 2 |
|---|---|---|---|---|---|

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

## EXHIBIT G

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

| 9a. ORGANIZATION'S NAME |
|---|
| K & R BUSINESS INVESTMENTS, LLC |

OR

| 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |
|---|---|---|
| | | |

**10. MISCELLANEOUS:**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME - insert only one name (11a or 11b) - do not abbreviate or combine names**

| 11a. ORGANIZATION'S NAME |
|---|
| |

OR

| 11b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 11d. TAX ID #: SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 11e. TYPE OF ORGANIZATION | 11f. JURISDICTION OF ORGANIZATION | 11g. ORGANIZATIONAL ID #, if any | NONE |
|---|---|---|---|---|---|
| | | | | | |

**12. ☐ ADDITIONAL SECURED PARTY'S or ☐ ASSIGNOR S/P'S NAME - insert only one name (12a or 12b)**

| 12a. ORGANIZATION'S NAME |
|---|
| |

OR

| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| | | | |

| 12c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

**13.** This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.

**14.** Description of real estate:

  SEE EXHIBIT "A" ATTACHED

**16.** Additional collateral description:

**15.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**17.** Check only if applicable and check only one box.

Debtor is a ☐ Trust or ☐ Trustee acting with respect to property held in trust or ☐ Decedent's Estate

**18.** Check only if applicable and check only one box.

☐ Debtor is a TRANSMITTING UTILITY

☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years

☐ Filed in connection with a Public-Finance Transaction — effective 30 years

SCHEDULE "A"

This Financing Statement covers the following types and items of property (the "Collateral"):

As to Mortgage:   All property rights of any kind whatsoever, whether real, personal, mixed, or otherwise, and whether tangible or intangible, described in that certain Mortgage, Assignment of Rents and Security Agreement (the "Mortgage"), dated as of August 31, 2004,  from Debtor, as identified hereinabove, in favor of Secured Party, as identified hereinabove, encumbering those certain parcels of real estate (the "Land") situate in __ Flagler County, Florida, and legal described on Exhibit A attached hereto and made a part hereof, together with all rights, privileges, tenements, hereditaments, rights-of-way, easements, appendages, projections, appurtenances, water rights including riparian and littoral rights, streets, ways, alleys, and strips and gores of land now or hereafter in any way belonging, adjoining, crossing, or pertaining to the Land; and all of the following property of Debtor whether now owned or existing, or hereafter acquired or arising, whether located in, on, pertaining to, used or intended to be used in connection with or resulting or created from the ownership, development, management, or operation of the Land:

(i)   all "Improvements" (as such term is defined in the Mortgage) and landscaping;

(ii)   all tangible property (collectively, the "Equipment") now or hereafter owned by Debtor and now or hereafter located at, affixed to, placed upon or used in connection with the Land or the Improvements, or any present or future improvements thereon, including without limitation, all machinery, equipment, appliances, fixtures, conduits and systems for generating or distributing air, water, heat, air conditioning, electricity, light, fuel or refrigeration, or for ventilating or sanitary purposes, or for the exclusion of vermin or insects, or for the removal of dust, refuse, sewage or garbage, or for fire prevention or extinguishing; all elevators, escalators, lifts and dumbwaiters; all motors, engines, generators, compressors, pumps, lift stations, tanks, boilers, water heaters, furnaces and incinerators; all furniture, furnishings, fixtures, appliances, installations, partitions, shelving, cabinets, lockers, vaults and wall safes; all carpets, carpeting, rugs, underpadding, linoleum, tiles, mirrors, wall coverings, windows, storm doors, awnings, canopies, shades, screens, blinds, draperies and related hardware, chandeliers and light fixtures; all plumbing, sinks, basins, toilets, faucets, pipes, sprinklers, disposals, laundry appliances and equipment, and kitchen appliances and equipment; all alarm, safety, electronic, telephone, music, entertainment and communications equipment and systems; all janitorial, maintenance, cleaning, window washing, vacuuming, landscaping, pool and recreational equipment and supplies; and any other items of property, wherever kept or stored, if acquired by Mortgagor with the intent of incorporating them in or using them in connection with the Land or the Improvements;

(iii)   all awards or payments, including interest thereon and the right to receive the same, growing out of or resulting from any exercise of the power of eminent domain (including the taking of all or any part of the Land or the Improvements), or any alteration of the grade of any street upon which the Land abuts; or any other injury to, taking of, or decrease in the value of the Land or the Improvements or any parts thereof;

(iv)   all rights of Debtor in and to any hazard, casualty, liability, or other insurance policy carried for the benefit of Debtor or Secured Party with respect to the Improvements or the Equipment, including without limitation any unearned premiums and all insurance proceeds or sums payable in lieu of or as compensation for any loss of or damage to all or any portion of the Improvements or the Equipment;

(v)   all rights of Debtor in and to all supplies materials delivered to or located upon the Land or elsewhere and used or usable in connection with the

construction or refurbishing of Improvements;

(vi) all rights of Debtor in, to, under, by virtue of, arising from or growing out of any and all present or future contracts, instruments, accounts, insurance policies, permits, licenses, trade names, plans, appraisals, reports, paid fees, choses-in-action, subdivision restrictions or declarations or general intangibles whatsoever now or hereafter dealing with, affecting or concerning the Land or the Improvements or any portion thereof or interest therein, including but not limited to:  (a)  all contracts, plans and permits for or related to the Land or its development or the construction or refurbishing of the Improvements, (b) any agreements for the provision of utilities to the Land or Improvements, (c) all payment, performance or other bonds, (d)  any contracts now existing or hereafter made for the sale by Debtor of all or any portion of the Land or the Improvements, including any deposits paid by any purchasers (howsoever such deposits may be held; however, nothing herein shall impair the ability to return a deposit to a purchaser upon good faith termination of the purchase contract) and any proceeds of such sales contracts, including any purchase-money notes and mortgages made by such purchasers, and (e)  any declaration of condominium, restrictions, covenants, easements or similar documents now or hereafter recorded against the title to all or any portion of the Land;

(vii) all rents, income, issues and profits of the Land the Improvements and other property subject to the Mortgage, and all Leases (as such term is defined in the Mortgage), and together with all guaranties of the Leases and all security deposits and prepaid rents under the Leases; and

(viii)    all proceeds, products, replacements, additions, betterments, extensions, improvements, substitutions, renewals and accessions of any of the foregoing.

As to Security Agreement:    In addition, Debtor has executed that certain Security agreement (the "Security Agreement"), dated as of even date with the Mortgage, which creates a continuing and unconditional security interest in the assets described below and in all parts, accessories, attachments, additions, replacements, accessions, substitutions, increases, profits, income, distributions, proceeds and products thereof in any form (including; without limitation, insurance proceeds) together with all records relating thereto:

(i)    All of the Debtor's inventory, including without limitation all goods held for sale or lease or to be furnished under contracts of service, raw materials, work in process and materials to be used or consumed in the Debtor's business.

(ii)    All of the Debtor's right to receive payments from any source and for any reason (whether characterized as accounts, chattel paper, choses-in-action, contract rights, general intangible, instruments, notes or otherwise) including, without limitation, the Debtor's right to receive payments for goods and other products sold or leased or for services rendered, whether or not earned by performance or recognized or billed by the Debtor.

(iii) All of the Debtor's receivables, chattel paper, notes, securities, and instruments, including the right to receive payments thereunder.

(iv)  All of the Debtor's general intangibles, including without limitation copyrights, trademarks, trade names, service marks, patent drawings, designs and formulas.

(v)    All of the Debtor's fixtures and equipment, including, without limitation, all office equipment, office furniture, computers, computer software, modems, interface equipment, computer terminals, printers, peripheral computer equipment, accessory equipment, hand and power tools, trucks, automobiles, heavy equipment and other motor vehicles, machinery and equipment of all classes.

(vi)  All of the Debtor's contract rights including, without

limitation, the Debtor's rights under distribution contracts, franchise agreements, license agreements, sales contracts, unfilled customer orders, and lease agreements.

The Collateral also includes other assets of the same class or classes hereafter owned or acquired by the Debtor and the Secured Party shall have a security interest in all such after acquired assets and all parts, accessories, attachments, additions, replacements, accessions, substitutions, increases, profits, income, distributions, proceeds and products thereof in any form.

Nothing herein shall be construed to limited the security interest and Collateral created by the Mortgage and the Security Agreement, and such security interest and Collateral shall be deemed to be cumulative. If such security interest and Collateral created by the Mortgage on one hand and the Security Agreement on the other are found inconsistent, the security interest and Collateral shall be given the most broad possible construction.

The filing of this Financing Statement shall not be construed to derogate from or impair the lien or provisions of the Mortgage from Debtor to Secured Party encumbering any property described therein which is Real Property or which the parties have agreed to treat as real property. Similarly, nothing in this Financing Statement shall be construed to alter any of the rights of Secured Party or Debtor as determined by the Mortgage and the Security Agreement or the priority of the Secured Party's liens created thereby, and this Financing Statement is declared to be for the protection of Secured Party in the event any court shall at any time hold that notice of Secured Party's priority of interest in any property or interest described in the Mortgage or the Security Agreement must, in order to be effective against a particular class of persons, including but not limited to the Federal Government and any subdivisions or entity of the Federal Government, be filed in the Commercial Code records.

The Debtor is the fee simple owner of the Land.

THIS DOCUMENT IS NOT A SECURITY AGREEMENT

## EXHIBIT "A"

Lots 1 through 12, inclusive, Block 177, Town of Bunnell, according to the map or plat thereof as recorded in Plat Book 1, Page 2, Public Records of Flagler County, Florida, together with that portion of vacated Magnolia Avenue and Alley adjacent thereto, vacated pursuant to City of Bunnell Ordinance 1987-4 and 86-9, LESS AND EXCEPT:   Property taken or conveyed for highway purposes.

**F03000003067**

APR. 11. 2008 3:40PM C S C                          NO. 705    P. 1/35

# Florida Department of State
## Division of Corporations
### Public Access System

### Electronic Filing Cover Sheet

**Note: Please print this page and use it as a cover sheet.** Type the fax audit number (shown below) on the top and bottom of all pages of the document.

### (((H08000094200 3)))



H080000942003ABCK

**Note: DO NOT hit the REFRESH/RELOAD button on your browser** from this page. Doing so will generate another cover sheet.

```
To:
    Division of Corporations
    Fax Number    : (850)617-6380

From:
    Account Name   : CORPORATION SERVICE COMPANY
    Account Number : I20000000195
    Phone          : (850)521-1000
    Fax Number     : (850)558-1575
```

## MERGER OR SHARE EXCHANGE

### RBC BANK (USA)

| | |
|---|---|
| Certificate of Status | 0 |
| Certified Copy | 0 |
| Page Count | 25 |
| Estimated Charge | $60.00 |

RECEIVED
2008 APR 11 AM 8:00
SECRETARY OF STATE
TALLAHASSEE, FLORIDA

FILED
08 APR 11 PM 4:03
SECRETARY OF STATE
TALLAHASSEE FLORIDA

Electronic Filing Menu    Corporate Filing Menu          Help

*Plan reflects
Survivor under name
before change was
filed in FL.*

*Merger
qf   4/17*

**EXHIBIT H**

APR. 11. 2008   3:40PM    C S C

NO. 705    P. 2/25

H08000094200 3

ARTICLES OF MERGER
OF
CYPRESSCOQUINA BANK
WITH AND INTO
RBC BANK (USA)

Pursuant to Section 607.1105 of the Florida Statutes, CypressCoquina Bank, a state bank organized and existing under the laws of the State of Florida and a wholly owned subsidiary of RBC Bancorporation (USA) ("RBC Bancorporation"), a corporation organized and existing under the laws of the State of North Carolina, and RBC Bank (USA) ("RBC Bank"), a state bank organized and existing under the laws of the State of North Carolina and a wholly owned subsidiary of RBC Bancorporation, hereby execute the following Articles of Merger:

1.    The Agreement and Plan of Merger, providing for the merger of CypressCoquina Bank with and into RBC Bank (the "Merger"), is set forth as <u>Appendix A</u> to these Articles of Merger.

2.    RBC Bank shall be the surviving bank resulting from the Merger and shall continue to be a state bank organized and existing under the laws of the State of North Carolina.

3.    Pursuant to applicable law and regulation, the Agreement and Plan of Merger was adopted by written consent of RBC Bancorporation, the sole stockholder of CypressCoquina Bank and RBC Bank, dated March 14, 2008.

4.    The merger is to be effective at 2 p.m., Raleigh, North Carolina time, on April 11, 2008.



H08000094200 3

IN WITNESS WHEREOF, each of the undersigned banks has caused these Articles of Merger to be executed in its name by its duly authorized officers as of the /8/ day of April 2008.

RBC BANK (USA)

By: _____
Name:   Gerald P. Hurst
Title:   General Counsel

CYPRESSCOQUINA BANK

By: _____
Name:
Title:

H08000094200 3

IN WITNESS WHEREOF, each of the undersigned banks has caused these Articles of Merger to be executed in its name by its duly authorized officers as of the 11th day of April 2008.

RBC BANK (USA)

By: _____
Name:
Title:

CYPRESSCOQUINA BANK

By: _____
Name:  James E. White, Jr.
Title:  President & C.E.O.

H08000094200 3

**AGREEMENT AND PLAN OF MERGER** (this "Agreement"), dated as of March 19, 2008, by and between RBC Centura Bank, a North Carolina state-chartered bank ("RBC Centura Bank"), and CypressCoquina Bank, a Florida state-chartered bank ("CypressCoquina Bank").

**WHEREAS,** RBC Centura Banks, Inc., a North Carolina corporation ("Parent") and parent of RBC Centura Bank, and Alabama National BanCorporation, an Alabama corporation and parent of CypressCoquina Bank, entered into an Agreement and Plan of Merger, dated as of September 5, 2007 (the "Parent Merger Agreement"), pursuant to which Alabama National BanCorporation will merge with and into Parent (the "Parent Merger"), with Parent surviving; and

**WHEREAS,** contingent upon the Parent Merger and following the time at which the Parent Merger becomes effective, on the terms and subject to the conditions contained in this Agreement, the parties to this Agreement intend to effect the merger (the "Merger") of CypressCoquina Bank with and into RBC Centura Bank, with RBC Centura Bank surviving;

**NOW, THEREFORE,** in consideration of the foregoing and the respective covenants and agreements set forth herein, the parties hereto agree as follows:

### ARTICLE I

### THE MERGER

1.1   *Effective Time of the Merger.*  Subject to the provisions of this Agreement, as soon as practicable on or after the Closing Date (as defined in Section 1.2), RBC Centura Bank shall file (A) with the North Carolina Secretary of State a duly certified copy of this Agreement, the articles of merger and a certified copy of the written approval of the Merger by the Commissioner of Banks of North Carolina in accordance with North Carolina General Statutes ("NCGS") §§ 53-13 and 55-11-05 and (B) with the Florida Secretary of State a copy of this Agreement and a copy of the articles of merger pursuant to the Florida Statutes ("FS") § 607.1105.  Pursuant to NCGS § 53-13 and FS § 607.1105, the Merger shall be effective at the time agreed by the parties hereto and specified in the Articles of Merger filed with the North Carolina Secretary of State and the Florida Secretary of State (the "Effective Time").

1.2   *Closing.*  The closing of the Merger will take place at a time and on a date to be specified by the parties (the "Closing Date"), but in no case prior to the time at which the Parent Merger becomes effective, at such place as is agreed by the parties hereto.

1.3   *Effects of the Merger.*  At the Effective Time, (1) the separate existence of CypressCoquina Bank shall cease and CypressCoquina Bank shall be merged with and into RBC Centura Bank (RBC Centura Bank is sometimes referred to herein as the "Surviving Bank"), (2) the Articles of Incorporation of RBC

H08000094200 3

Centura Bank as in effect prior to the Effective Time shall be the Articles of Incorporation of the Surviving Bank, (3) the name of the Surviving Bank shall be "RBC Centura Bank", (4) the By-laws of RBC Centura Bank as in effect prior to the Effective Time shall be the By-laws of the Surviving Bank, (5) immediately following the Effective Time, the Surviving Bank shall continue to operate the main office and each of the branches of CypressCoquina Bank existing as of the Effective Time as branches of the Surviving Bank at the officially designated address of each such office or branch, as listed in Annex A hereto, and shall continue to operate each of the branches of the Surviving Bank existing at the Effective Time and (6) the board of directors and officers of the Surviving Bank shall consist of the board of directors and officers of RBC Centura Bank immediately prior to the Effective Time.

1.4   *The Surviving Bank.* The Surviving Bank shall be a North Carolina state-chartered bank. The principal office of the Surviving Bank shall be at RBC Centura Bank, 3201 Beechleaf Court, Raleigh, North Carolina 27604.

1.5   *Tax Treatment.* It is the intention of the parties that the business combination contemplated herein be treated for U.S. federal income tax purposes as a reorganization within the meaning of section 368(a) of the Internal Revenue Code of 1986, as amended.

## ARTICLE II

### CONSIDERATION

2.1   *Effect on CypressCoquina Bank Common Stock.* By virtue of the Merger and without any action on the part of the holder of any shares of common stock of CypressCoquina Bank:

(a)   at the Effective Time, all shares of CypressCoquina Bank common stock that are owned by CypressCoquina Bank as treasury stock, if any, shall be automatically cancelled and retired and shall cease to exist; and

(b)   at the Effective Time, all shares of CypressCoquina Bank common stock issued and outstanding shall be converted into the right to receive consideration ("Consideration") comprising such number of shares of fully paid and nonassessable RBC Centura Bank common stock that, together, have a value equal to the fair market value of the shares of CypressCoquina Bank common stock (the "Fair Market Value") as of the business day immediately preceding the Closing Date, as determined in good faith by CypressCoquina Bank and RBC Centura Bank. In the event that the parties are unable to agree on the Fair Market Value, CypressCoquina Bank and RBC Centura Bank shall jointly select an independent third party, at the expense of RBC Centura Bank, to determine the Fair Market Value; and in the event the parties fail to agree on the selection of an independent third party, then the determination of the Fair Market Value shall be made by RBC Dain Rauscher Corporation. At the Effective Time, the shares of CypressCoquina Bank common stock shall no longer be outstanding and shall be

-2-

NY12532:412477.2

H08000094200 3

automatically cancelled and retired and shall cease to exist, and from and after the Effective Time, certificates representing CypressCoquina Bank common stock immediately prior to the Effective Time shall be deemed for all purposes to represent the number of shares of RBC Centura Bank common stock into which they were converted as part of the Consideration pursuant to this Section 2.1(b).

    2.2   *Effect on RBC Centura Bank Common Stock.* Each share of RBC Centura Bank common stock issued and outstanding immediately prior to the Effective Time shall remain issued and outstanding and unaffected by the Merger.

ARTICLE III

COVENANTS

    3.1   *Covenants.* During the period from the date of this Agreement and continuing until the Effective Time, each of the parties hereto agrees to use all reasonable efforts to take, or cause to be taken, all actions and to do, or cause to be done, all things necessary, proper or advisable under applicable laws and regulations to consummate and make effective the transactions contemplated by this Agreement.

ARTICLE IV

CONDITIONS PRECEDENT

    4.1   *Conditions to Each Party's Obligation To Effect the Merger.* The respective obligations of each party to effect the Merger shall be subject to the following conditions: (1) that prior to the Closing Date all requisite regulatory approvals relating to the Merger have been obtained and such approvals shall continue to be in full force and effect, (2) no temporary restraining order, preliminary or permanent injunction or other order issued by any court of competent jurisdiction or other legal restraint or prohibition preventing the consummation of the Merger shall be in effect and (3) that the Parent Merger shall have been consummated.

ARTICLE V

TERMINATION AND AMENDMENT

    5.1   *Termination.* This Agreement may be terminated at any time prior to the Effective Time by an instrument executed by each of the parties hereto. This Agreement will terminate automatically upon the termination of the Parent Merger Agreement.

-3-

NY12532:4[2477.2

H08000084200 3

5.2    *Amendment.* This Agreement may be amended by an instrument in writing signed on behalf of each of the parties hereto.

## ARTICLE VI

## GENERAL PROVISIONS

6.1    *Nonsurvival of Agreements.* None of the agreements in this Agreement or in any instrument delivered pursuant to this Agreement shall survive the Effective Time.

6.2    *Notices.* All notices and other communications hereunder shall be in writing and shall be deemed given if delivered personally, telecopied (with confirmation) or mailed by registered or certified mail (return receipt requested) to:

    (a)    in the case of RBC Centura Bank:

> Gerald P. Hurst, Esq.
> RBC Centura Bank
> 3201 Beechleaf Court
> Raleigh, North Carolina  27604
> Facsimile:  (919) 788-6053

> With a copy to:

> Donald J. Toumey, Esq.
> Sullivan & Cromwell LLP
> 125 Broad Street
> New York, New York  10004
> Facsimile:  (212) 558-3350

    (b)    in the case of CypressCoquina Bank:

> CypressCoquina Bank
> 1020 West Granada Boulevard
> Ormond Beach, Florida 32174

> With a copy to:

> Gerald P. Hurst, Esq.
> RBC Centura Bank
> 3201 Beechleaf Court
> Raleigh, North Carolina  27604
> Facsimile:  (919) 788-6053

6.3    *Interpretation.* When a reference is made in this Agreement to Sections, such reference shall be to a Section of this Agreement unless otherwise

-4-

NY12532:4124772

H05000094200 3

indicated. The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement. Whenever the words "include", "includes" or "including" are used in this Agreement, they shall be deemed to be followed by the words "without limitation". The phrases "the date of this Agreement", "the date hereof", and terms of similar import, unless the context otherwise requires, shall be deemed to refer to the date first written above.

6.4    *Counterparts; Facsimile Signature.* This Agreement may be executed in counterparts, which shall be considered one and the same agreement, and shall become effective when counterparts have been signed by each of the parties and delivered to the other party, it being understood that both parties need not sign the same counterpart. This Agreement may be executed by facsimile signature and a facsimile signature shall constitute an original for all purposes.

6.5    *Entire Agreement.* This Agreement (including the documents and the instruments referred to herein) constitutes the entire agreement and supersedes all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof, other than the Parent Merger Agreement.

6.6    *Governing Law.* This Agreement shall be governed and construed in accordance with the laws of the State of North Carolina applicable to agreements made and to be performed wholly within such state.

6.7    *Assignment.* Neither this Agreement nor any of the rights, interests or obligations may be assigned by any of the parties hereto and any attempted or purported assignment in contravention of this Section 6.7 shall be null and void.

*[Next page is a signature page.]*

-5-

NY12332:413477.2

H08000094200 3

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be signed by their respective officers thereunto duly authorized as of the date set forth above.

RBC CENTURA BANK

By _____

Name: Gerald Huss

Title: General Cansel

CYPRESSCOQUINA BANK

By _____

Name:

Title:

H06000094200 3

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be signed by their respective officers thereunto duly authorized as of the date set forth above.

RBC CENTURA BANK

By_____
    Name:
    Title:

CYPRESSCOQUINA BANK

By_____
    Name:  James B. Weite, Jr.
    Title: President & C.E.O.

H08000094200 3

## ANNEX A
### Offices of CypressCoquina Bank

| Branch Name | Address | City | State | Zip Code |
|---|---|---|---|---|
| Palm Coast | 21 Cypress Point Pkwy | Palm Coast | FL | 32164 |
| East Granada | 128 E Granada Blvd | Ormond Beach | FL | 32176 |
| Flagler Beach | 205 N Central Ave | Flagler Beach | FL | 32136 |
| Palm Harbor | 235 Palm Coast Pkwy NE | Palm Coast | FL | 32137 |
| Port Orange | 1090 Dunlawton Ave | Port Orange | FL | 32127 |
| West Granada | 1020 W Granada Blvd | Ormond Beach | FL | 32174 |

Main Office:

CypressCoquina Bank
1020 West Granada Boulevard
Ormond Beach, Florida 32174

NY12532:412477.2

H08000094200 3



## THE FEDERAL RESERVE BANK OF RICHMOND
RICHMOND • BALTIMORE • CHARLOTTE

Post Office Box 27622 • Richmond, VA 23261
Phone 804-697-8000 • www.richmondfed.org

March 14, 2008

Mr. Gerald P. Hurst
General Counsel
RBC Centura Bank
3201 Beechleaf Court
Raleigh, North Carolina 27604-1081

Dear Mr. Hurst:

The Federal Reserve Bank of Richmond, acting under authority
delegated by the Board of Governors of the Federal Reserve System and
having considered the relevant statutory factors, has approved the
applications by RBC Centura Bank, Raleigh, North Carolina, to merge
with First American Bank, Birmingham, Alabama; Alabama Exchange Bank,
Tuskegee, Alabama; Community Bank of Naples, National Association,
Naples, Florida; CypressCoquina Bank, Ormond Beach, Florida; Florida
Choice Bank, Mount Dora, Florida; First Gulf Bank, National
Association, Pensacola, Florida; Georgia State Bank, Mableton, Georgia;
Indian River National Bank, Vero Beach, Florida; Millennium Bank,
Gainesville, Florida; and The Peachtree Bank, Duluth, Georgia, pursuant
to Section 18(c) of the Federal Deposit Insurance Act (FDI Act) and,
incident thereto, to establish branches pursuant to Section 9 of the
Federal Reserve Act.

In consideration of the applications, reliance was placed on
the applicant's representations and commitments. Further, any change
prior to consummation in the terms or conditions of the proposal from
those represented in the applications should be reported to this
Reserve Bank immediately, to determine if such change or changes would
alter our determination. These transactions may not be consummated
after three months from the date of this letter, unless such period is
extended by the Federal Reserve System. Please advise us in writing
when these transactions are consummated, affirming that consummation
was effected in accordance with the terms and conditions that were
represented to this Reserve Bank.

Sincerely,

*Adam M. Drimer*

Adam M. Drimer
Assistant Vice President

cc:  Board of Governors
     Mr. Donald J. Toumey
     Ms. Belinda Coles

RECEIVED

MAR 17 2008

RBC Centura
Law Group

H05000094200 3

# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-212-558-4000
FACSIMILE: 1-212-558-3588
WWW.SULLCROM.COM

*125 Broad Street*
*New York, NY 10004-2498*

LOS ANGELES • PALO ALTO • WASHINGTON, D.C.

FRANKFURT • LONDON • PARIS

BEIJING • HONG KONG • TOKYO

MELBOURNE • SYDNEY

March 26, 2008

Department of State,
    Division of Corporations,
        Attention: Corporate Mergers,
            Clifton Building,
                2661 Executive Center Circle,
                    Tallahassee, FL 32301.

Attention: Anette Ramsey

Dear Ms. Ramsey:

As per our conversation, RBC Centura Banks, Inc. ("RBC Bank Parent") submitted a change of control application and a statement in support (the "Application") to the Florida Office of Financial Regulation (the "OFR") on December 10, 2007 in connection with the merger of Alabama National BanCorporation ("ANB") with and into RBC Bank Parent (the "Holding Company Merger"). The Application was approved by the OFR on February 4, 2008 and the merger of ANB with and into RBC Bank Parent was consummated on February 22, 2008. A copy of the OFR's approval of the Application is attached hereto as <u>Annex A</u>.

Prior to the Holding Company Merger, ANB was the parent of Florida Choice Bank ("Florida Choice"). Upon the consummation of the Holding Company Merger, Florida Choice became a wholly-owned subsidiary of RBC Bank Parent. RBC Bank Parent now intends to merge Florida Choice with and into another of its wholly-owned subsidiaries, RBC Centura Bank.

We were informed by the OFR on two separate occasions (orally on November 16, 2007 by Mr. Bruce Ricca of the OFR's staff and via email on February 6, 2008 by Mr. Joseph Matthews of the OFR's staff (the "Confirmation")) that no additional applications were required to be submitted to the OFR in connection with the merger of Florida Choice with and into RBC Centura Bank. A copy of the Confirmation is attached hereto as <u>Annex B</u>.

H08000094200 3

In addition, after the Application was filed, both RBC Bank Parent and RBC Centura Bank determined to change their names to RBC Bancorporation (USA) and RBC Bank (USA), respectively, effective April 4, 2008. A copy of the OFR's statement of non-objection with respect to such name change and a letter relating to correspondence with the Federal Reserve Bank of Richmond are attached hereto as <u>Annex C-1</u> and <u>Annex C-2</u>, respectively.

If you have any questions or concerns with respect to any of the matters discussed in this letter or in the documents included herewith, please do not hesitate to contact the undersigned at (212) 558-4286 (facsimile: (212) 558-3588).

Very truly yours,

Mark U. Schneiderman

(Enclosures)

cc:    Bruce Ricca
       Joseph Matthews
       (Florida Office of Financial Regulation)

       Andrew R. Gladin
       Wendy M. Goldberg
       Stephen T. Milligan

-2-

H06000094200 3

Annex A

NO. 705    P. 17/25

H08000094200 3

### STATE OF FLORIDA
### OFFICE OF FINANCIAL REGULATION

In Re:  Application for Authority to Indirectly
Acquire CypressCoquina Bank, Ormond Beach,
Volusia County, Florida; Florida Choice Bank,
Mount Dora, Lake County, Florida; and
Millennium Bank, Gainesville, Alachua County,
Florida, by Royal Bank of Canada, Toronto,
Ontario, and Montreal Quebec, Canada, and
RBC Centura Banks, Inc., Raleigh, North
Carolina

Admin. File No. 0503-FI-1/08

2/4/08

### FINAL ORDER OF APPROVAL

On January 22, 2008, pursuant to Section 658.28, Florida Statutes, the Director of

the Division of Financial Institutions for the Office of Financial Regulation ("OFR")

issued the attached Notice of Intent to Approve the above-referenced application.  The

Applicants submitted a written waiver of their rights to a hearing concerning the

proposed OFR action on January 25, 2008.

Accordingly, it is ORDERED:

1.     The application for authority to indirectly acquire CypressCoquina Bank,

Ormond Beach, Volusia County, Florida; Florida Choice Bank, Mount Dora, Lake

County, Florida; and Millennium Bank, Gainesville, Alachua County, Florida, by Royal

Bank of Canada, Toronto, Ontario, and Montreal, Quebec, Canada, and RBC Centura

Banks, Inc., Raleigh, North Carolina, is APPROVED, subject to satisfaction of the

conditions contained in the Notice of Intent.

2.     The Applicants must satisfy the conditions of approval specified in the

attached Notice of Intent.  Until these conditions have been met, or if any interim

development is deemed to warrant further action by the OFR, the Commissioner reserves

the right to alter, suspend, or withdraw approval.

NO. 705   P. 18/25

H08000094200 3

Done and Ordered this 4th day of February, 2008, at Tallahassee,

Florida.

Don D. Saxon

Don Saxon, Commissioner
Office of Financial Regulation

## NOTICE OF RIGHT TO APPELLATE REVIEW

ANY PARTY WHO IS ADVERSELY AFFECTED BY THIS FINAL ORDER
IS ENTITLED TO JUDICIAL REVIEW PURSUANT TO SECTION 120.68, FLORIDA
STATUTES. REVIEW PROCEEDINGS ARE GOVERNED BY THE FLORIDA
RULES OF APPELLATE PROCEDURE. SUCH PROCEEDINGS ARE
COMMENCED BY FILING ONE COPY OF A NOTICE OF APPEAL WITH THE
AGENCY CLERK, OFFICE OF FINANCIAL REGULATION, LEGAL SERVICES
OFFICE, THE FLETCHER BUILDING, SUITE 526, 200 EAST GAINES STREET,
TALLAHASSEE, FLORIDA 32399-0379; AND A SECOND COPY, ACCOMPANIED
BY THE FILING FEES PRESCRIBED BY SECTION 35.22(3), FLORIDA
STATUTES, WITH THE DISTRICT COURT OF APPEAL, FIRST DISTRICT, 300
MARTIN LUTHER KING, JR. BLVD., TALLAHASSEE, FLORIDA 32399-1850, OR
IN THE APPELLATE DISTRICT IN WHICH THE PARTY RESIDES. THE NOTICE
OF APPEAL MUST BE FILED WITHIN THIRTY (30) DAYS OF RENDITION OF
THE FINAL ORDER TO BE REVIEWED.

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Final Order of Approval has
been furnished by U.S. Mail this 4th day of February, 2008 to Mr. Gerald P.
Hurst, RBC Centura Banks, Inc., 3201 Beechleaf Court, 7th Floor, Raleigh, North
Carolina, 27604.

Bruce Kuhse
Florida Bar #0308470
Chief Counsel
Division of Financial Institutions
Office of Financial Regulation
200 East Gaines St.
The Fletcher Building, Suite 526
Tallahassee, FL 32399-0379

H08000094200 3

## Annex B

Message                                                          Page 1 of 2

H08000094200 3

## Schneiderman, Mark U.

| | |
|---|---|
| From: | Joseph Matthews [Joseph.Matthews@fldfs.com] |
| Sent: | Wednesday, February 06, 2008 2:35 PM |
| To: | Goldberg, Wendy M. |
| Subject: | RE: Royal Bank of Canada: Fed Approval |

Hi Wendy,

We do not require any filings or applications for state banks merging into other state or nationally chartered banks. Please let us know the key dates of consummation (acquisition of the banks and merger of the banks). You can notify me by email if that is easiest for you.

Thanks, Joe

---

From: Goldberg, Wendy M. [mailto:goldbergw@sullcrom.com]
Sent: Wednesday, February 06, 2008 11:42 AM
To: Joseph Matthews
Subject: RE: Royal Bank of Canada: Fed Approval

Joe--we're putting together our bank merger act applications. My understanding from Bruce is that Florida does not require us to file anything for merging the Florida banks into RBC Centura Bank. We will be filing in Georgia, Alabama and North Carolina. Do you want a courtesy notice or anything else?

thanks,
Wendy

Wendy M. Goldberg
Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004
(212) 558-7915
(212)558-3588 (fax)

    -----Original Message-----
    From: Joseph Matthews [mailto:Joseph.Matthews@fldfs.com]
    Sent: Tuesday, February 05, 2008 3:03 PM
    To: Goldberg, Wendy M.
    Cc: John Alcorn; Don Dotzler
    Subject: RE: Royal Bank of Canada: Fed Approval

    Thanks.

---

From: Goldberg, Wendy M. [mailto:goldbergw@sullcrom.com]
Sent: Tuesday, February 05, 2008 3:02 PM
To: Joseph Matthews
Subject: RE: Royal Bank of Canada: Fed Approval

I will keep you posted. We do not have OSFI (Canada) approval yet.

Wendy M. Goldberg
Sullivan & Cromwell LLP
125 Broad Street

3/25/2008

Message                                                                    Page 2 of 2

New York, New York 10004                                          H08000094200 3
(212) 558-7915
(212)558-3588 (fax)

    -----Original Message-----
**From:** Joseph Matthews [mailto:Joseph.Matthews@fldfs.com]
**Sent:** Tuesday, February 05, 2008 2:40 PM
**To:** Goldberg, Wendy M.
**Subject:** RE: Royal Bank of Canada: Fed Approval

Thanks.

When are the planned consummation dates of the transactions?

---

**From:** Goldberg, Wendy M. [mailto:goldbergw@sullcrom.com]
**Sent:** Tuesday, February 05, 2008 2:32 PM
**To:** Joseph Matthews
**Subject:** Royal Bank of Canada: Fed Approval

Joe,

Attached for your reference please find the Fed order, dated today, approving the Royal Bank of Canada transaction.

Best regards,
Wendy

Wendy M. Goldberg
Sullivan & Cromwell LLP
125 Broad Street
New York, New York 10004
(212) 558-7915
(212)558-3588 (fax)


This e-mail is sent by a law firm and contains information that may be privileged and confidential. If you are not the intended recipient, please delete the e-mail and notify us immediately.

3/25/2008

APR. 11. 2008   3:46PM     C S C

H08000094200 3

Annex C-1

APR. 11. 2008 3:46PM C S C

H08000094200 3

FINANCIAL SERVICES COMMISSION

CHARLIE CRIST
GOVERNOR

BILL MCCOLLUM
ATTORNEY GENERAL

ALEX SINK
CHIEF FINANCIAL OFFICER

CHARLES BRONSON
COMMISSIONER OF
AGRICULTURE

OFFICE OF FINANCIAL REGULATION

DON B. SAXON
COMMISSIONER

January 22, 2008

Mr. John B. Fleming, Jr.
Assistant General Counsel
RBC Centura
3201 Beechleaf Court, 7th Floor
Raleigh, NC 27604

Re: RBC Bank (USA)

Dear Mr. Fleming:

Reference is made to your recent letter/fax requesting to change your corporate name from RBC Centura Bank to RBC Bank (USA).

As Section 655.922, Florida Statutes, exempts a financial institution, holding company or its subsidiaries from the prohibition of using the word "bank," "banco," "banque," "banker," "banking," "trust company," "savings and loan association," "savings bank," or "credit union," or words of similar import, in any context or in any manner in its corporate name, the Office will not object to the use of the above name being registered to transact business in the state of Florida.

Sincerely,

Linda B. Charity
Director

LBC:bk

cc: Karen Beyer, Chief, Bureau of Commercial Recordings, Division of Corporations, Department of State

RECEIVED

JAN 2 4 2008

RBC Centura
Law Group

MAILING ADDRESS: DIVISION OF FINANCIAL INSTITUTIONS
200 EAST GAINES STREET, TALLAHASSEE, FLORIDA 32399-0371
(850) 410-9800 • FAX (850) 410-9548

Affirmative Action / Equal Opportunity Employer

H08000094200 3

<u>Annex C-2</u>

NO. 705    P. 25/25

H08000094200 3

# POYNER&SPRUILL LLP
### ATTORNEYS-AT-LAW

B. Bardin Simmons, Jr.
Attorney-at-Law

Direct Dial 919.783.1031
bsimmons@poynerspruill.com

www.poynerspruill.com

Other offices: Charlotte, Rocky Mount,
Southern Pines

February 29, 2008

VIA FEDERAL EXPRESS

Federal Reserve Bank of Richmond
701 East Byrd Street
Richmond, Virginia 23219
Attention: A. Linwood Gill, III, Vice President

Re:    Name Change of RBC Centura Banks, Inc.

Dear Mr. Gill:

This letter follows up on our recent correspondence with your office relating to the name change of our client RBC Centura Bank ("Bank"). This letter is to inform the Federal Reserve Bank of Richmond that effective as of April 4, 2008 the name of the Bank's holding company will change from RBC Centura Banks, Inc. to RBC Bancorporation (USA). This name change will be simultaneous with the name change of the Bank to RBC Bank (USA).

If you have any questions or need any additional information regarding the matters discussed herein, please give me a call. Thank you for your continued assistance with this matter.

Sincerely,

B. Bardin Simmons, Jr.

cc:    John B. Fleming, Jr.

C201206200192

SOSID:
Date Filed: 3/2/2012 1:42:00 PM
Elaine F. Marshall
North Carolina Secretary of State
C201206200192

*State of North Carolina*
*Department of the Secretary of State*

## ARTICLES OF MERGER

Pursuant to North Carolina General Statute Sections 55-11-05(a), 55A-11-09(d), 55A-11-04, 57C-9A-22(a), 59-73.32(a) and 59-1072(a), as applicable, the undersigned entity does hereby submit the following Articles of Merger as the surviving business entity in a merger between two or more business entities.

1. The name of the surviving entity is PNC Bank, National Association , a *(check one)* national banking association
[ ] corporation, [ ] nonprofit corporation, [ ] professional corporation, [ ] limited liability company, [ ]
limited partnership, [ ] partnership, [ ] limited liability partnership organized under the laws of
United States *(state or country)*.

2. The address of the surviving entity is:

Street Address 222 Delaware Avenue          City Wilmington
State Delaware          Zip Code 19801          County New Castle

*(Complete only if the surviving business entity is a foreign business entity that is not authorized to transact business or conduct affairs in North Carolina.)* The mailing address of the surviving foreign business entity is: c/o PNC Legal Department, 249 Fifth Avenue, 21st Floor, Pittsburgh, PA 15222-2707
_____ . The Surviving foreign business entity will file a statement of any subsequent change in its mailing address with the North Carolina Secretary of State.

3. For <u>each</u> merging entity: *(if more than one, complete on separate sheet and attach.)*
The name of the merged entity is RBC Bank (USA) , a *(check one)*
[x] corporation, [ ] nonprofit corporation, [ ] professional corporation, [ ] limited liability company, [ ]
limited partnership, [ ] partnership, [ ] limited liability partnership organized under the laws of
North Carolina *(state or country)*.

4. If the surviving business entity is a <u>domestic</u> business entity, the text of each amendment, if any, to the Articles of Incorporation, Articles of Organization, or Certificate of Limited Partnership within the Plan of Merger is attached.

5. A Plan of Merger has been duly approved in the manner required by law by each of the business entities participating in the merger.

6. These articles will be effective upon filing unless a delayed date and/or time is specified 3/2/2012 .
11:59 p.m.

This the 2nd day of March , 20 12 .

PNC Bank, National Association
_____
*Name of Entity*

_____
*Signature*

Laura L. Long, Assistant Secretary
_____
*Type or Print Name and Title*

**NOTES:**
1. Filing fee is $50 for For-profit entities.
2. Filing fee is $25 for Non-profit entities.
3. This document must be filed with the Secretary of State. Certificate(s) of Merger must be registered pursuant to the requirements of N.C.G.S. Section 47-18.1

*(Revised September 2005)*          *(Form BE-15)*
CORPORATIONS DIVISION          P. O. BOX 29622          RALEIGH, NC 27626-0622

## EXHIBIT I



Comptroller of the Currency
Administrator of National Banks

---

Northeastern District Office                                   Licensing Division
340 Madison Avenue, 5th Floor                         Telephone No.: 212.790.4055
New York, New York 10173                                   Fax No.: 301.333.7015

March 2, 2012

James S. Keller
Chief Regulatory Counsel
The PNC Financial Services Group, Inc.
249 Fifth Avenue
One PNC Plaza, 21st Floor
Pittsburgh, Pennsylvania 15222-2707

Re:  Application to merge RBC Bank (USA), Raleigh, North Carolina, with and into  PNC Bank,
     National Association, Wilmington, Delaware under the charter and title of the latter
     Control No: 2011 NE 02 0021                          Charter No: 1316

Dear Mr. Keller:

This letter is the official certification of the approval of the Comptroller of the Currency ("OCC")
to merge RBC Bank (USA), Raleigh, North Carolina with and into PNC Bank, National
Association, Wilmington, effective March 2, 2012 at 11:59 pm.  The resulting bank title is PNC
Bank, National Association, Charter No. 1316.

This is also the official authorization given to PNC Bank, National Association, to operate the
branches and the main office of RBC Bank (USA) as branches.  A listing of each newly
authorized branch and its assigned OCC branch number is attached.

Please notify this office of any increase in capital stock or surplus as a result of this transaction so
that we may certify the increase in permanent capital.

If you have any questions, please contact me at (212) 790-4055.

Sincerely,

Sandya Reddy
Senior Licensing Analyst



## OFFICE OF THE COMMISSIONER OF BANKS

### CERTIFICATE OF AUTHORITY
### FOR ARTICLES OF MERGER

PNC Bank, National Association, a national banking corporation organized and existing under the laws of the United States, and located in Pittsburgh, Pennsylvania, and RBC Bank (USA), a North Carolina state-chartered commercial bank organized and existing under the laws of the State of North Carolina and located in Raleigh, Wake County, North Carolina, have submitted to the Office of the Secretary of State for the State of North Carolina, Articles of Merger between PNC Bank, National Association, and RBC Bank (USA) for the purpose of merging RBC Bank (USA) into PNC Bank, National Association, with the surviving entity being PNC Bank, National Association.

Authority to file the Articles of Merger, is therefore, granted, the said merger to be effective on the date and at the time specified therein.

This the ____ day of March, 2012.

Ray Grace
Interim Commissioner of Banks



**BURR ∴ FORMAN** LLP

*results matter*

Denise D. Dell-Powell, Esq.
Direct Dial: (407) 540-6607
Direct Fax: (407) 264-6466
Email: ddpowell@burr.com

450 South Orange Avenue
Suite 200
Orlando, FL 32801

*Office* (407) 244-0888
*Fax* (407) 244-0889

BURR.COM

July 16, 2010

<u>VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED,</u>
<u>AND VIA FIRST CLASS, U.S. MAIL</u>

K & R Business Investments, LLC
Attn: Gregory G. Shugg
519 N. State Street
Brunnell, Florida 32110

Re:   Loan from RBC Bank (USA), as successor by merger with Cypress Coquina Bank
("RBC"), to K & R Business Investments, LLC ("K & R" or "Borrower"), in the
original principal amount of $1,280,000.00 (the "Loan"), which Loan is comprised
of the following documents (collectively, the "Loan Documents"):

A)   Loan Agreement dated August 31, 2004;

B)   Secured Promissory Note dated August 31, 2004, in the original principal
amount of $1,280,000.00, as amended by that certain First Amendment to Secured
Promissory Note dated November 19, 2009 (collectively, the "Note");

C)   Mortgage, Assignment of Rents, and Profits, and Security Agreement dated
August 31, 2004, recorded in OR BK 1142, PG 1912, Public Records of Flagler
County, FL (the "Mortgage");

D)   Collateral Assignment of Rents, Leases and Profits dated August 31, 2004,
recorded in OR BK 1142, PG 1940, Public Records of Flagler County, FL (the
"Assignment of Rents");

E)   UCC-1 recorded on September 14, 2004 in OR BK 1142, PG 1943, Public
Records of Flagler County, FL;

F)   Continuing and Unconditional Guaranty of Gregory G. Shugg dated August
2004; and

G)   Continuing and Unconditional Guaranty of Kimberly A. Shugg dated August
2004.

Dear Mr. Shugg:

9224 v1

**EXHIBIT J**

K & R Business Investments, LLC
Attn: Gregory G. Shugg
July 16, 2010
Page 2

---

This firm represents RBC, the owner of the Loan and holder of the Loan Documents referenced above. You are hereby notified that the Loan is currently in default by virtue of the failure of the Borrower to make certain interest payments due under the Loan and to make full repayment of the Loan on the maturity date pursuant to the terms of the Loan Documents. RBC hereby demands payment of the full amount of the Loan pursuant to the terms of the Loan Documents.

As of the date hereof, the amount owed by the Borrower to RBC on the Loan is as follows: (i) the principal balance of $1,015,301.45, (ii) interest at the default rate of eighteen percent (18%) from December 28, 2008 through the date hereof in an amount equal to $287,330.31, and (iii) real estate property taxes for the years 2007, 2008, and 2009 paid by RBC on behalf of the Borrower in an amount equal to $97,484.21, **for a total amount due and owing of $1,400,115.97.** The principal amount shall continue to accrue interest at the default rate of eighteen percent (18%) per annum, or $507.65 per diem. The total amount due, together with additional interest accruing as set forth above and any other costs and fees (including attorney's fees) incurred by RBC with respect to the Loan are hereinafter referred to as the "Indebtedness."

Additionally, pursuant to Section 697.07, *Florida Statutes*, the Mortgage, and the Assignment of Rents, RBC is entitled to all rents received from the real property subject to the Mortgage, now and in the future. Accordingly, demand is hereby made upon you to turn over to and put in possession of RBC forthwith, all rents received from the real property referenced in the Mortgage.

Please be advised that if the total outstanding balance of the Indebtedness is not paid in full within **ten (10)** days from the date hereof, RBC may elect to pursue its remedies under the Loan Documents, including foreclosing on or taking possession of and liquidating any and all collateral securing payment of the Loan and pursuing all of its legal remedies against all parties obligated to repay the Indebtedness.

Furthermore, the acceptance by RBC of any future payments to the extent they do not represent timely or full payment of the Indebtedness, including all accrued and unpaid interest, late fees, attorney's fees or other reimbursable expenses, shall not constitute a waiver by RBC of any defaults which may exist under the Loan Documents.

Gregory G. Shugg and Kimberly A. Shugg (together, the "Guarantors") are hereby notified of the demand to Borrower to pay the Indebtedness. The Guarantors are hereby

K & R Business Investments, LLC
Attn: Gregory G. Shugg
July 16, 2010
Page 3

reminded that each has liability to RBC in accordance with the terms of their respective guaranty agreement.

PLEASE GOVERN YOURSELVES ACCORDINGLY.

Sincerely,

BURR & FORMAN LLP

Denise D. Dell-Powell

DDD-P/csl

cc:    Gregory G. Shugg
       1354 Lambert Avenue
       Flagler Beach, Florida 32136

       Kimberly A. Shugg
       1354 Lambert Avenue
       Flagler Beach, Florida 32136

       Mr. Thomas J. Van Leirde
       (sent by electronic mail only)

9224 v1

IN THE CIRCUIT COURT OF THE SEVENTH
JUDICIAL CIRCUIT IN AND FOR FLAGLER
COUNTY, FLORIDA

**RBC BANK (USA)**,

      Plaintiff,

v.                              **CASE NO. 2010-CA-1650**

**K & R BUSINESS INVESTMENTS, LLC**, a
Florida limited liability company, **GREGORY
G. SHUGG**, an individual, and **KIMBERLY
A. SHUGG**, an individual,

      Defendants.

_____/

### STIPULATED FINAL JUDGMENT

**THIS CAUSE** came on for hearing on January 21, 2011, on Plaintiff's Motion for

Summary Judgment (the "Motion") against defendants K & R Business Investments, LLC, a

Florida limited liability company ("K&R"); Gregory G. Shugg, an individual ("G. Shugg"),

Kimberly A. Shugg, an individual ("K. Shugg," and together with K&R and G. Shugg, the

"Obligors" or the "Defendants"), and the Court having reviewed the pleadings on file, and having

been otherwise duly advised in the premises, it is hereby

**ORDERED AND ADJUDGED:**

    1.    This Court has jurisdiction of the subject matter and the parties.  The allegations

contained in Plaintiff's Verified Complaint have been proven by competent evidence and the

equities are with the Plaintiff.

    2.    The pleadings, affidavits and admissions on file show that there is no genuine

issue as to any material fact, and that the Plaintiff is entitled to a judgment as a matter of law as

to all counts of its Verified Complaint.

## EXHIBIT K

3.    The address of the Plaintiff, RBC BANK (USA), is 301 Fayetteville Street, Suite 1200, Raleigh, North Carolina 27601.

4.    The address of K&R is 501 N. State Street, Brunnell, Florida 32110.

5.    The address of G. Shugg is 1354 Lambert Avenue, Flagler Beach, Florida 32136.

6.    The address of K. Shugg is 1354 Lambert Avenue, Flagler Beach, Florida 32136.

7.    The Motion is hereby **GRANTED.**

**Judgment on the Note**

8.    Plaintiff is hereby awarded a Judgment against K&R as to the amount due and owing under the Note, such amount being:

| | |
|---|---|
| Principal | $1,015,301.45 |
| Interest | $383,276.30 |
| Real Estate Taxes | $97,484.21 |
| Attorney's Fees | $   3,348.51 |
| Attorney's Costs | $   2,400.00 |
| **TOTAL AMOUNT DUE** | **$1,501,810.47** |

9.    The total amount set forth above shall bear interest at the statutory rate of 6% commencing on the date of this Judgment, and shall be increased in the amount of such further costs as may be incurred by Plaintiff in this action, for which amount let execution issue forthwith.

10.    In awarding RBC's attorney's fees above, this Court has taken into consideration the relevant guidelines set forth in Standard Guaranty Insurance Co. v. Quanstrom, 555 So. 2d 828 (Fla. 1990), and its progeny, and specifically finds that the hours, hourly rates, and total fees

of RBC's counsel in this matter, as set forth in the affidavits submitted in support of RBC's Motion, are reasonable pursuant to Section 687.06, *Florida Statutes*.

**Judgment of Foreclosure on Real Property, Personal Property, and Rents and Leases**

11.    Judgment is hereby entered in favor of RBC as to Counts II and III of the Verified Complaint, foreclosing on the Mortgage encumbering the Real Property described in the attached **Exhibit A**, and the Personal Property described on the attached **Exhibit B**, and foreclosing on the property described in the Assignment of Rents.

12.    Plaintiff holds a lien for the total sum awarded above, superior to all claims or estates of any of the Defendants on the Real Property described on Exhibit A, and Personal Property described on Exhibit B, both exhibits being attached hereto, and on the property described in the Assignment of Rents.

13.    If the total sum with interest at the rate described above and all costs accrued subsequent to this Judgment are not paid, the Clerk of this Court shall sell the Real Property and Personal Property at public sale on the 27th day of April, 2011, at 11 AM a.m./p.m. to the highest bidder for cash, except as prescribed in Paragraph 15, at the courthouse located at Kim C. Hammond Justice Center, 1769 E. Moody Blvd., Building 1, Civil/Criminal Department 2nd Floor, in Flagler County, Bunnell, Florida, accordance with Section 45.031, *Florida Statutes*, using the following method:

☐ At the Kim C. Hammond Justice Center, 1769 E. Moody Blvd., Building 1, Civil/Criminal Department 2nd Floor, in Flagler County, Bunnell, Florida in accordance with Section 45.031, *Florida Statutes*, beginning at __:00 a.m./p.m. on the prescribed date.

☐ By electronic sale beginning at __:00 a.m./p.m. on the prescribed date at _____ (website).

14.    Plaintiff shall advance all subsequent costs of this action and shall be reimbursed for them by the clerk if Plaintiff is not the purchaser of the property for sale; provided, however,

that the purchaser of the property for sale shall be responsible for the documentary stamps payable on the certificate of title. If Plaintiff is the purchaser, the clerk shall credit Plaintiff's bid with the total sum with interest and costs accruing subsequent to this Judgment, or such part of it as is necessary to pay the bid in full.

15.    On filing the certificate of title, the clerk shall distribute the proceeds of the sale, so far as they are sufficient, by paying: first, all of Plaintiff's costs; second, documentary stamps affixed to the certificate; third, Plaintiff's attorneys' fees; fourth, the total sum due to Plaintiff, less the items paid, plus interest at the rate prescribed above from this date to the date of the sale; and by retaining any remaining amount pending the further order of this Court.

16.    On filing the certificate of sale, Defendants and all persons claiming under or against Defendants since the filing of the notice of lis pendens shall be foreclosed of all estate or claim in the property, except as to claims or rights under chapter 718 or chapter 720, *Florida Statutes,* if any. Upon the filing of the certificate of title, the person named on the certificate of title shall be let into possession of the property. If any Defendants remain in possession of the property, the clerk shall without further order of the court issue forthwith a writ of possession upon request of the person named on the certificate of title.

17.    If this property is sold at public auction, there may be additional money from the sale after payment of persons who are entitled to be paid from the sale proceeds pursuant to this Judgment.

18.    If you are a subordinate lienholder claiming a right to funds remaining after the sale, you must file a claim with the clerk no later than 60 days after the sale. If you fail to file a claim, you will not be entitled to any remaining funds.

## Judgment on the G. Shugg Guaranty

19.    Final judgment for damages, interest, costs and attorneys' fees is hereby entered in favor of RBC, and against defendant G. Shugg for breach of the G. Shugg Guaranty in the amount set forth in Paragraph 8 above, to bear interest at the per annum rate specified by the State of Florida Comptroller pursuant to Section 55.03, *Florida Statutes,* which rate is currently six (6%) percent, for which amount let execution issue.

## Judgment on the K. Shugg Guaranty

20.    Final judgment for damages, interest, costs and attorneys' fees is hereby entered in favor of RBC, and against defendant K. Shugg for breach of the K. Shugg Guaranty in the amount set forth in Paragraph 8 above, to bear interest at the per annum rate specified by the State of Florida Comptroller pursuant to Section 55.03, *Florida Statutes,* which rate is currently six (6%) percent, for which amount let execution issue.

## Completion of Fact Information Sheet

21.    It is further ordered and adjudged that K&R, G. Shugg, and K. Shugg shall complete under oath Florida Rule of Civil Procedure Form 1.977 (Fact Information Sheet), including all required attachments, and serve it on Plaintiff's attorney within forty-five (45) days from the date of this Judgment, unless the Judgment is satisfied or post-judgment discovery is stayed.

22.    Jurisdiction of this case is retained to enter further orders that are proper to compel the judgment debtor(s) to complete form 1.977, including all required attachments, and serve it on the judgment creditor's attorney, or the judgment creditor if the judgment creditor is not represented by an attorney.

**Reservation of Jurisdiction**

23.    The Court reserves jurisdiction over the parties and the subject matter to conduct

such proceedings and enter such further orders as may be proper, including, but not limited to,

and orders concerning discovery in aid of execution and proceedings supplementary.

**DONE AND ORDERED** in Flagler County, Florida, this _____ day of January 2011.

February

/S/ DENNIS CRAIG
CIRCUIT JUDGE

_____ FEB 0 2 2011
Dennis Craig, Circuit Court Judge

SIGNED AND DATED

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this _____ day of January, 2011, a true and correct copy of

the foregoing was sent via U.S. Mail to Christopher S. Linde, Burr & Forman LLP, 450 S.

Orange Avenue, Suite 200, Orlando, Florida 32801; James L. Manfre, Esq., Nowell &

Associates, P.A., 1100 East Moody Blvd., Bunnell, Florida 32110; and the Florida Department

of Revenue, c/o Revenue's Agency Clerk and/or Deputy Clerk, Room 204, Carlton Building, 501

S. Carolina Street, Tallahassee, Florida 32399.

_____
Judicial Assistant

## REAL PROPERTY DESCRIPTION
## EXHIBIT "A"

Lots 1 through 12, inclusive, Block 177, Town of Bunnell, according to the map or plat thereof as recorded in Plat Book 1, Page 2, Public Records of Flagler County, Florida, together with that portion of vacated Magnolia Avenue and Alley adjacent thereto, vacated pursuant to City of Bunnell Ordinance 1987-4 and 86-9, LESS AND EXCEPT: Property taken or conveyed for highway purposes.

This Financing Statement covers the following types and items of property (the "Collateral"):

As to Mortgage:   All property rights of any kind whatsoever, whether real, personal, mixed, or otherwise, and whether tangible or intangible, described in that certain Mortgage, Assignment of Rents and Security Agreement (the "Mortgage"), dated as of August 31, 2004, from Debtor, as identified hereinabove, in favor of Secured Party, as identified hereinabove, encumbering those certain parcels of real estate (the "Land") situate in ___Flagler___ County, Florida, and legal described on Exhibit A attached hereto and made a part hereof, together with all rights, privileges, tenements, hereditaments, rights-of-way, easements, appendages, projections, appurtenances, water rights including riparian and littoral rights, streets, ways, alleys, and strips and gores of land now or hereafter in any way belonging, adjoining, crossing, or pertaining to the Land; and all of the following property of Debtor whether now owned or existing, or hereafter acquired or arising, whether located in, on, pertaining to, used or intended to be used in connection with or resulting or created from the ownership, development, management, or operation of the Land:

(i)   all "Improvements" (as such term is defined in the Mortgage) and landscaping;

(ii)   all tangible property (collectively, the "Equipment") now or hereafter owned by Debtor and now or hereafter located at, affixed to, placed upon or used in connection with the Land or the Improvements, or any present or future improvements thereon, including without limitation, all machinery, equipment, appliances, fixtures, conduits and systems for generating or distributing air, water, heat, air conditioning, electricity, light, fuel or refrigeration, or for ventilating or sanitary purposes, or for the exclusion of vermin or insects, or for the removal of dust, refuse, sewage or garbage, or for fire prevention or extinguishing; all elevators, escalators, lifts stations, tanks, boilers, water engines, generators, compressors, pumps, lift stations, tanks, boilers, water heaters, furnaces and incinerators; all furniture, furnishings, fixtures, appliances, installations, partitions, shelving, cabinets, lockers, vaults and wall safes; all carpets, carpeting, rugs, underpadding, linoleum, tiles, mirrors, wall coverings, windows, storm doors, awnings, canopies, shades, screens, blinds, draperies and related hardware, chandeliers and light fixtures; all plumbing, sinks, basins, toilets, faucets, pipes, sprinklers, disposals, laundry appliances and equipment, and kitchen appliances and equipment; all alarm, safety, electronic, telephone, music, entertainment and communications equipment and systems; all janitorial, maintenance, cleaning, window washing, vacuuming, landscaping, pool and recreational equipment and supplies; and any other items of property, wherever kept or stored, if acquired by Mortgagor with the intent of incorporating them in or using them in connection with the Land and the Improvements;

(iii)   all awards or payments, including interest thereon and the right to receive the same, growing out of or resulting from any exercise of the power of eminent domain (including the taking of all or any part of the Land or the Improvements), or any alteration of the grade of any street upon which the Land abuts; or any other injury to, taking of, or decrease in the value of the Land or the Improvements or any parts thereof;

(iv)   all rights of Debtor in and to any hazard, casualty, liability, or other insurance policy carried for the benefit of Debtor or Secured Party with respect to the Improvements or the Equipment, including without limitation any unearned premiums and all insurance proceeds or sums payable in lieu of or as compensation for any loss of or damage to all or any portion of the Improvements or the Equipment;

(v)   all rights of Debtor in and to all supplies materials delivered to or located upon the Land or elsewhere and used or usable in connection with the

**EXHIBIT B**

construction or refurbishing of Improvements;

(vi)  all rights of Debtor in, to, under, by virtue of, arising from or growing out of any and all present or future contracts, instruments, accounts, insurance policies, permits, licenses, trade names, plans, appraisals, reports, paid fees, choses-in-action, subdivision restrictions or declarations or general intangibles whatsoever now or hereafter dealing with, affecting or concerning the Land or the Improvements or any portion thereof or interest therein, including but not limited to:  (a)  all contracts, plans and permits for or related to the Land or its development or the construction or refurbishing of the Improvements, (b) any agreements for the provision of utilities to the Land or Improvements, (c) all payment, performance or other bonds, (d)  any contracts now existing or hereafter made for the sale by Debtor of all or any portion of the Land or the Improvements, including any deposits paid by any purchasers (howsoever such deposits may be held; however, nothing herein shall impair the ability to return a deposit to a purchaser upon good faith termination of the purchase contract) and any proceeds of such sales contracts, including any purchase-money notes and mortgages made by such purchasers, and (e)  any declaration of condominium, restrictions, covenants, easements or similar documents now or hereafter recorded against the title to all or any portion of the Land;

(vii) all rents, income, issues and profits of the Land the Improvements and other property subject to the Mortgage, and all Leases (as such term is defined in the Mortgage), and together with all guaranties of the Leases and all security deposits and prepaid rents under the Leases; and

(viii)      all proceeds, products, replacements, additions, betterments, extensions, improvements, substitutions, renewals and accessions of any of the foregoing.

As to Security Agreement:      In addition, Debtor has executed that certain Security agreement (the "Security Agreement"), dated as of even date with the Mortgage, which creates a continuing and unconditional security interest in the assets described below and in all parts, accessories, attachments, additions, replacements, accessions, substitutions, increases, profits, income, distributions, proceeds and products thereof in any form (including; without limitation, insurance proceeds) together with all records relating thereto:

(i)  All of the Debtor's inventory, including without limitation all goods held for sale or lease or to be furnished under contracts of service, raw materials, work in process and materials to be used or consumed in the Debtor's business.

(ii)  All of the Debtor's right to receive payments from any source and for any reason (whether characterized as accounts, chattel paper, choses-in action, contract rights, general intangible, instruments, notes or otherwise) including, without limitation, the Debtor's right to receive payments for goods and other products sold or leased or for services rendered, whether or not earned by performance or recognized or billed by the Debtor.

(iii) All of the Debtor's receivables, chattel paper, notes, securities, and instruments, including the right to receive payments thereunder.

(iv)  All of the Debtor's general intangibles, including without limitation copyrights, trademarks, trade names, service marks, patent drawings, designs and formulas.

(v)   All of the Debtor's fixtures and equipment, including, without limitation, all office equipment, office furniture, computers, computer software, modems, interface equipment, computer terminals, printers, peripheral computer equipment, accessory equipment, hand and power tools, trucks, automobiles, heavy equipment and other motor vehicles, machinery and equipment of all classes.

(vi)  All of the Debtor's contract rights including, without

limitation, the Debtor's rights under distribution contracts, franchise agreements, license agreements, sales contracts, unfilled customer orders, and lease agreements.

The Collateral also includes other assets of the same class or classes hereafter owned or acquired by the Debtor and the Secured Party shall have a security interest in all such after acquired assets and all parts, accessories, attachments, additions, replacements, accessions, substitutions, increases, profits, income, distributions, proceeds and products thereof in any form.

Nothing herein shall be construed to limited the security interest and Collateral created by the Mortgage and the Security Agreement, and such security interest and Collateral shall be deemed to be cumulative. If such security interest and Collateral created by the Mortgage on one hand and the Security Agreement on the other are found inconsistent, the security interest and Collateral shall be given the most broad possible construction.

The filing of this Financing Statement shall not be construed to derogate from or impair the lien or provisions of the Mortgage from Debtor to Secured Party encumbering any property described therein which is Real Property or which the parties have agreed to treat as real property. Similarly, nothing in this Financing Statement shall be construed to alter any of the rights of Secured Party or Debtor as determined by the Mortgage and the Security Agreement or the priority of the Secured Party's liens created thereby, and this Financing Statement is declared to be for the protection of Secured Party in the event any court shall at any time hold that notice of Secured Party's priority of interest in any property or interest described in the Mortgage or the Security Agreement must, in order to be effective against a particular class of persons, including but not limited to the Federal Government and any subdivisions or entity of the Federal Government, be filed in the Commercial Code records.

The Debtor is the fee simple owner of the Land.

## EXHIBIT "A"

Lots 1 through 12, inclusive, Block 177, Town of Bunnell, according to the map or plat thereof as recorded in Plat Book 1, Page 2, Public Records of Flagler County, Florida, together with that portion of vacated Magnolia Avenue and Alley adjacent thereto, vacated pursuant to City of Bunnell Ordinance 1987-4 and 86-9, LESS AND EXCEPT:   Property taken or conveyed for highway purposes.

IN THE CIRCUIT COURT OF THE
SEVENTH JUDICIAL CIRCUIT IN AND
FOR FLAGLER COUNTY, FLORIDA

PNC BANK, NATIONAL ASSOCIATION,
as successor to RBC BANK (USA),

          Plaintiff,                  CASE NO. 2010-CA-1650

v.

K & R BUSINESS INVESTMENTS, LLC.,
a Florida limited liability company,
GREGORY G. SHUGG, an individual,
KIMBERLY A. SHUGG, an individual,

          Defendants.
_____/

## ORDER APPOINTING RECEIVER

THIS CAUSE came before this Court on Plaintiff's Motion to Appoint Receiver (the "Motion") and the Court having found that Plaintiff has established in the Verified Complaint filed in this case on September 10, 2010 (the "Complaint") and in the Motion that Defendant, K & R Business Investments, LLC, a Florida limited liability company ("K & R" or "Borrower") owns certain real and personal property located in Flagler County, Florida, upon which Plaintiff holds a first mortgage (the "Mortgage"), and further, that the good cause has been shown for the appointment of a receiver to take charge of the property subject to the Mortgage and the Borrower has consented to appointment of a receiver,

    IT IS ORDERED AND ADJUDGED as follows:

I.    __Appointment; Oath Of Receiver; Bond__

    1.    The Motion is **GRANTED.**

    2.    In accordance with Rule 1.620, Fla. R. Civ. P., Ketan B. Vora ("Receiver") of Sunbelt Receivers, LLC is hereby appointed Receiver of the real and personal property which is

**EXHIBIT L**

described in the Mortgage, which property has a street address of 501 N. State Street, Bunnell, Florida 32110 (hereinafter referred to as the "Property"), including any rents and revenues generated from such Property, which is sought to be foreclosed as described in the Complaint. This appointment of the Receiver is effective immediately upon entry of this Order and shall continue until entry of an order terminating the appointment of the Receiver.

3.    Within twenty (20) days of the date of this Order, the Receiver shall file in this action an Oath of Receiver in the form attached hereto as **Exhibit A**.

4.    Within twenty (20) days from the date of this Order, the Receiver shall post a cash or surety bond in the amount of $10,000.00, with any surety bond being duly provided by a corporate surety in the form attached hereto as **Exhibit B**, guaranteeing performance by the Receiver of the duties and obligations of his office of receivership. The bond is to be payable to this Court in order to provide coverage to the parties as their respective interests may appear for the loss due to acts of all agents, servants or employees of the Receiver according to the requirements and limitations set forth in this Order. The cost to the Receiver of obtaining a surety bond shall be reimbursed by the Plaintiff as additional compensation to the Receiver for acting in such capacity.

5.    The Receiver and the Receiver's attorneys and agents: (i) may rely on any and all outstanding court orders, judgments, decrees and rules of law, and shall not be liable to anyone for their own good faith compliance with any such order, judgment, decree or rule of law; (ii) may rely on, and shall be protected in any action upon, any resolution, certificate, statement, opinion, report, notice, consent, or other document believed by them to be genuine and to have been signed or presented by the proper parties; (iii) shall not be liable to anyone for their good faith compliance with their duties and responsibilities as a Receiver, or as attorney or agent for

Receiver; and (iv) shall not be liable to anyone for their acts or omissions, except upon a finding by this Court that such acts or omissions were outside the scope of their duties or were grossly negligent. Except for matters set forth in subsection (iv) of the preceding sentence, persons dealing with the Receiver shall only look to the receivership assets and bond posted by the Receiver to satisfy any liability, and neither the Receiver nor his attorneys nor his agents shall have any personal liability to satisfy any such obligation.

II.     **Surrender Of Property**

6.     K & R, its agents and any property manager, are hereby directed to immediately surrender to the Receiver all books, records, leases, contracts, security deposits, advance rents, tenant accounts, bank accounts and funds, checkbooks and ledgers, past-due bills and invoices, insurance policies, insurance information, utility information, rent rolls, rent records, permits and licenses of any sort associated with the Property, including all electronically stored information of every sort pertaining to the Property. K & R is further instructed to execute such documents as the Receiver may reasonably require and to cooperate fully with the Receiver to permit him to obtain ownership or control of any books, records, leases, contracts, licenses, permits, security deposits, advance rents, tenant accounts, bank accounts and funds, checkbooks and ledgers contract rights, utility deposits, insurance policies or other property, records, electronically stored information, or documents which he may need to control or own in order to perform his duties and obligations under this Order. The Receiver's receipt of any monies and funds of K & R for the Property on deposit in any bank, savings and loan association and/or financial institution shall discharge such bank, savings and loan association and/or financial institution from further responsibility for any accounting to K & R, as the account holder, for such monies and funds, for which the Receiver shall give his receipt.

3

7.      Additionally, K & R shall turn over to the Receiver all keys, gate cards, passes, security codes, alarm codes or any other item that may be necessary to gain access to the Property and to secure the Property.  The Receiver shall take control or possession of all property, real, personal, or mixed, tangible and intangible, which is part of the Property and shall retain such control or possession until further order of this Court.  The Receiver may change the locks to the Property if the Receiver, in his discretion, deems it necessary or appropriate.

8.      During the pendency of this action, K & R and its officers, directors, agents, employees, and assigns and all persons with notice hereof, shall be restrained and enjoined from taking, devaluing, depreciating or otherwise harming any of the Property, or from interfering in any manner with the Property or possession of the foregoing by the Receiver or with the Receiver's performance of his duties and obligations under this Order.

9.      Any tenants, licensees, vendors in possession of portions of the Property, or such other persons as may be in lawful possession thereof, whether as lessees or otherwise, are hereby directed to attorn to the Receiver, and until the further order of the Court, to pay over to the Receiver or his duly designated agent, all rents, profits and proceeds of the Property now due and unpaid or hereafter to become due.  All tenants, licensees, or vendors at the Property and other persons liable for the rents or payments due K & R be and they hereby are enjoined and restrained from paying any rent for the Property to K & R or its property manager, or managing agent, their officers, directors, employees, agents, or attorneys, from and after the date of this Order.

## III.    **Reports**

10.     Within thirty (30) days from the date of this Order, the Receiver shall file in this Court under oath an inventory of the property coming under the Receiver's possession or control.

22611891 v1

11.    The Receiver is directed to prepare and file monthly reports on or before the 25th day of each month for the prior month for so long as the Property shall remain in his possession and care, which report shall be under oath, setting forth all receipts, disbursements and material changes in the Property during the prior month.  The Receiver shall file each report with the Court and shall serve by mail a copy of each such report on the attorneys of record for the parties to this cause, or directly on the parties if they are unrepresented by counsel.  The Receiver shall follow accounting standards typical for similar properties and, with the prior approval of Plaintiff, may engage third-party accountants for preparation of Receiver's reports and other accountings to the Court.  The Receiver shall file a final report within sixty (60) days after the closing of a sale of the Property, as permitted herein, or recordation of a certificate of title on completion of this action.

12.    In addition, the Receiver shall prepare and provide to the Plaintiff a detailed, projected operating budget for the Receiver and the Property (the "Budget") on or before thirty (30) days from the date of this Order, which shall be subject to the written approval of Plaintiff. The Plaintiff shall advise the Receiver in writing within fifteen (15) days of its receipt of the Budget whether Plaintiff approves or disapproves of the Budget.  Once approved, the Receiver shall provide a copy of the approved Budget to the Borrower.  The Receiver shall not be obligated to contribute personal funds in the performance of his duties hereunder.

IV.    **Authority and Powers of Receiver**

13.    From and after the date of this Order and until further order of this Court, Receiver shall pay the necessary operating expenses associated with the Property, including without limitation, the wages of any agents or employees engaged by Receiver, utility bills such as  water,  sewer,  electric  and  telephone,  worker's  compensation  insurance  premiums.

Furthermore, from and after the date of this Order, in no event shall K & R, or its agents or representatives, withdraw any monies from K & R's business, accounts or from the Property for itself or its principals or owners.

14.     Any income or other proceeds collected by the Receiver shall be remitted to Plaintiff after deducting therefrom amounts sufficient to pay any normal and necessary maintenance expenses, operating expenses, receivership expenses and any reserves required by the Budget. Plaintiff shall apply any such proceeds received to reduce the indebtedness owed by the Borrower.

15.     The Receiver shall use his best reasonable efforts to manage, preserve, protect, maintain, and operate the Property in a reasonable, prudent, diligent and efficient manner. Without limitation of the foregoing, the Receiver shall have the following specific powers and duties:

a)      The Receiver is authorized to engage, supervise, discharge and pay such employees or agents as are necessary or appropriate to accomplish the purposes of this Order, including hiring a management company to assist the Receiver in accomplishing his duties as set forth herein, and may pay such management company from the revenues collected by the Receiver relating to the Property;

b)      The Receiver shall determine upon taking possession of the Property whether insurance coverage exists and whether the insurance for the Property meets the requirements of insurance as set forth in the Mortgage. With respect to any insurance coverage in existence or obtained, the Plaintiff and Receiver shall be named as additional insureds of such insurance, and Plaintiff and Borrower shall be listed as loss payees in any policy obtained by the Receiver. Borrower and its property managers, employees, and agents are prohibited from

canceling, reducing, or modifying any and all insurance coverage in existence with respect to the Property. If insurance coverage does not exist, or if the insurance on the Property does not meet the requirements set forth in the Mortgage, the Receiver shall immediately notify the parties in this action, and the Receiver shall use his best efforts to immediately procure sufficient insurance. The cost of insurance coverage procured by the Receiver shall be deemed a normal, ordinary, and necessary operating expense of the Property. Among other things, the Receiver shall not be responsible for claims arising from the lack of procurement or inability to obtain insurance due to circumstances or events outside the Receiver's control and which circumstances or events were not caused by the actions of the Receiver. To the extent that funds are not available from the normal operation of the Property to fund the obtaining and maintenance of insurance, Plaintiff is authorized to advance those funds as protective advances made pursuant to the Mortgage and any such advances shall be secured by the Mortgage;

c)      During the term of the receivership the Receiver shall promptly investigate and file with this Court a full, written report within 60 days of: (i) any occurrence of a serious and material accident at the Property; (ii) any claims for damages directed to the Receiver and relating to the ownership, the status of insurance, operations and maintenance of the Property; and (iii) any damage and destruction to the Property with the estimated cost of repair thereof. The Receiver also shall prepare and file any reports required by an insurance company in connection therewith. The Receiver shall not be responsible for any claims or damage arising out of accidents, casualties, rental disputes or occurrences at the Property prior to the date Receiver takes possession of the Property or arising out of Borrower's operations and maintenance of the Property prior to Receiver's possession;

d)     The Receiver shall control, collect and protect any fees, rents, issues, proceeds and profits of the Property;

e)     Except for expenses incurred by the Receiver prior to the date of this Order in connection with the appointment of the Receiver or the entry of this Order, neither the Receiver nor Plaintiff shall be liable for any expenses incurred with regard to the Property prior to the Receiver's taking possession of the Property (including, without limitation, real property taxes, sales tax, utility bills, mechanic's liens, federal and state tax liens, construction contracts, unpaid payroll expenses for K & R employees, or other unpaid invoices for services, materials labor or utilities incurred by K & R), nor shall the Receiver or Plaintiff be required to use any rents or other revenues collected after the Receiver takes possession of the Property for payment of any such expenses incurred with regard to the Property prior to the Receiver's taking possession of the Property. Notwithstanding the foregoing, the Receiver may, in the Receiver's sole and absolute discretion, pay those expenses which were incurred in the normal and ordinary course of business of the Property prior to the Receiver's taking possession of the Property, where the payment of any such pre-existing expenses is necessary and critical to the ongoing operation of the Property;

f)     The Receiver shall be added as a signatory to all bank accounts for the Property;

g)     The Receiver is authorized to endorse any and all checks payable to K & R and to deposit them in one or more bank accounts under the Receiver's control, which sums shall not be commingled with any other funds established and maintained by the Receiver;

22611891 v1

h)     The Receiver shall not incur any obligation or liability requiring expenditures in excess of $5,000 without Plaintiff's prior written consent or further order of this Court;

i)     The Receiver shall further be authorized, at his discretion: (i) to enforce obligations relating to the Property, (ii) to defend any claims solely relating to the Property and arising from and after the entry of this Order, as may be necessary to preserve and protect the Property, and (iii) to act on all matters relating to the Property, including the right to negotiate and enter into new, modified or replacement contracts, leases, rental agreements, and agreements to provide services, tenant improvements, materials, equipment, furniture, carpeting, furnishings, fixtures or other personal property. Receiver is authorized to employ counsel or consultants as may be necessary to take the actions permitted by this Order;

j)     The Receiver shall maintain appropriate records and accounts concerning the operation of the Property. Upon prior reasonable notice to Receiver and at all reasonable times on regular business days, Plaintiff, the other parties, and their respective agents and representatives shall have reasonable access to the Receiver's records, accounts, files and all other materials pertaining to the Property;

k)     The Receiver shall forward to K & R or its counsel any mail received at the Property but not related to the Property;

l)     The Receiver is authorized to enter into a management and leasing/sales contract with Sunbelt Receivers, LLC ("Sunbelt"), an affiliate of the Receiver;

m)     The Receiver shall advise the Court and the parties to this cause in writing of any other affiliate relationship or pecuniary interest of the Receiver in any service contract regarding the Property;

9

n)     The Borrower and Plaintiff jointly agree that the Receiver is authorized to institute and engage in the marketing for sale of the Property, or for any portion of the Property, on behalf of the Borrower, and to undertake all steps necessary and reasonable to consummate and close a sale. The Borrower and Plaintiff jointly agree that the Receiver shall cause the Property to be listed for sale, subject to Plaintiff's prior written approval of the listing real estate broker and listing agreement. The Receiver may execute any closing documents, including without limitation, deeds of conveyance, bills of sale, settlement statements, and closing affidavits, in his capacity as receiver of the Property and/or on behalf of K & R BUSINESS INVESTMENTS, LLC, in connection with any sale of the Property, and to that end the Receiver is hereby designated and appointed as a lawful agent, representative and attorney in fact for the Borrower as an Authorized Agent. The Receiver is hereby authorized, empowered and instructed in the place and stead of the members and/or managers of Borrower and for and on behalf of Borrower, to negotiate and enter into all contracts for the sale and purchase of the Property, and to execute and deliver, from time to time, all instruments and other documents necessary for the valid conveyance of any interest of the Borrower in any of the Property to accomplish the full and complete sale of the Property or any portion thereof. Any such documents duly executed by the Receiver, whether as the Authorized Agent of the Borrower, or as attorney in fact for the members and/or managers, and on behalf of the Borrower, shall be as effective as if executed by the Borrower, and any deed of conveyance so executed by the Receiver shall effectively and validly transfer the interest of the Borrower in the Property or any portion so conveyed. The appointment made pursuant to this paragraph shall remain in full force and effect, according to its terms until revoked by further Order of this court or by mutual written consent of the Plaintiff and Borrower filed with this Court and served on the Receiver. The

parties need not obtain further court approval for the sale of the Property, or any portion of the Property, or to act in accordance with the provisions of this Order. It is hereby ordered and agreed that any such sale of the Property is made and deemed necessary to prevent waste and to protect the interests of the parties. The Receiver shall give each of the parties written notice of any contract offers received by the Receiver for the Property, or any portion thereof, and unless otherwise objected to by a party within three (3) business days of receipt of such notice, the proposed contract for sale shall be deemed approved and the sale of the Property pursuant thereto shall be deemed reasonable and at arm's length. All proceeds of any sale of the Property shall be disbursed to the Receiver for further disbursement in accordance with this Order or such further orders as this Court may issue in regard to same from time to time;

o) Without further order of the court, the Receiver is authorized to: (i) enter into leases on such terms and conditions as are approved by Plaintiff, which approval shall not be unreasonably withheld or delayed; (ii) amend, modify, renew or cancel leases and other contracts and agreements relating to the Property, and (iii) to make expenditures for leasing commissions. In holding, retaining, managing, operating, preserving and protecting the Property, the Receiver shall not be bound by or otherwise subject to any existing management agreement, any real estate listing, brokerage, sales or leasing agreement, or any other obligation, contract or agreement of Borrower, other than valid existing leases (to which Receiver shall be bound, subject to the terms of this Order and the performance of such leases by the parties thereto); and

p) The Receiver may at any time upon proper written notice to all parties to this action, apply to this Court for further instructions and powers whenever such instructions or powers shall be deemed necessary in order to perform properly and legally the duties of the receivership and to maintain, operate, and preserve and protect the Property.

22611891 v1

## V.    Receiver's Certificates

16.    Without further order of this Court, the Receiver may from time to time borrow money from Plaintiff for the performance of his duties hereunder, and may issue Receiver's Certificates of Indebtedness ("Certificates") to evidence such borrowings. The Certificates shall accrue interest at the interest rate provided for in the Loan Documents attached to the Complaint. The principal and interest evidenced by each such Certificate shall be a first and prior lien and security interest upon all of the Property, and upon all rents, earnings and income of the Property. Any such funds advanced by Plaintiff, and evidenced by the issuance of Certificates shall be considered advances made under the Loan Documents. The lien of each Certificate shall be prior and superior to the rights, titles and interests in the Property of all Defendants to this action, as well as to the lien of the Mortgage and the other Loan Documents. The lien of each Certificate shall be prior and superior to the interest or lien of all judgment holders, construction lien claimants, and creditors of Defendants. Without limitation of the foregoing, the sums evidenced by each Certificate shall also be secured by the lien and security interests of the Loan Documents. Nothing herein shall obligate Plaintiff to advance all or any part of the borrowings authorized herein.

## VI.    Receiver's Fees and Costs; Professionals

17.    The Receiver shall be entitled to a reasonable fee for his services performed pursuant to this Order paid from time to time from income derived from the operation of the Property. Said fee shall be calculated at the rate of $225 per hour. If income from the Property is not sufficient to pay the Receiver, Plaintiff may advance funds to cover his fee and such advances shall be added to the indebtedness of Borrower and secured by the Loan Documents.

22611891 v1

18.     The Receiver may employ legal counsel to furnish legal advice for such purposes as may be necessary during the period of receivership.  The Receiver may employ an accountant to assist the Receiver in the preparation of the required reports and accounting during the period of this receivership.  All expenses for legal fees and accounting fees incurred by the Receiver shall be paid out of the Property operating account without further court approval, subject to the provisions of this Order.

19.     The Receiver shall provide to the parties copies of all invoices for the Receiver's fees and expenses and for the fees and expenses of any professionals the Receiver engages under paragraph 17 above.  The parties shall have 5 days to object to the payment of any fees described in the invoices.  Absent any objection, the Receiver may pay the fees from the Property operating account.

20.     The Receiver is hereby authorized to obtain his own liability insurance if desired, and to pay the premiums for said insurance or any required bonding from proceeds generated by the Property, as a reasonable and necessary expense of his operation of the Property.

VII.   **Termination of Receivership**

21.     Receiver shall have no liability or responsibility for the acts or omission of Borrower, and Receiver's liability in his capacity as Receiver shall be limited to the surety bond except for Receiver's gross negligence or willful misfeasance.  None of the named Defendants in this action shall have any liability for any acts of the Receiver.  The Receiver shall continue in place until this Court enters an order terminating the receivership; provided, however, that the receivership bond shall remain in place for a period of thirty (30) days after the entry of an order terminating the receivership.  If no claims or demands against the receivership bond are made within thirty (30) days after the entry of an order terminating the receivership, then the

22611891 v1

receivership bond shall be dissolved and released automatically without necessity of further order of this Court.

DONE AND ORDERED, in Flagler County, Florida, this _____ day of _____, 2015.

EDWIN P.B. SANDERS
CIRCUIT JUDGE

JAN 2 2 2015

_____
SIGNED AND DATED
HONORABLE JUDGE MICHAEL ORFINGER
Circuit Judge

With copies to:

Denise D. Dell-Powell, Esq., Burr & Forman, LLP, 200 S. Orange Avenue, Suite 800, Orlando, Florida 32801;

Sid Nowell, Esq., Nowell, Bayer and Maguire, 109 South 6th Street, Flagler Beach, FL 32136;

K & R Business Investments, LLC, 501 N. State Street, #10, Bunnell, FL 32110 and PO Box 535, Bunnell, FL 32110.

22611891 v1

IN THE CIRCUIT COURT OF THE
SEVENTH JUDICIAL CIRCUIT IN AND
FOR FLAGLER COUNTY, FLORIDA

**RBC BANK (USA),**

        Plaintiff,

v.                           **CASE NO. 2010-CA-1650**

**K & R BUSINESS INVESTMENTS, LLC.,**
a Florida limited liability company,
**GREGORY G. SHUGG,** an individual,
**KIMBERLY A. SHUGG,** an individual,

        Defendants.

_____/

## OATH OF RECEIVER

    BEFORE ME, the undersigned authority, this day personally appeared

_____, who, being first duly sworn, says:

    1.    That he is the person that has been appointed Receiver of the real and personal

property which is the subject matter of this action, pursuant to the Order of this Court dated

_____, ____.

    2.    That he will faithfully administer the properties and duties with which he has been

entrusted in accordance with law.

    3.    That his business address is _____.

    **FURTHER AFFIANT SAYETH NAUGHT.**

                            _____

STATE OF FLORIDA      )
COUNTY OF _____   )

    SWORN TO AND SUBSCRIBED before me this ____ day of _____, 2015, by _____. He
is ____ personally known to me or _____ has produced _____ (type of
identification) as identification.

                             _____
                             NOTARY PUBLIC, STATE OF FLORIDA

                             _____
                             (Print, Type or Stamp Commissioned Name   of
                             Notary Public)

                    **EXHIBIT A**

IN THE CIRCUIT COURT OF THE
SEVENTH JUDICIAL CIRCUIT IN AND
FOR FLAGLER COUNTY, FLORIDA

**RBC BANK (USA),**

      Plaintiff,

v.                              **CASE NO. 2010-CA-1650**

**K & R BUSINESS INVESTMENTS, LLC.,**
a Florida limited liability company,
**GREGORY G. SHUGG,** an individual,
**KIMBERLY A. SHUGG,** an individual,

      Defendants.

_____/

## RECEIVERSHIP BOND

KNOW ALL MEN BY THESE PRESENTS that I, _____, as principal

("Receiver") and _____, as Surety, are held and firm bond unto the

Circuit Court of the Seventh Judicial Circuit in and for Flagler County, Florida, in the sum of

$10,000.00, in lawful money of the United States, to be paid to said Court for the benefit of the

parties in this cause, as their interests may appear, for loss caused by any failure of Receiver to

faithfully perform his official duties as Receiver, for which payment, while truly to be made, I

bind myself and my heirs, executors, administrators, successors and assigns, jointly and severally

by these presents.

THE CONDITION OF THIS OBLIGATION is such, that whereas the Receiver was, on

the _____ day of _____, ____, appointed Receiver in the above-styled action, and

Receiver has accepted said receivership with all duties and obligations pertaining thereto;

NOW THEREFORE, if the Receiver, as aforesaid by his agents, servants and employees,

shall obey such orders as said Court may make in relation to said receivership, and shall

faithfully and truly account for all the monies, assets, and effects which shall come into his hands

**EXHIBIT B**

and possession, and shall in all respects faithfully perform all official duties as Receiver, then this obligation shall be void; otherwise, this obligation shall remain in full force and effect.

Signed this _____ day of _____, _____.

_____

_____

SURETY
By: _____
Its: _____

STATE OF FLORIDA      )
COUNTY OF _____ )

SWORN TO AND SUBSCRIBED before me this _____ day of _____, 2015, by _____. He is _____ personally known to me or _____ has produced _____ (type of identification) as identification.

_____
NOTARY PUBLIC, STATE OF FLORIDA

_____
(Print, Type or Stamp Commissioned Name of Notary Public)

STATE OF FLORIDA      )
COUNTY OF _____ )

Sworn to and subscribed before me this _____ day of _____, _____, by _____, the _____ of _____, a corporation which is Surety hereinabove, on behalf of that corporation, who is _____ personally known to me or _____ who has produced _____ as identification.

_____
NOTARY PUBLIC, STATE OF FLORIDA

_____
(Print, Type or Stamp Commissioned Name of Notary Public)